IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
) CR No. 22-00409
) Washington, D.C.
vs. ) February 7, 2023
) 5:17 p.m.
ERIC DOUGLAS CLARK, )
)
Defendant. )
___________________________________)

TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:

James Dennis Peterson
Emily Miller
DOJ-CRM
1331 F Street
6th Floor
Washington, D.C. 20530
(202) 353-0796
Email:
james.d.peterson@usdoj.gov

Eric Boylan
DOJ-USAO
US Attorney's Office, D.C.
601 D Street NW
Washington, D.C. 20001
(202) 252-7215
Email: eric.boylan@usdoj.gov

APPEARANCES CONTINUED:

For the Defendant: John L. Machado
(Standby counsel)
LAW OFFICE OF JOHN MACHADO
503 D Street, NW
Suite 310
Washington, D.C. 20001
(703) 989-0840
Email: johnlmachado@gmail.com

Court Reporter: William P. Zaremba
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
E. Barrett Prettyman CH
333 Constitution Avenue, NW
Washington, D.C. 20001
(202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY: Good afternoon, Your Honor. This is Criminal Case No. 22-409, United States of America versus Eric Douglas Clark.

James Peterson, Eric Boylan, and Emily Miller for the government.

Mr. Clark is representing himself as a pro se defendant with John Machado as standby counsel.

The defendant is appearing via videoconference for these proceedings.

THE COURT: Okay. Good afternoon, everybody. Mr. Clark, good afternoon to you.

All right. So we are back here to try and sort of moving things forward in terms of giving Mr. Clark access to the databases and what the best way forward is in terms of trying to accomplish that objective, to the extent he needs to.

So, Mr. Peterson, I see Ms. Miller is here, so why don't we start with her.

Hi, Ms. Miller.

MS. MILLER: Good evening, Your Honor. I'm sorry to see you having hearings at 5:15 at night. This does not bode well.

THE COURT: They happen at every hour of the day.

MS. MILLER: Yeah, the wheels of justice never

stop.

So the bottom line, having reviewed the entire record and discussed it with counsel and my supervisors is, based on everything I'm seeing, I'm not seeing a way that the government can agree to give this defendant access to either database, and I would instead propose that we move forward by just doing a more traditional case-specific discovery, and the prosecutors will respond to individualized relevant discovery requests in the ordinary course.

And I'm not trying to be inflexible, but I wanted to lay out for the Court my reasoning, rather than -- I thought you'd prefer to have the position and then the reasoning than the long buildup. So I started with the conclusion.

THE COURT: It's good to start with the bottom line.

MS. MILLER: But this is how I got there and why.

First of all -- and forgive me if I'm long-winded. You know, I've never been short for words, so I apologize again in advance.

But the defendant in this case has refused to sign attachment A to the protective order. It was signed by his original attorney back on July 7, 2021, that was ECF No. 13. But as acknowledged in the assigned prosecutor's opposition

to his motion to compel discovery, not only has he not signed it, but he has essentially announced through social media to the world that he is not subject to it, as sort of a Badge of Honor and a means by which he can say, I could disclose discovery because I'm not subject to the protective order. That's point number one.

Point number two is, over one year ago, the defendant was cautioned that -- and not just -- all defendants were cautioned in a status memorandum that was filed with the Court, that if they decided to proceed pro se, they would not get access to the government's discovery databases. And that is ECF No. 30 in this case; it was filed on February 23, 2022.

And as laid out in pretty good detail therein, Evidence.com, as this Court is aware, contains videos that the U.S. Capitol Police deemed highly sensitive. It also contains, although we've really tried not to mark body-worn camera footage sensitive, some body-worn camera footage that's sensitive, including where subjects are being asked for personally identifying information and they're providing it over video.

Relativity, as I stated in that memo over a year ago, even then contained extensive, highly sensitive materials, such as allegations about officers' use of force or purported complicity with rioters, even when it's not

sustained, as well as camera maps for the U.S. Capitol, which the U.S. Capitol police are particularly sensitive about us having disclosed at all, much less being handed to defendants in these cases.

Since the time of those memos, the sensitive and highly sensitive materials in the database that have -- the Relativity database has grown extensively. It now contains over 7.3 terabytes of information, most of which is not likely to be relevant to the defendant's case, though it was provided to defense counsel so that they could perform searches for materials they deemed potentially relevant.

Those materials include over 4,500 FD-302s, which are the FBI interview documents; they're not redacted. They contain people's names and phone numbers, addresses, other personal identifying information. There's over 149,000 tips. There are search results from over 750 digital devices and 400 stored Communications Act accounts and over 350 recording of interview subjects.

And notably, that information may pertain to people who've never been charged and who have real concerns about their privacy rights. Not their privacy rights, I don't tell to say it that way because the Court's order can deprive them of their privacy rights, but who have a legitimate privacy interest in this material that should be balanced against the defendant's need for the materials.

So in any event, like I said, this defendant was warned a year ago that if he went pro se, for all those reasons, he was going to have to work with standby counsel to get access to the materials in the database; and further that with respect to highly sensitive documents, standby counsel was still going to have to supervise the defendant, unless on a particular document, he and the prosecutor could work out a suitable compromise or this Court ordered otherwise.

Since that time, as I understand from the government's opposition to his motion to compel, he has posted on social media, like I said, that he is not subject to the protective order, but, further, as I think is shown in that memo, that he wants to find a way to provide materials to David Sumrall. David Sumrall is a self-described citizen journalist who operates a website called Stop Hate.

We have reason to believe that in his role as a citizen journalist, Sumrall has previously been involved in the disclosure of protected materials from protected -- from databases in this case; specifically in the case of Jeffrey McCalla, there was a dissemination of the contents of the Department of Corrections video repository for Evidence.com. The way that that occurred, based on a review of Jeffrey McCalla's text messages, is that through an intermediary in

about April of 2022, McCalla gave Sumrall access to the entire contents of the database, and then Sumrall began releasing those contents on his Stop Hate website. And I can provide copies of those text messages to the Court if you would like to see them.

We understand --

THE COURT: Ms. Miller, I'm sorry to interrupt, but can I ask a quick question and maybe we can sort of get to the bottom line at the moment.

But in terms of CJA investigators, are there CJA investigators who are cleared who have signed the protective order and have access to the databases?

MS. MILLER: So the way that it has --

THE DEFENDANT: Your Honor, if I may?

THE COURT: Hang on, Mr. Clark.

Go ahead, Ms. Miller.

MS. MILLER: The way that it has worked so far is that attorneys can get licenses for their team members, provided the protective order is met. So -- and that would be true for standby counsel as well.

But I have some very specific concerns in this case, which is what I was about to get to, which is that --

THE COURT: That's why I was asking whether we have already cleared CJA, as opposed to somebody that we might seek to identify and appoint who hasn't yet been

cleared.

MS. MILLER: And so there's no clearing process. In general, the idea is we trust attorneys as officers of the court to employ legitimate people who will follow the terms of a protective order and comply with it.

But in this case, my concern is that after getting the contents of Evidence.com and disseminating them -- and I can't -- I say that with -- based on my review of the text messages and some initial reviewing of David Sumrall's website. So I don't want to say I have a case beyond a reasonable doubt here, but I have very good reason to believe that that's what Mr. Sumrall did. And then a month or two later, he got an investigator's license.

And so as you can imagine, I am very concerned that the defendant's true intent here, based on what he has on social media, based on his attempts -- his refusal to comply with the protective order, his searching for David Sumrall, David Sumrall's sudden interest in turning from citizen journalist into criminal investigator in terms of the January 6th cases, there's a real concern that the goal here is to take protected materials and disseminate them into the public sphere.

And that's not just video now, it's a lot of these very sensitive materials that are in Relativity, including things like this defendant is demanding, like files

pertaining to Ray Epps, who's already been subject to a lot of harassment based on conspiracy theorist beliefs that he is an agent provocator, cooperator, or something like that in these cases.

THE COURT: Okay.

Okay.

That's all very helpful, Ms. Miller. I appreciate you laying all of that out, because those are important countervailing considerations that I have to think about.

Mr. Clark, do you wish to be heard?

THE DEFENDANT: Most definitely, Your Honor.

I would like to touch on all the points that Ms. Emily had brought up.

First off, I'd like for the prosecution to show these posts, right, to show these posts that I made and to let the courts know by what means they obtained them and whether they have warrants, too, because she can only be referring to one private message through Telegram, where I asked Mr. Sumrall if he would be interested in helping as a pro se investigator if I were to go pro se.

Mr. Sumrall has ran Stop Hate since 1992. So his assumption that his investigatory intent is new is unfounded, right. He's been running this investigative journalist site since 1992.

He has, in fact, already signed the protective

order that you're talking about.

And he has, in fact, already been given access to this database in the defense of other clients, as Ms. Miller mentioned herself, Mr. McCalla, who was given full access to this database.

And the mentions they would make reference to are mentions where people have reached out to me for footage because I've reviewed more than 150 to 200 hours' worth of publicly available footage through YouTube archives, Parler archives, these sedition hunter websites. And it's public footage, so I've had no problem disseminating it. And when people ask me for, hey, have you seen this, hey, I was here, can you get me this footage. It's public footage, I'm perfectly within my right to give them footage that I found publicly.

I have no intent on disseminating anything that would be illegal for me to disseminate. I would argue the sensitive and highly sensitive nature of the footage being arbitrary at this point, as there have been anywhere from ten seconds to three minutes of this footage from more than 50 of the different cameras already released publicly, which go full well to the argument that the prosecution would make that this would somehow threaten national security by placement of cameras. I would argue that ten seconds of footage for a camera can just as easily give away a camera's

location as the full day, right?

And the fact that they are willing to give private attorneys access to this full discovery but now they're reluctant to give it to pro se defendants because of the action of one David Sumrall and Jeffrey McCalla, who, by the way, was not held in contempt for violating the protective order that he signed on this release of body cam footage that I would like the Court to also enter on the record; they're going to bring it up.

So if there have been no accusations of wrongdoing on the behalf of David Sumrall by these courts, why would they use this against me for looking for a competent investigator on my own behalf?

THE COURT: So, Mr. Clark, if I could just make the following observations and then we can, I think, try and bring this --

THE DEFENDANT: One more quick point, Your Honor.

She mentions Ray Epps and conspiracy theorists and what she believes from the little access she has or is willing to divulge.

But I had an encounter myself with Mr. Epps across -- atop the Capitol steps, where he told me in no uncertain terms that this was pre-planned and that it involved precise timing. He corroborated with three other individuals that went to an unsecured hash that lead to wet

wall access to the Capitol building.

I encountered another girl known as Emily of Knoxville through much Facebook footage, who had separated me from the crowd of people that initially breached the Capitol with use of an onion, she used an onion to make herself cry.

And these all point to pre-planning, to corroboration. And to fully present my case to the court, I'm going to need full access so that I can hunt down these cooperators' full intent, their full, you know, path through the Capitol and through the grounds that day, as well as these individuals' communications and what have you.

And all that being said, I have no intention on releasing any tax information, bank information, Social Security numbers. Even though prosecution has, in their own discovery, sent to me unredacted Social Security numbers already in a not very secure platform via Gmail. I mean, so they broke their own concerns in their --

At this point, Your Honor, at this point, Your Honor, if you don't give me access to this footage, I will just have to appeal it to another court, right, because I'm not going to stipulate I'm going to waive my own rights on any grounds.

THE COURT: Okay.

So, Mr. Clark, here's where we are. You have thus

far not agreed to sign the protective order, which limits the use of the information on the databases, and so that's the jumping-off point for the difficulty we find ourselves in.

All that said, it is abundantly clear to me, based upon the case law that we've looked at, that pro se defendants do not have an absolute right to access discovery under whatever terms they believe are appropriate in the same manner that a lawyer would.

The Supreme Court has said in *United States versus Ruiz* that "there's no general constitutional right to discovery in a criminal case."

And our Circuit in a case called *U.S. v. Bisong*, B-i-s-o-n-g, said that -- held that essentially the district court had not abused its discretion in limiting access to -- by putting some limitations on access to materials, discovery materials, so long as those materials were available to standby counsel and that the defendant was certainly made advised about the availability of the records and had the ability to access them through standby counsel.

The Fourth Circuit has taken a similar approach in *United States versus Galloway*, 749 F.3d at 238. Again, another case in which the Court has found limitations to be appropriate.

There are a number of countervailing

considerations here that I have, I think, are valid and legitimate in terms of the government's concerns about unfettered access by Mr. Clark to the databases.

I'll simply just summarize what Ms. Miller has said and adopt what she has said as my own reasoning, in large part because, one, there is a great deal of sensitive material in the databases, both in terms of security footage.

Now, some of it, you're right, Mr. Clark, has been publicly disclosed in trials and in other ways, but, nevertheless, undoubtedly there still remain other videos in that database of which there are thousands of hours of video, CCTV video, that has not been disclosed to the public and still remain designated as highly sensitive.

There also if a fair amount of information in those databases concerning people's personal information and personal identifying information. And, frankly, more significantly or as significantly, there's a fair amount -- there's an extraordinary amount of information about the government's investigation into people who have not been arrested, people who are simply subjects, or, importantly, people who are simply with. And so those folks have a substantial privacy interest in ensuring that that information is protected in an appropriate manner and not publicly disseminated.

Now, Mr. Clark has said that he is not -- it is not his intention to publicly disclose this to Mr. McCalla. I take him at his word; however, whatever social media postings he has made are of some concern. I haven't seen the actual social media postings. But to the extent he's suggesting he's not subject to the protective order, that may be because he hasn't signed it yet. And so if he had signed it, then he certainly would be. And my concern is that he is not prepared to sign it and abide by its terms, and I think there's some risk there of his not treating the material appropriately if he were to have unfettered access in the way that he has described.

I think it's appropriate that we have standby counsel; Mr. Machado remains as standby counsel. Mr. Machado has access to the databases. Mr. Machado undoubtedly has access to an investigator that he could tap to run searches on the databases.

Is that accurate, Mr. Machado?

MR. MACHADO: Yes, I can make that happen, Your Honor. I do not currently have one involved in this case, but I can go through the process.

THE COURT: Okay.

So we can go through the process of having an investigator available to Mr. Machado, who can run any searches or look for any evidence that Mr. Clark believes

might be useful to his defense. He can describe that material for Mr. Machado or the investigator that is supervised by Mr. Machado and identify any potential evidence that might be relevant.

All that said, given Mr. Clark's disinclination, if not outright refusal, to sign the protective order, if he does instruct Mr. Machado or an investigator to identify things and those things are identified, they can be shared with Mr. Clark remotely. But until he is prepared to sign a protective order or I'm satisfied that the material that is at issue is not highly sensitive or sensitive, then it's not material that he will be able to physically possess.

He has the case-specific material that is available to him. And to the extent that there are searches he'd like to have done on the databases, if any of those searches produce information, he can review them with the assistance of Mr. Machado or an investigator, but I'm not going to permit him to have physical or direct electronic access to that material, okay?

So that'll be the terms under which Mr. Clark can have access to those databases, and I think the question for us now is where we go from here.

The case has been pending for some time.

Can you, Mr. Peterson, remind me of what the lead count is?

MR. PETERSON: Yes, I think it's a misdemeanor. They're two misdemeanors of -- Class A misdemeanors, sir, Your Honor, of entering a restricted area, as well as disorderly conduct in a restricted area. They're both Class A misdemeanors.

He's also charged for with the two, for lack of a better word, the standard Class B misdemeanors of 5104.

THE COURT: All right. So he has two jury-demandable offenses.

And so the question is, Mr. Clark, it sounds like you'd like to have a trial. I think the question is how much time you need to prepare for such a trial and then when we can get you on the trial calendar.

THE DEFENDANT: Well, I think what Mr. Machado probably has a couple hours available a week, divided by 14,000 hours of footage to go through. I think that probably in about 15 years, if I'm given fair time with discovery with these stipulations.

THE COURT: So, Mr. Clark, I'll give you a reasonable time to work with Mr. Machado. 15 years is not within the ballpark of reasonableness.

So if you would give me a time, whether it's 30 days, 60 days, 90 days, I'm happy to consider it. But --

THE DEFENDANT: Well, I'm at the discretion of Mr. Machado's availability, so I really can't say that I can

be ready in 70 days or 70 years if the time is not given to me, right?

If I'm able to sit down in Zoom meetings with Mr. Machado and go through my course of the day and then backtrack all these different persons' tracks, right?

First my case is entrapment to the government. Then I'm being robbed of my opportunity to defend myself through these forced stipulations and the waiving of my rights.

THE COURT: So, Mr. Clark, I am simply -- first of all, you are right that, given your decision to proceed pro se, you are somewhat at the behest of Mr. Machado's schedule, and I know how busy he is. And so this is one of the disadvantages of proceeding pro se, is that you do not have a lawyer who has direct access to the databases and you are consequently at -- you are at a disadvantage, because Mr. Machado is a busy man.

Now, all that said, Mr. Clark, I'm prepared to set a certain amount of time, and if we get to that date and you tell me you need more time, I'm prepared to consider it. But right now, let's at least establish a time horizon by which you think you can possibly be ready at least to set a trial date.

So how about 60 days, Mr. Clark? And then we will see where we are at that point, and then determine whether

you're ready to set a trial or whether we need some additional time for you to continue your preparations?

THE DEFENDANT: Certainly. I guess you want to set this forward another 60 days.

Are we going to consider the other three motions I filed today as well or defer it to the magistrate?

THE COURT: I haven't seen those motions. And so I'll have to take a look at the docket, see what those motions are requesting, and provide the government an opportunity to respond to them as well, okay?

MR. MACHADO: Your Honor, just so we're clear, I want to make sure that we're kind of going in the same direction.

It appears that the Court is suggesting that I, through CJA, obtain an investigator in order for -- and someone who would be willing to abide by the terms of the Consent Order in order to be able to show these items to Mr. Clark; that it isn't the Court's intention for me to be basically going through all the videos with him. Am I correct in understanding that?

THE COURT: That's correct, Mr. Machado.

I mean, the bottom line is, I'm asking you to take on some supervisory assistance here or provide some oversight assistance.

MR. MACHADO: Sure.

THE COURT: And, yes --

THE DEFENDANT: Your Honor, David Sumrall, already being a CJA-licensed investigator in these matters, at my behest, can take over for John Machado in those investigative regards.

I do at least have the ability to hire my own investigators, ones that have already been licensed and have signed the protective orders. Wouldn't that be fair?

THE COURT: It would depend on who the person is, and I'm not sure I'm prepared to do that just yet.

THE DEFENDANT: David Sumrall would be who the person is.

THE COURT: So based on what Ms. Miller has told me about Mr. Sumrall, I'm not inclined to have him serve in that capacity.

If Mr. Machado -- I'm more inclined to have somebody that he knows and somebody he has worked with, both in January 6th and other types of cases and who understands how to use the database and can be trusted to follow the restrictions not only in the protective order but the limitations I've placed on access to that material by Mr. Clark, okay?

So let's set --

THE DEFENDANT: Can I just make sure I understand this all real quick, your Honor?

THE COURT: Sure.

THE DEFENDANT: So because I'm pro se and because I want to use David Sumrall as my investigator, I'm being denied the same access that other -- both private attorneys and pro se defendants have already been given, based on evidence that has not been entered in the record, no such posts have been entered onto the record that claim this right, just hearsay and allegations, no such video that discredit David Sumrall has been entered into the record. This is all just purely based on bias for the prosecution, if I'm correctly hearing this; is that right, Your Honor?

THE COURT: I wouldn't quite describe it in that way, Mr. Clark.

Ms. Miller is on officer of the court, and she has made certain representations that I've accepted.

But, more importantly, I don't know who Mr. Sumrall is. And, frankly, I am prepared to allow you access to the databases, again, through Mr. Machado, with him acting as standby counsel and functioning in an oversight supervisory manner with respect to an investigator that he knows, he's worked with or has had access to the databases, is prepared to abide by the terms of the protective order and also the Court's limitations on access by the defendant, okay?

MR. MACHADO: Your Honor, just one additional

thing.

I don't know what Mr. Clark's intention is with regard to the investigator, whether he would want someone from his location in Kentucky, and I'm wondering if the Court is amenable, if I'm able to reach a CJA attorney there, or someone who practices there, who has an investigator that they work with that I might be able to go through that investigator, basically, getting sufficient references that I'm comfortable with so that Mr. Clark can go there and spend as many hours as he wants with the investigator in person if he wishes. Is that -- would that be acceptable for the Court or an option that the Court is amenable to?

THE COURT: I would consider it.

MR. MACHADO: Okay.

THE COURT: Depending on who the investigator is, whether that person, again, is prepared to sign off on the protective order, and understand, importantly, what the restriction are, and, again, has the bona fides of the type that I'm talking about that you understand.

MR. MACHADO: Well, I'll speak to Mr. Clark about his preferences. And I'll let the Court know obviously -- I'll be submitting it to the Court, and I can explain in the -- within the CJA program, the voucher program, to let the Court know what I know of this person.

THE COURT: I mean, I would feel more comfortable if whoever the Federal Public Defender is in that jurisdiction can sponsor the person.

THE DEFENDANT: Your Honor, I would prefer not being put right back with the same public defender I just had to fire, because he refused to file any motions on my behalf.

At this point, it seems like the Court is intentionally trying to steamroll me.

THE COURT: So, Mr. Clark, that's not what I said. I'm not talking about a public defender. Mr. Machado is simply proposing that an investigator be someone who is in geographic proximity to where you are. And all I simply said was that I would feel more comfortable with that person if that person was vouched for by the Federal Public Defender in the jurisdiction where you are.

MR. MACHADO: Yes.

And, Your Honor, just to be clear, I understand Mr. Clark's frustration; it is a legitimate one. And so I will work with him to make sure that he's comfortable, if we get someone from Kentucky, that he understands that won't be straight from the Public Defenders but probably most likely, yes, someone recommended from a CJA attorney of some repute there. Thank you.

THE COURT: Okay.

All right. So let's just set this down for another hearing about 60 days out. Why don't we just tentatively say at 1:30 on April the 7th.

And, did we lose -- there he is. Mr. Clark just moved squares; that's why I didn't see him.

Mr. Clark, will you consent to the exclusion of time through April the 7th?

THE DEFENDANT: I do not, Your Honor.

THE COURT: Okay.

So if you're not consenting, Mr. Clark, I will exclude time on my own motion so that you are afforded sufficient time to work with Mr. Machado and an investigator to identify the material that you think will be helpful to the preparation of your defense, and I think a period of 60 days to exclude is warranted.

If you are disinclined to continue to oppose extensions of time or exclusions of time, I should say, the next time we're together, Mr. Clark, odds are we'll set a trial date, okay?

All right. Thank you, all, very much.

MS. MILLER: Thank you, Your Honor.

Did you want me back at that hearing?

THE COURT: No, Ms. Miller, I don't think you need to be there. But thank you very much for your time, and I appreciate it.

(Proceedings concluded at 5:50 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Please note: This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.



Date:__March 4, 2023_________ ______________________________

William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 3/2
**MR. MACHADO: [7]** 16/19 20/11 20/25 22/25 23/15 23/21 24/17
**MR. PETERSON: [1]** 18/1
**MS. MILLER: [7]** 3/21 3/25 4/18 8/13 8/17 9/2 25/21
**THE COURT: [27]** 3/11 3/24 4/16 8/7 8/15 8/23 10/5 12/14 13/24 16/22 18/8 18/19 19/10 20/7 20/21 21/1 21/9 21/13 22/1 22/12 23/14 23/16 24/1 24/10 24/25 25/9 25/23
**THE DEFENDANT: [12]** 8/14 10/11 12/17 18/14 18/24 20/3 21/2 21/11 21/24 22/2 24/4 25/8

**0**

**00409 [1]** 1/4
**0796 [1]** 1/16
**0840 [1]** 2/5

**1**

**13 [1]** 4/24
**1331 [1]** 1/14
**14,000 [1]** 18/16
**149,000 [1]** 6/15
**15 [2]** 18/17 18/20
**150 [1]** 11/8
**19 [1]** 27/6
**1992 [2]** 10/21 10/24
**1:30 [1]** 25/3

**2**

**200 [1]** 11/8
**20001 [3]** 1/20 2/4 2/9
**202 [3]** 1/16 1/20 2/10
**2021 [1]** 4/24
**2022 [2]** 5/13 8/1
**2023 [2]** 1/5 27/10
**20530 [1]** 1/15
**22-00409 [1]** 1/4
**22-409 [1]** 3/3
**23 [1]** 5/13
**238 [1]** 14/22
**252-7215 [1]** 1/20

**3**

**30 [1]** 5/12
**30 days [1]** 18/23
**302s [1]** 6/12
**310 [1]** 2/4
**3249 [1]** 2/10
**333 [1]** 2/9
**350 [1]** 6/18
**353-0796 [1]** 1/16
**354-3249 [1]** 2/10

**4**

**4,500 [1]** 6/12
**400 [1]** 6/17
**409 [1]** 3/3

**5**

**50 [1]** 11/21
**503 [1]** 2/3
**5104 [1]** 18/7
**5:15 [1]** 3/22
**5:17 [1]** 1/6
**5:50 [1]** 26/1

**6**

**60 [3]** 18/23 19/24 20/4
**60 days [2]** 25/2 25/15
**601 [1]** 1/19
**6th [3]** 1/15 9/20 21/18

**7**

**7.3 [1]** 6/8
**70 [1]** 19/1
**70 days [1]** 19/1
**703 [1]** 2/5
**7215 [1]** 1/20
**749 [1]** 14/22
**750 [1]** 6/16
**7th [2]** 25/3 25/7

**9**

**90 [1]** 18/23
**989-0840 [1]** 2/5

**A**

**abide [3]** 16/9 20/16 22/22
**ability [2]** 14/20 21/6
**able [5]** 17/12 19/3 20/17 23/5 23/7
**about [17]** 5/24 6/3 6/21 8/1 8/22 10/9 11/1 14/19 15/2 15/19 18/17 19/24 21/14 23/20 23/21 24/11 25/2
**above [1]** 27/4
**above-titled [1]** 27/4
**absolute [1]** 14/7
**abundantly [1]** 14/5
**abused [1]** 14/15
**acceptable [1]** 23/12
**accepted [1]** 22/15
**access [29]**
**accomplish [1]** 3/16
**accounts [1]** 6/17
**accurate [1]** 16/18
**accusations [1]** 12/10
**acknowledged [1]** 4/25
**across [1]** 12/22
**Act [1]** 6/17
**acting [1]** 22/19
**action [1]** 12/5
**actual [1]** 16/5
**additional [2]** 20/2 22/25
**addresses [1]** 6/14
**adopt [1]** 15/5
**advance [1]** 4/21
**advised [1]** 14/10
**afforded [1]** 25/11
**after [1]** 9/6
**afternoon [3]** 3/2 3/11 3/12
**again [5]** 4/21 14/22 22/18 23/17 23/19
**against [2]** 6/25 12/12
**agent [1]** 10/3
**ago [3]** 5/7 5/23 7/2
**agree [1]** 4/5
**agreed [1]** 14/1
**ahead [1]** 8/16
**aided [1]** 2/12
**all [23]** 3/13 4/19 5/8 6/3 7/2 10/7 10/8 10/12 13/7 13/13 14/5 17/5 18/8 19/5 19/11 19/18 20/19 21/25 22/10 24/13 25/1 25/20 25/20
**allegations [2]** 5/24 22/8
**allow [1]** 22/17
**already [9]** 8/24 10/1 10/25 11/2 11/21 13/17 21/2 21/7 22/5
**also [5]** 5/16 12/8 15/15 18/6 22/23
**although [1]** 5/17
**am [4]** 9/14 19/10 20/19 22/17
**amenable [2]** 23/5 23/13
**AMERICA [2]** 1/3 3/3
**AMIT [1]** 1/10
**amount [4]** 15/15 15/18 15/19 19/19
**announced [1]** 5/2
**another [5]** 13/2 13/21 14/23 20/4 25/2
**any [8]** 7/1 13/14 13/23 16/24 16/25 17/3 17/15 24/6
**anything [1]** 11/16
**anywhere [1]** 11/19
**apologize [1]** 4/20
**appeal [1]** 13/21
**APPEARANCES [2]** 1/12 1/21
**appearing [1]** 3/9
**appears [1]** 20/14
**appoint [1]** 8/25
**appreciate [2]** 10/7 25/25
**approach [1]** 14/21
**appropriate [4]** 14/8 14/24 15/24 16/13
**appropriately [1]** 16/11
**April [3]** 8/1 25/3 25/7
**arbitrary [1]** 11/19
**archives [2]** 11/9 11/10
**are [34]**
**area [2]** 18/3 18/4
**argue [2]** 11/17 11/24
**argument [1]** 11/22
**arrested [1]** 15/21
**as [38]**
**ask [2]** 8/8 11/12
**asked [2]** 5/19 10/19
**asking [2]** 8/23 20/22
**assigned [1]** 4/25
**assistance [3]** 17/17 20/23 20/24
**assumption [1]** 10/22
**atop [1]** 12/22
**attachment [1]** 4/23
**attempts [1]** 9/16
**attorney [3]** 4/24 23/5 24/23
**Attorney's [1]** 1/19
**attorneys [4]** 8/18 9/3 12/3 22/4
**availability [2]** 14/19 18/25
**available [5]** 11/9 14/18 16/24 17/14 18/15
**Avenue [1]** 2/9
**aware [1]** 5/15
**away [1]** 11/25

**B**

**B-i-s-o-n-g [1]** 14/14
**back [4]** 3/13 4/24 24/5 25/22
**backtrack [1]** 19/5
**Badge [1]** 5/4
**balanced [1]** 6/25
**ballpark [1]** 18/21
**bank [1]** 13/14
**Barrett [1]** 2/8
**based [10]** 4/4 7/24 9/8 9/15 9/16 10/2 14/5 21/13 22/5 22/10
**basically [2]** 20/19 23/8
**be [32]**
**because [13]** 5/5 6/22 10/8 10/17 11/8 12/4 13/22 15/6 16/7 19/16 22/2 22/2 24/6
**been [18]** 4/20 6/20 7/19 8/25 10/1 10/23 11/2 11/19 12/10 15/9 15/13 15/20 17/23 21/7 22/5 22/6 22/7 22/9
**BEFORE [1]** 1/10
**began [1]** 8/2
**behalf [3]** 12/11 12/13 24/7
**behest [2]** 19/12 21/4
**being [8]** 5/19 6/3 11/18 13/13 19/7 21/3 22/3 24/5
**beliefs [1]** 10/2
**believe [3]** 7/18 9/12 14/8
**believes [2]** 12/19 16/25
**best [1]** 3/15
**better [1]** 18/7
**beyond [1]** 9/10
**bias [1]** 22/10
**Bisong [1]** 14/13
**bode [1]** 3/23
**body [3]** 5/17 5/18 12/7
**body-worn [2]** 5/17 5/18
**bona [1]** 23/19
**bona fides [1]** 23/19
**both [4]** 15/7 18/4 21/17 22/4
**bottom [4]** 4/2 4/16 8/9 20/22
**Boylan [2]** 1/18 3/5
**breached [1]** 13/4
**bring [2]** 12/9 12/16
**broke [1]** 13/18
**brought [1]** 10/13
**building [1]** 13/1
**buildup [1]** 4/14
**busy [2]** 19/13 19/17

**C**

**calendar [1]** 18/13
**called [2]** 7/17 14/13
**cam [1]** 12/7
**camera [4]** 5/18 5/18 6/1 11/25
**camera's [1]** 11/25
**cameras [2]** 11/21 11/24
**can [31]**
**can't [2]** 9/8 18/25
**capacity [1]** 21/15
**Capitol [7]** 5/16 6/1 6/2 12/22 13/1 13/5 13/11
**case [19]** 3/3 4/7 4/22 5/12 6/9 7/21 7/21 8/22 9/6 9/10 13/8 14/6 14/12 14/13 14/23 16/21 17/13 17/23 19/6
**case-specific [2]** 4/7 17/13
**cases [4]** 6/4 9/20 10/4 21/18
**cautioned [2]** 5/8 5/9
**CCTV [1]** 15/13
**certain [2]** 19/19 22/15
**certainly [3]** 14/19 16/8 20/3
**Certified [1]** 2/7
**certify [1]** 27/2
**CH [1]** 2/8
**charged [2]** 6/20 18/6
**Circuit [2]** 14/13 14/21
**citizen [3]** 7/16 7/19 9/19
**CJA [8]** 8/10 8/10 8/24 20/15 21/3 23/5 23/24 24/23
**CJA-licensed [1]** 21/3
**claim [1]** 22/7
**CLARK [30]**
**Clark's [3]** 17/5 23/2 24/19
**Class [3]** 18/2 18/4 18/7
**clear [3]** 14/5 20/11 24/18
**cleared [3]** 8/11 8/24 9/1
**clearing [1]** 9/2
**clients [1]** 11/3

## C

**COLUMBIA [1]** 1/1
**comfortable [4]** 23/9 24/1 24/14 24/20
**communications [2]** 6/17 13/12
**compel [2]** 5/1 7/11
**competent [1]** 12/12
**complicity [1]** 5/25
**comply [2]** 9/5 9/17
**compromise [1]** 7/8
**computer [1]** 2/12
**computer-aided [1]** 2/12
**concern [4]** 9/6 9/20 16/4 16/8
**concerned [1]** 9/14
**concerning [1]** 15/16
**concerns [4]** 6/20 8/21 13/18 15/2
**concluded [1]** 26/1
**conclusion [1]** 4/15
**conduct [1]** 18/4
**CONFERENCE [1]** 1/9
**consent [2]** 20/17 25/6
**consenting [1]** 25/10
**consequently [1]** 19/16
**consider [4]** 18/23 19/20 20/5 23/14
**considerations [2]** 10/9 15/1
**conspiracy [2]** 10/2 12/18
**Constitution [1]** 2/9
**constitutional [1]** 14/11
**contain [1]** 6/14
**contained [1]** 5/23
**contains [3]** 5/15 5/17 6/7
**contempt [1]** 12/6
**contents [4]** 7/22 8/2 8/3 9/7
**continue [2]** 20/2 25/16
**CONTINUED [1]** 2/1
**cooperator [1]** 10/3
**cooperators' [1]** 13/10
**copies [1]** 8/4
**correct [3]** 20/20 20/21 27/3
**Corrections [1]** 7/23
**correctly [1]** 22/11
**corroborated [1]** 12/24
**corroboration [1]** 13/8
**could [5]** 5/4 6/10 7/7 12/14 16/16
**counsel [12]** 2/2 3/8 4/3 6/10 7/3 7/6 8/20 14/18 14/20 16/14 16/14 22/19
**count [1]** 17/25
**countervailing [2]** 10/9 14/25
**couple [1]** 18/15
**course [2]** 4/10 19/4
**court [25]** 1/1 2/6 2/8 4/4 4/10 5/15 7/8 8/4 9/4 12/8 13/8 13/21 14/10 14/15 14/23 20/14 22/14 23/5 23/12 23/12 23/22 23/23 23/25 24/8 27/7
**Court's [3]** 6/22 20/18 22/23
**courts [2]** 10/16 12/11
**COVID [1]** 27/6
**COVID-19 [1]** 27/6
**CR [1]** 1/4
**criminal [3]** 3/3 9/19 14/12
**CRM [1]** 1/14
**crowd [1]** 13/4
**CRR [2]** 27/2 27/11
**cry [1]** 13/6
**currently [1]** 16/20

## D

**D.C [6]** 1/5 1/15 1/19 1/20 2/4 2/9
**database [9]** 4/6 6/6 6/7 7/4 8/2 11/3 11/5 15/12 21/19
**databases [15]** 3/15 5/12 7/21 8/12 14/2 15/3 15/7 15/16 16/15 16/17 17/15 17/21 19/15 22/18 22/22
**date [4]** 19/19 19/23 25/19 27/10
**David [11]** 7/15 7/15 9/9 9/17 9/18 12/5 12/11 21/2 21/11 22/3 22/9
**day [4]** 3/24 12/1 13/11 19/4
**days [8]** 18/23 18/23 18/23 19/1 19/24 20/4 25/2 25/15
**deal [1]** 15/6
**decided [1]** 5/10
**decision [1]** 19/11
**deemed [2]** 5/16 6/11
**defend [1]** 19/7
**defendant [12]** 1/7 2/2 3/8 3/9 4/5 4/22 5/8 7/1 7/6 9/25 14/18 22/24
**defendant's [3]** 6/9 6/25 9/15
**defendants [5]** 5/9 6/4 12/4 14/7 22/5
**defender [4]** 24/2 24/5 24/11 24/16
**Defenders [1]** 24/22
**defense [4]** 6/10 11/3 17/1 25/14
**defer [1]** 20/6
**definitely [1]** 10/11
**demandable [1]** 18/9
**demanding [1]** 9/25
**denied [1]** 22/4
**Dennis [1]** 1/13
**Department [1]** 7/23
**depend [1]** 21/9
**Depending [1]** 23/16
**deprive [1]** 6/23
**describe [2]** 17/1 22/12
**described [2]** 7/16 16/12
**designated [1]** 15/14
**detail [1]** 5/14
**determine [1]** 19/25
**devices [1]** 6/17
**did [3]** 9/12 25/4 25/22
**didn't [1]** 25/5
**different [2]** 11/21 19/5
**difficulty [1]** 14/3
**digital [1]** 6/16
**direct [2]** 17/18 19/15
**direction [1]** 20/13
**disadvantage [1]** 19/16
**disadvantages [1]** 19/14
**disclose [2]** 5/5 16/2
**disclosed [3]** 6/3 15/10 15/13
**disclosure [1]** 7/20
**discovery [11]** 4/8 4/9 5/1 5/5 5/11 12/3 13/16 14/7 14/12 14/17 18/18
**discredit [1]** 22/9
**discretion [2]** 14/15 18/24
**discussed [1]** 4/3
**disinclination [1]** 17/5
**disinclined [1]** 25/16
**disorderly [1]** 18/4
**disseminate [2]** 9/21 11/17
**disseminated [1]** 15/25
**disseminating [3]** 9/7 11/11 11/16
**dissemination [1]** 7/22
**district [4]** 1/1 1/1 1/10 14/14
**divided [1]** 18/15
**divulge [1]** 12/20
**do [7]** 10/10 14/7 16/20 19/14 21/6 21/10 25/8
**do you [1]** 10/10
**docket [1]** 20/8
**document [1]** 7/7
**documents [2]** 6/13 7/5
**does [2]** 3/22 17/7
**doing [1]** 4/7
**DOJ [2]** 1/14 1/18
**DOJ-CRM [1]** 1/14
**DOJ-USAO [1]** 1/18
**don't [8]** 3/19 6/22 9/10 13/20 22/16 23/2 25/2 25/23
**done [1]** 17/15
**doubt [1]** 9/11
**DOUGLAS [2]** 1/6 3/4
**down [3]** 13/9 19/3 25/1
**during [1]** 27/5

## E

**easily [1]** 11/25
**ECF [2]** 4/24 5/12
**either [1]** 4/6
**electronic [1]** 17/18
**Email [3]** 1/16 1/21 2/5
**Emily [4]** 1/13 3/5 10/13 13/2
**employ [1]** 9/4
**encounter [1]** 12/21
**encountered [1]** 13/2
**ensuring [1]** 15/23
**enter [1]** 12/8
**entered [3]** 22/6 22/7 22/9
**entering [1]** 18/3
**entire [2]** 4/2 8/2
**entrapment [1]** 19/6
**Epps [3]** 10/1 12/18 12/21
**ERIC [4]** 1/6 1/18 3/4 3/5
**eric.boylan [1]** 1/21
**essentially [2]** 5/2 14/14
**establish [1]** 19/21
**even [3]** 5/23 5/25 13/15
**evening [1]** 3/21
**event [1]** 7/1
**every [1]** 3/24
**everybody [1]** 3/11
**everything [1]** 4/4
**evidence [3]** 16/25 17/4 22/6
**Evidence.com [3]** 5/15 7/23 9/7
**exclude [2]** 25/11 25/15
**exclusion [1]** 25/6
**exclusions [1]** 25/17
**explain [1]** 23/23
**extensions [1]** 25/17
**extensive [1]** 5/23
**extensively [1]** 6/7
**extent [3]** 3/16 16/5 17/14
**extraordinary [1]** 15/19

## F

**F.3d [1]** 14/22
**Facebook [1]** 13/3
**fact [3]** 10/25 11/2 12/2
**fair [4]** 15/15 15/18 18/17 21/8
**far [2]** 8/17 14/1
**FBI [1]** 6/13
**FD [1]** 6/12
**FD-302s [1]** 6/12
**February [2]** 1/5 5/13
**Federal [2]** 24/2 24/15
**feel [2]** 24/1 24/14
**fides [1]** 23/19
**file [1]** 24/6
**filed [3]** 5/10 5/13 20/6
**files [1]** 9/25
**find [2]** 7/14 14/3
**fire [1]** 24/6
**first [4]** 4/19 10/14 19/6 19/10
**Floor [1]** 1/15
**folks [1]** 15/22
**follow [2]** 9/4 21/19
**following [1]** 12/15
**footage [16]** 5/18 5/18 11/7 11/9 11/11 11/13 11/13 11/14 11/18 11/20 11/25 12/7 13/3 13/20 15/8 18/16
**force [1]** 5/24
**forced [1]** 19/8
**foregoing [1]** 27/3
**forgive [1]** 4/19
**forward [4]** 3/14 3/15 4/7 20/4
**found [2]** 11/14 14/23
**Fourth [1]** 14/21
**frankly [2]** 15/17 22/17
**frustration [1]** 24/19
**full [7]** 11/4 11/22 12/1 12/3 13/9 13/10 13/10
**fully [1]** 13/8
**functioning [1]** 22/19
**further [2]** 7/4 7/13

## G

**Galloway [1]** 14/22
**gave [1]** 8/1
**general [2]** 9/3 14/11
**geographic [1]** 24/13
**get [9]** 5/11 7/4 8/8 8/18 8/22 11/13 18/13 19/19 24/21
**getting [2]** 9/6 23/8
**girl [1]** 13/2
**give [8]** 4/5 11/14 11/25 12/2 12/4 13/20 18/19 18/22
**given [7]** 11/2 11/4 17/5 18/17 19/1 19/11 22/5
**giving [1]** 3/14
**Gmail [1]** 13/17
**gmail.com [1]** 2/5
**go [10]** 8/16 10/20 11/22 16/21 16/23 17/22 18/16 19/4 23/7 23/10
**Go ahead [1]** 8/16
**goal [1]** 9/20
**going [10]** 7/3 7/6 12/9 13/9 13/22 13/22 17/18 20/5 20/12 20/19
**good [7]** 3/2 3/11 3/12 3/21 4/16 5/14 9/11
**got [2]** 4/18 9/13
**government [5]** 1/13 3/6 4/5 19/6 20/9
**government's [4]** 5/11 7/11 15/2 15/20
**great [1]** 15/6
**grounds [2]** 13/11 13/23
**grown [1]** 6/7
**guess [1]** 20/3

Case 1:22-cr-00409-APM Document 61 Filed 03/09/23 Page 30 of 33


**H**

**handed [1]** 6/3
**Hang [1]** 8/15
**happen [2]** 3/24 16/19
**happy [1]** 18/23
**harassment [1]** 10/2
**has [39]**
**hash [1]** 12/25
**hasn't [2]** 8/25 16/7
**Hate [3]** 7/17 8/3 10/21
**have [44]**
**haven't [2]** 16/4 20/7
**having [4]** 3/22 4/2 6/3 16/23
**he [46]**
**he'd [1]** 17/15
**he's [6]** 10/23 16/5 16/6 18/6 22/21 24/20
**heard [1]** 10/10
**hearing [4]** 22/11 25/2 25/22 27/5
**hearings [1]** 3/22
**hearsay [1]** 22/8
**held [2]** 12/6 14/14
**helpful [2]** 10/7 25/13
**helping [1]** 10/19
**her [1]** 3/19
**here [9]** 3/13 3/18 9/11 9/15 9/21 11/12 15/1 17/22 20/23
**here's [1]** 13/25
**herself [2]** 11/4 13/6
**hey [2]** 11/12 11/12
**Hi [1]** 3/20
**highly [7]** 5/16 5/23 6/6 7/5 11/18 15/14 17/11
**him [8]** 16/3 17/14 17/18 20/19 21/14 22/19 24/20 25/5
**himself [1]** 3/7
**hire [1]** 21/6
**his [16]** 4/23 5/1 7/11 7/18 8/3 9/16 9/16 9/17 10/22 10/22 16/2 16/3 16/10 17/1 23/4 23/22
**Honor [19]** 3/2 3/21 5/4 8/14 10/11 12/17 13/19 13/20 16/20 18/3 20/11 21/2 21/25 22/11 22/25 24/4 24/18 25/8 25/21
**HONORABLE [1]** 1/10
**horizon [1]** 19/21
**hour [1]** 3/24
**hours [4]** 15/12 18/15 18/16 23/10
**hours' [1]** 11/8
**how [5]** 4/18 18/11 19/13 19/24 21/19
**however [1]** 16/3
**hunt [1]** 13/9
**hunter [1]** 11/10

**I**

**I am [2]** 9/14 22/17
**I apologize [1]** 4/20
**I can [6]** 8/4 13/9 16/19 16/21 18/25 23/23
**I can't [1]** 9/8
**I didn't see [1]** 25/5
**I don't [1]** 25/23
**I guess [1]** 20/3
**I have [5]** 8/21 10/9 11/16 13/13 15/1
**I haven't [1]** 20/7
**I just [1]** 24/5
**I know [2]** 19/13 23/25
**I mean [2]** 13/17 24/1
**I really [1]** 18/25
**I say [1]** 9/8
**I should [1]** 25/17
**I think [11]** 7/13 12/15 15/1 16/10 16/13 17/21 18/1 18/11 18/14 18/16 25/14
**I thought [1]** 4/13
**I understand [2]** 21/24 24/18
**I want [2]** 20/12 22/3
**I wanted [1]** 4/11
**I was [1]** 11/12
**I will [3]** 13/21 24/20 25/10
**I would [1]** 4/6
**I wouldn't [1]** 22/12
**I'd [1]** 10/14
**I'll [6]** 15/4 18/19 20/8 23/21 23/22 23/23
**I'm [33]**
**I'm going [2]** 13/9 13/22
**I'm not [7]** 4/4 4/11 5/5 13/22 17/17 21/14 24/11
**I'm sorry [1]** 3/21
**I've [5]** 4/20 11/8 11/11 21/21 22/15
**idea [1]** 9/3
**identified [1]** 17/8
**identify [4]** 8/25 17/3 17/7 25/13
**identifying [3]** 5/20 6/15 15/17
**illegal [1]** 11/17
**imagine [1]** 9/14
**important [1]** 10/8
**importantly [3]** 15/21 22/16 23/18
**inclined [2]** 21/14 21/16
**include [1]** 6/12
**including [2]** 5/19 9/24
**individualized [1]** 4/9
**individuals [1]** 12/25
**individuals' [1]** 13/12
**inflexible [1]** 4/11
**information [13]** 5/20 6/8 6/15 6/19 13/14 13/14 14/2 15/15 15/16 15/17 15/19 15/24 17/16
**initial [1]** 9/9
**initially [1]** 13/4
**instead [1]** 4/6
**instruct [1]** 17/7
**intent [4]** 9/15 10/22 11/16 13/10
**intention [4]** 13/13 16/2 20/18 23/2
**intentionally [1]** 24/9
**interest [3]** 6/24 9/18 15/23
**interested [1]** 10/19
**intermediary [1]** 7/25
**interrupt [1]** 8/7
**interview [2]** 6/13 6/18
**investigation [1]** 15/20
**investigative [2]** 10/23 21/5
**investigator [19]** 9/19 10/20 12/13 16/16 16/24 17/2 17/7 17/17 20/15 21/3 22/3 22/20 23/3 23/7 23/8 23/11 23/16 24/12 25/12
**investigator's [1]** 9/13
**investigators [3]** 8/10 8/11 21/7
**investigatory [1]** 10/22
**involved [3]** 7/19 12/24 16/20
**is [76]**
**isn't [1]** 20/18
**issue [1]** 17/11
**it [37]**
**it's [9]** 4/16 5/25 9/23 11/10 11/13 16/13 17/11 18/1 18/22
**items [1]** 20/17
**its [2]** 14/15 16/9

**J**

**James [2]** 1/13 3/5
**james.d.peterson [1]** 1/17
**January [2]** 9/20 21/18
**January 6th [2]** 9/20 21/18
**Jeffrey [3]** 7/21 7/24 12/5
**John [4]** 2/2 2/3 3/8 21/4
**johnlmachado [1]** 2/5
**journalist [4]** 7/16 7/19 9/19 10/24
**JUDGE [1]** 1/10
**July [1]** 4/24
**jumping [1]** 14/3
**jumping-off [1]** 14/3
**jurisdiction [2]** 24/3 24/16
**jury [1]** 18/9
**jury-demandable [1]** 18/9
**just [18]** 4/7 5/8 9/23 11/25 12/14 13/21 15/4 20/11 21/10 21/24 22/8 22/10 22/25 24/5 24/18 25/1 25/2 25/4
**justice [1]** 3/25

**K**

**Kentucky [2]** 23/4 24/21
**kind [1]** 20/12
**know [9]** 4/20 10/16 13/10 19/13 22/16 23/2 23/22 23/25 23/25
**known [1]** 13/2
**knows [2]** 21/17 22/21
**Knoxville [1]** 13/3

**L**

**lack [1]** 18/6
**laid [1]** 5/14
**large [1]** 15/6
**later [1]** 9/13
**law [2]** 2/3 14/6
**lawyer [2]** 14/9 19/15
**lay [1]** 4/12
**laying [1]** 10/8
**lead [2]** 12/25 17/24
**least [3]** 19/21 19/22 21/6
**legitimate [4]** 6/24 9/4 15/2 24/19
**less [1]** 6/3
**let [3]** 10/16 23/22 23/24
**let's [3]** 19/21 21/23 25/1
**license [1]** 9/13
**licensed [2]** 21/3 21/7
**licenses [1]** 8/18
**like [13]** 7/1 7/12 8/5 9/25 9/25 10/3 10/12 10/14 12/8 17/15 18/10 18/11 24/8
**likely [2]** 6/9 24/23
**limitations [5]** 14/16 14/23 21/21 22/23 27/7
**limiting [1]** 14/15
**limits [1]** 14/1
**line [4]** 4/2 4/17 8/9 20/22
**little [1]** 12/19
**location [2]** 12/1 23/4
**long [3]** 4/14 4/19 14/17
**long-winded [1]** 4/19
**look [2]** 16/25 20/8
**looked [1]** 14/6
**looking [1]** 12/12
**lose [1]** 25/4
**lot [2]** 9/23 10/1

**M**

**Machado [22]** 2/2 2/3 3/8 16/14 16/15 16/15 16/18 16/24 17/2 17/3 17/7 17/17 18/14 18/20 19/4 19/17 20/21 21/4 21/16 22/18 24/11 25/12
**Machado's [2]** 18/25 19/12
**made [4]** 10/15 14/19 16/4 22/15
**magistrate [1]** 20/6
**make [8]** 11/6 11/22 12/14 13/5 16/19 20/12 21/24 24/20
**man [1]** 19/17
**manner [3]** 14/9 15/24 22/20
**many [1]** 23/10
**maps [1]** 6/1
**March [1]** 27/10
**mark [1]** 5/17
**material [10]** 6/24 15/7 16/11 17/2 17/10 17/12 17/13 17/19 21/21 25/13
**materials [13]** 5/24 6/6 6/11 6/12 6/25 7/4 7/15 7/20 9/21 9/24 14/16 14/17 14/17
**matter [1]** 27/4
**matters [1]** 21/3
**may [3]** 6/19 8/14 16/7
**maybe [1]** 8/8
**McCalla [5]** 7/22 8/1 11/4 12/5 16/2
**McCalla's [1]** 7/25
**me [19]** 4/19 11/7 11/12 11/13 11/17 12/12 12/22 13/4 13/16 13/20 14/5 17/24 18/22 19/2 19/20 20/18 21/14 24/9 25/22
**mean [3]** 13/17 20/22 24/1
**means [2]** 5/4 10/16
**mechanical [1]** 2/11
**media [5]** 5/3 7/12 9/16 16/3 16/5
**meetings [1]** 19/3
**MEHTA [1]** 1/10
**members [1]** 8/18
**memo [2]** 5/22 7/14
**memorandum [1]** 5/9
**memos [1]** 6/5
**mentioned [1]** 11/4
**mentions [3]** 11/6 11/7 12/18
**Merit [1]** 2/7
**message [1]** 10/18
**messages [3]** 7/25 8/4 9/9
**met [1]** 8/19
**might [4]** 8/25 17/1 17/4 23/7
**Miller [12]** 1/13 3/5 3/18 3/20 8/7 8/16 10/7 11/3 15/4 21/13 22/14 25/23
**minutes [1]** 11/20
**misdemeanor [1]** 18/1
**misdemeanors [4]** 18/2 18/2 18/5 18/7
**moment [1]** 8/9
**month [1]** 9/12
**more [10]** 4/7 11/8 11/20 12/17 15/17 19/20 21/16 22/16 24/1 24/14
**most [3]** 6/8 10/11 24/22
**motion [3]** 5/1 7/11 25/11
**motions [4]** 20/5 20/7

**M**

**motions... [2]** 20/9 24/6
**move [1]** 4/6
**moved [1]** 25/5
**moving [1]** 3/14
**Mr [2]** 12/21 16/2
**Mr. [59]**
**Mr. Clark [28]**
**Mr. Clark's [3]** 17/5 23/2 24/19
**Mr. Machado [18]** 16/14 16/15 16/15 16/18 16/24 17/2 17/3 17/7 17/17 18/14 18/20 19/4 19/17 20/21 21/16 22/18 24/11 25/12
**Mr. Machado's [2]** 18/25 19/12
**Mr. McCalla [1]** 11/4
**Mr. Peterson [2]** 3/18 17/24
**Mr. Sumrall [5]** 9/12 10/19 10/21 21/14 22/17
**Ms. [11]** 3/18 3/20 8/7 8/16 10/7 10/13 11/3 15/4 21/13 22/14 25/23
**Ms. Emily [1]** 10/13
**Ms. Miller [10]** 3/18 3/20 8/7 8/16 10/7 11/3 15/4 21/13 22/14 25/23
**much [5]** 6/3 13/3 18/12 25/20 25/24
**my [19]** 4/3 4/12 9/6 9/8 11/14 12/13 13/8 13/22 15/5 16/8 19/4 19/6 19/7 19/8 21/3 21/6 22/3 24/6 25/11
**myself [2]** 12/21 19/7

**N**

**names [1]** 6/14
**national [1]** 11/23
**nature [1]** 11/18
**need [6]** 6/25 13/9 18/12 19/20 20/1 25/23
**needs [1]** 3/16
**never [3]** 3/25 4/20 6/20
**nevertheless [1]** 15/11
**new [1]** 10/22
**next [1]** 25/18
**night [1]** 3/22
**no [14]** 1/4 3/3 4/24 5/12 9/2 11/11 11/16 12/10 12/22 13/13 14/11 22/6 22/8 25/23
**not [47]**
**notably [1]** 6/19
**note [1]** 27/5
**now [8]** 6/7 9/23 12/3 15/9 16/1 17/22 19/18 19/21
**number [3]** 5/6 5/7 14/25
**numbers [3]** 6/14 13/15 13/16
**NW [3]** 4/19 2/3 2/9

**O**

**objective [1]** 3/16
**observations [1]** 12/15
**obtain [1]** 20/15
**obtained [1]** 10/16
**obviously [1]** 23/22
**occurred [2]** 7/24 27/5
**odds [1]** 25/18
**off [3]** 10/14 14/3 23/17
**offenses [1]** 18/9
**Office [2]** 1/19 2/3
**officer [1]** 22/14
**officers [1]** 9/3
**officers' [1]** 5/24
**Official [1]** 2/8
**okay [13]** 3/11 10/5 10/6 13/24 16/22 17/19 20/10 21/22 22/24 23/15 24/25 25/9 25/19
**one [10]** 5/6 5/7 10/18 12/5 12/17 15/6 16/20 19/13 22/25 24/19
**ones [1]** 21/7
**onion [2]** 13/5 13/5
**only [3]** 5/1 10/17 21/20
**operates [1]** 7/16
**opportunity [2]** 19/7 20/10
**oppose [1]** 25/16
**opposed [1]** 8/24
**opposition [2]** 4/25 7/11
**option [1]** 23/12
**order [20]** 4/23 5/6 6/22 7/13 8/12 8/19 9/5 9/17 11/1 12/7 14/1 16/6 17/6 17/10 20/15 20/17 20/17 21/20 22/23 23/18
**ordered [1]** 7/8
**orders [1]** 21/8
**ordinary [1]** 4/9
**original [1]** 4/24
**other [8]** 6/14 11/3 12/24 15/10 15/11 20/5 21/18 22/4
**otherwise [1]** 7/9
**our [1]** 14/13
**ourselves [1]** 14/3
**out [6]** 4/12 5/14 7/8 10/8 11/7 25/2
**outright [1]** 17/6
**over [9]** 5/7 5/21 5/22 6/8 6/12 6/15 6/16 6/17 21/4
**oversight [2]** 20/24 22/20
**own [7]** 12/13 13/15 13/18 13/22 15/5 21/6 25/11

**P**

**p.m [2]** 1/6 26/1
**pandemic [1]** 27/6
**Parler [1]** 11/9
**part [1]** 15/6
**particular [1]** 7/7
**particularly [1]** 6/2
**path [1]** 13/10
**pending [1]** 17/23
**people [8]** 6/20 9/4 11/7 11/12 13/4 15/20 15/21 15/22
**people's [2]** 6/14 15/16
**perfectly [1]** 11/14
**perform [1]** 6/10
**period [1]** 25/14
**permit [1]** 17/18
**person [8]** 21/9 21/12 23/11 23/17 23/25 24/3 24/14 24/15
**personal [3]** 6/15 15/16 15/17
**personally [1]** 5/20
**persons' [1]** 19/5
**pertain [1]** 6/19
**pertaining [1]** 10/1
**Peterson [4]** 1/13 3/5 3/18 17/24
**phone [1]** 6/14
**physical [1]** 17/18
**physically [1]** 17/12
**placed [1]** 21/21
**placement [1]** 11/24
**Plaintiff [1]** 1/4
**planned [1]** 12/23
**planning [1]** 13/7
**platform [1]** 13/17
**Please [1]** 27/5
**point [10]** 5/6 5/7 11/19 12/17 13/7 13/19 13/19 14/3 19/25 24/8
**points [1]** 10/12
**police [2]** 5/16 6/2
**position [1]** 4/13
**possess [1]** 17/12
**possibly [1]** 19/22
**posted [1]** 7/12
**postings [2]** 16/4 16/5
**posts [3]** 10/15 10/15 22/7
**potential [1]** 17/3
**potentially [1]** 6/11
**practices [1]** 23/6
**pre [2]** 12/23 13/7
**pre-planned [1]** 12/23
**pre-planning [1]** 13/7
**precise [1]** 12/24
**prefer [2]** 4/13 24/4
**preferences [1]** 23/22
**preparation [1]** 25/14
**preparations [1]** 20/2
**prepare [1]** 18/12
**prepared [8]** 16/9 17/9 19/18 19/20 21/10 22/17 22/22 23/17
**present [1]** 13/8
**pretty [1]** 5/14
**Prettyman [1]** 2/8
**previously [1]** 7/19
**privacy [5]** 6/21 6/21 6/23 6/24 15/23
**private [3]** 10/18 12/2 22/4
**pro [11]** 3/7 5/10 7/2 10/20 10/20 12/4 14/6 19/11 19/14 22/2 22/5
**probably [3]** 18/15 18/17 24/22
**problem [1]** 11/11
**proceed [2]** 5/10 19/11
**proceeding [1]** 19/14
**proceedings [5]** 1/9 2/11 3/10 26/1 27/4
**process [3]** 9/2 16/21 16/23
**produce [1]** 17/16
**produced [1]** 2/12
**program [2]** 23/24 23/24
**propose [1]** 4/6
**proposing [1]** 24/12
**prosecution [4]** 10/14 11/22 13/15 22/10
**prosecutor [1]** 7/7
**prosecutor's [1]** 4/25
**prosecutors [1]** 4/8
**protected [4]** 7/20 7/20 9/21 15/24
**protective [17]** 4/23 5/5 7/13 8/11 8/19 9/5 9/17 10/25 12/6 14/1 16/6 17/6 17/10 21/8 21/20 22/23 23/18
**provide [4]** 7/14 8/4 20/9 20/23
**provided [2]** 6/10 8/19
**providing [1]** 5/20
**provocator [1]** 10/3
**proximity [1]** 24/13
**public [9]** 9/22 11/10 11/13 15/13 24/2 24/5 24/11 24/15 24/22
**publicly [6]** 11/9 11/15 11/21 15/10 15/25 16/2
**purely [1]** 22/10
**purported [1]** 5/25
**put [1]** 24/5
**putting [1]** 14/16

**Q**

**question [4]** 8/8 17/21 18/10 18/11
**quick [3]** 8/8 12/17 21/25
**quite [1]** 22/12

**R**

**ran [1]** 10/21
**rather [1]** 4/12
**Ray [2]** 10/1 12/18
**reach [1]** 23/5
**reached [1]** 11/7
**ready [3]** 19/1 19/22 20/1
**real [3]** 6/20 9/20 21/25
**really [2]** 5/17 18/25
**Realtime [1]** 2/7
**reason [2]** 7/18 9/11
**reasonable [2]** 9/11 18/20
**reasonableness [1]** 18/21
**reasoning [3]** 4/12 4/14 15/5
**reasons [1]** 7/3
**recommended [1]** 24/23
**record [6]** 4/3 12/8 22/6 22/7 22/9 27/3
**recorded [1]** 2/11
**recording [1]** 6/18
**records [1]** 14/19
**redacted [1]** 6/13
**reference [1]** 11/6
**references [1]** 23/9
**referring [1]** 10/18
**refusal [2]** 9/16 17/6
**refused [2]** 4/22 24/6
**regard [1]** 23/3
**regards [1]** 21/5
**Registered [1]** 2/7
**Relativity [3]** 5/22 6/7 9/24
**release [1]** 12/7
**released [1]** 11/21
**releasing [2]** 8/3 13/14
**relevant [4]** 4/9 6/9 6/11 17/4
**reluctant [1]** 12/4
**remain [2]** 15/11 15/14
**remains [1]** 16/14
**remind [1]** 17/24
**remotely [2]** 17/9 27/7
**Reporter [4]** 2/6 2/7 2/7 2/8
**reporting [1]** 27/7
**repository [1]** 7/23
**representations [1]** 22/15
**representing [1]** 3/7
**repute [1]** 24/24
**requesting [1]** 20/9
**requests [1]** 4/9
**respect [2]** 7/5 22/20
**respond [2]** 4/8 20/10
**restricted [2]** 18/3 18/4
**restriction [1]** 23/19
**restrictions [1]** 21/20
**results [1]** 6/16
**review [3]** 7/24 9/8 17/16
**reviewed [2]** 4/2 11/8
**reviewing [1]** 9/9
**right [19]** 3/13 10/15 10/23 11/14 12/1 13/21 14/7 14/11 15/9 18/8 19/2 19/5 19/11 19/21 22/8 22/11 24/5 25/1 25/20
**rights [5]** 6/21 6/21 6/23 13/23 19/9
**rioters [1]** 5/25
**risk [1]** 16/10
**RMR [2]** 27/2 27/11
**robbed [1]** 19/7
**role [1]** 7/18
**Ruiz [1]** 14/11
**run [2]** 16/17 16/24

**R**

**running [1]** 10/23

**S**

**said [13]** 7/1 7/12 13/13 14/5 14/10 14/14 15/5 15/5 16/1 17/5 19/18 24/10 24/14
**same [4]** 14/9 20/12 22/4 24/5
**satisfied [1]** 17/10
**say [7]** 5/4 6/22 9/8 9/10 18/25 25/3 25/17
**schedule [1]** 19/13
**se [11]** 3/7 5/11 7/2 10/20 10/20 12/4 14/6 19/12 19/14 22/2 22/5
**search [1]** 6/16
**searches [5]** 6/11 16/17 16/25 17/14 17/16
**searching [1]** 9/17
**seconds [2]** 11/20 11/24
**secure [1]** 13/17
**security [4]** 11/23 13/15 13/16 15/7
**sedition [1]** 11/10
**see [6]** 3/18 3/22 8/5 19/25 20/8 25/5
**seeing [2]** 4/4 4/4
**seek [1]** 8/25
**seems [1]** 24/8
**seen [3]** 11/12 16/4 20/7
**self [1]** 7/16
**self-described [1]** 7/16
**sensitive [15]** 5/16 5/18 5/19 5/23 6/2 6/5 6/6 7/5 9/24 11/18 11/18 15/6 15/14 17/11 17/11
**sent [1]** 13/16
**separated [1]** 13/3
**serve [1]** 21/14
**set [7]** 19/18 19/22 20/1 20/4 21/23 25/1 25/18
**shared [1]** 17/8
**she [7]** 10/17 12/18 12/19 12/19 13/5 15/5 22/14
**short [1]** 4/20
**should [2]** 6/24 25/17
**show [3]** 10/14 10/15 20/17
**shown [1]** 7/13
**sign [6]** 4/22 14/1 16/9 17/6 17/9 23/17
**signed [8]** 4/23 5/2 8/11 10/25 12/7 16/7 16/8 21/8
**significantly [2]** 15/18 15/18
**similar [1]** 14/21
**simply [6]** 15/4 15/21 15/22 19/10 24/12 24/13
**since [4]** 6/5 7/10 10/21 10/24
**sir [1]** 18/2
**sit [1]** 19/3
**site [1]** 10/24
**so [46]**
**So his assumption [1]** 10/22
**social [7]** 5/2 7/12 9/16 13/14 13/16 16/3 16/5
**some [12]** 5/18 8/21 9/9 14/16 15/9 16/4 16/10 17/23 20/1 20/23 20/23 24/23
**somebody [3]** 8/24 21/17 21/17
**somehow [1]** 11/23
**someone [6]** 20/16 23/3 23/6 24/12 24/21 24/23
**something [1]** 10/3
**somewhat [1]** 19/12
**sorry [2]** 3/21 8/7
**sort [3]** 3/13 5/3 8/8
**sounds [1]** 18/10
**speak [1]** 23/21
**specific [3]** 4/7 8/21 17/13
**specifically [1]** 7/21
**spend [1]** 23/10
**sphere [1]** 9/22
**sponsor [1]** 24/3
**squares [1]** 25/5
**standard [1]** 18/7
**standby [10]** 2/2 3/8 7/3 7/5 8/20 14/18 14/20 16/13 16/14 22/19
**start [2]** 3/19 4/16
**started [1]** 4/14
**stated [1]** 5/22
**STATES [6]** 1/1 1/3 1/10 3/3 14/10 14/22
**status [2]** 1/9 5/9
**steamroll [1]** 24/9
**stenography [1]** 2/11
**steps [1]** 12/22
**still [3]** 7/6 15/11 15/14
**stipulate [1]** 13/22
**stipulations [2]** 18/18 19/8
**stop [4]** 4/1 7/17 8/3 10/21
**stored [1]** 6/17
**straight [1]** 24/22
**Street [3]** 1/14 1/19 2/3
**subject [6]** 5/3 5/5 7/12 10/1 16/6 27/6
**subjects [3]** 5/19 6/18 15/21
**submitting [1]** 23/23
**substantial [1]** 15/23
**such [4]** 5/24 18/12 22/6 22/8
**sudden [1]** 9/18
**sufficient [2]** 23/8 25/12
**suggesting [2]** 16/6 20/14
**suitable [1]** 7/8
**Suite [1]** 2/4
**summarize [1]** 15/4
**Sumrall [17]** 7/15 7/15 7/19 8/1 8/2 9/12 9/18 10/19 10/21 12/5 12/11 21/2 21/11 21/14 22/3 22/9 22/17
**Sumrall's [2]** 9/9 9/18
**supervise [1]** 7/6
**supervised [1]** 17/3
**supervisors [1]** 4/3
**supervisory [2]** 20/23 22/20
**Supreme [1]** 14/10
**Supreme Court [1]** 14/10
**sure [6]** 20/12 20/25 21/10 21/24 22/1 24/20
**sustained [1]** 6/1

**T**

**take [5]** 9/21 16/3 20/8 20/22 21/4
**taken [1]** 14/21
**talking [3]** 11/1 23/20 24/11
**tap [1]** 16/16
**tax [1]** 13/14
**team [1]** 8/18
**technological [1]** 27/7
**Telegram [1]** 10/18
**tell [2]** 6/22 19/20
**ten [2]** 11/20 11/24
**tentatively [1]** 25/3
**terabytes [1]** 6/8
**terms [13]** 3/14 3/15 8/10 9/5 9/19 12/23 14/8 15/2 15/7 16/9 17/20 20/16 22/22
**text [3]** 7/25 8/4 9/8
**than [4]** 4/12 4/14 11/8 11/20
**thank [4]** 24/24 25/20 25/21 25/24
**thank you [2]** 24/24 25/24
**that [143]**
**that'll [1]** 17/20
**that's [10]** 5/6 5/19 8/23 9/12 9/23 10/7 14/2 20/21 24/10 25/5
**their [8]** 6/21 6/21 6/23 8/18 13/10 13/15 13/18 13/18
**them [9]** 6/23 8/5 9/7 9/21 10/16 11/14 14/20 17/16 20/10
**then [12]** 4/13 5/23 8/2 9/12 12/15 16/8 17/11 18/12 19/4 19/7 19/24 19/25
**theorist [1]** 10/2
**theorists [1]** 12/18
**there [19]** 4/18 6/16 7/22 8/10 11/19 12/10 14/25 15/6 15/11 15/12 15/25 16/10 17/14 22/6 23/6 23/10 24/24 25/4 25/24
**there's [7]** 6/15 9/2 9/20 14/11 15/18 15/19 16/10
**therefore [1]** 27/6
**therein [1]** 5/14
**these [16]** 3/10 6/4 9/23 10/4 10/15 10/15 11/10 12/11 13/7 13/9 13/12 18/18 19/5 19/8 20/17 21/3
**they [15]** 3/24 5/10 5/11 6/10 6/11 6/13 10/16 10/17 11/6 12/2 12/12 13/18 14/8 17/8 23/7
**they're [6]** 5/20 6/13 12/3 12/9 18/2 18/4
**thing [1]** 23/1
**things [4]** 3/14 9/25 17/8 17/8
**think [15]** 7/13 10/9 12/15 15/1 16/10 16/13 17/21 18/1 18/11 18/14 18/16 19/22 25/13 25/14 25/23
**this [42]**
**those [15]** 6/5 6/12 7/2 8/3 8/4 10/8 14/17 15/16 15/22 17/8 17/15 17/21 20/7 20/8 21/4
**though [2]** 6/9 13/15
**thought [1]** 4/13
**thousands [1]** 15/12
**threaten [1]** 11/23
**three [3]** 11/20 12/24 20/5
**through [18]** 5/2 7/25 10/18 11/9 13/3 13/10 13/11 14/20 16/21 16/23 18/16 19/4 19/8 20/15 20/19 22/18 23/8 25/7
**thus [1]** 13/25
**time [19]** 6/5 7/10 17/23 18/12 18/17 18/20 18/22 19/1 19/19 19/20 19/21 20/2 25/7 25/11 25/12 25/17 25/17 25/18 25/24
**timing [1]** 12/24
**tips [1]** 6/16
**titled [1]** 27/4
**today [1]** 20/6
**together [1]** 25/18
**told [2]** 12/22 21/13
**too [1]** 10/17
**touch [1]** 10/12
**tracks [1]** 19/5
**traditional [1]** 4/7
**transcript [3]** 1/9 2/11 27/3
**transcription [1]** 2/12
**treating [1]** 16/10
**trial [6]** 18/11 18/12 18/13 19/23 20/1 25/19
**trials [1]** 15/10
**tried [1]** 5/17
**true [2]** 8/20 9/15
**trust [1]** 9/3
**trusted [1]** 21/19
**try [2]** 3/13 12/15
**trying [3]** 3/16 4/11 24/9
**turning [1]** 9/18
**two [5]** 5/7 9/13 18/2 18/6 18/8
**type [1]** 23/19
**types [1]** 21/18

**U**

**U.S [4]** 5/16 6/1 6/2 14/13
**uncertain [1]** 12/23
**under [2]** 14/8 17/20
**understand [6]** 7/10 8/6 21/24 23/18 23/20 24/18
**understanding [1]** 20/20
**understands [2]** 21/18 24/21
**undoubtedly [2]** 15/11 16/16
**unfettered [2]** 15/3 16/11
**unfounded [1]** 10/23
**UNITED [6]** 1/1 1/3 1/10 3/3 14/10 14/22
**United States [1]** 14/10
**United States of [1]** 3/3
**unless [1]** 7/7
**unredacted [1]** 13/16
**unsecured [1]** 12/25
**until [1]** 17/9
**up [2]** 10/13 12/9
**upon [1]** 14/6
**us [3]** 1/19 6/3 17/22
**USAO [1]** 1/18
**usdoj.gov [2]** 1/17 1/21
**use [6]** 5/24 12/12 13/5 14/2 21/19 22/3
**used [1]** 13/5
**useful [1]** 17/1

**V**

**valid [1]** 15/1
**versus [3]** 3/4 14/10 14/22
**very [8]** 8/21 9/11 9/14 9/24 10/7 13/17 25/20 25/24
**via [3]** 1/9 3/9 13/17
**video [6]** 5/21 7/23 9/23 15/13 15/13 22/8
**videoconference [1]** 3/9
**videos [3]** 5/15 15/11 20/19
**violating [1]** 12/6
**vouched [1]** 24/15

**V**

**voucher [1]** 23/24
**vs [1]** 1/5

**W**

**waive [1]** 13/22
**waiving [1]** 19/8
**wall [1]** 13/1
**want [6]** 9/10 20/3 20/12 22/3 23/3 25/22
**wanted [1]** 4/11
**wants [2]** 7/14 23/10
**warned [1]** 7/2
**warranted [1]** 25/15
**warrants [1]** 10/17
**was [19]** 4/23 4/24 5/8 5/9 5/12 6/9 7/1 7/3 7/6 7/22 8/22 8/23 11/4 11/12 12/6 12/23 14/18 24/14 24/15
**Washington [5]** 1/5 1/15 1/20 2/4 2/9
**way [10]** 3/15 4/4 6/22 7/14 7/24 8/13 8/17 12/6 16/12 22/13
**ways [1]** 15/10
**we [24]** 3/13 3/19 4/6 7/18 8/6 8/8 8/23 8/24 9/3 12/15 13/25 14/3 16/13 16/23 17/22 18/13 19/19 19/24 19/25 20/1 20/5 24/21 25/2 25/4
**we will [1]** 19/24
**we'll [1]** 25/18
**we're [3]** 20/11 20/12 25/18
**we've [2]** 5/17 14/6
**website [3]** 7/16 8/3 9/10
**websites [1]** 11/10
**week [1]** 18/15
**well [11]** 3/23 6/1 8/20 11/22 13/11 18/3 18/14 18/24 20/6 20/10 23/21
**went [2]** 7/2 12/25
**were [4]** 5/9 10/20 14/17 16/11
**wet [1]** 12/25
**what [17]** 3/15 8/22 9/12 9/15 10/16 12/19 13/12 15/4 15/5 17/24 18/14 20/8 21/13 23/2 23/18 23/25 24/10
**whatever [2]** 14/8 16/3
**wheels [1]** 3/25
**when [3]** 5/25 11/11 18/12
**where [9]** 5/19 10/18 11/7 12/22 13/25 17/22 19/25 24/13 24/16
**whether [7]** 8/23 10/17 18/22 19/25 20/1 23/3 23/17
**which [12]** 5/4 6/2 6/8 6/12 8/22 8/22 11/21 14/1 14/23 15/12 17/20 19/22
**who [24]** 6/20 6/23 7/16 8/11 8/11 8/25 9/4 11/4 12/5 13/3 15/20 15/21 15/22 16/24 19/15 20/16 21/9 21/11 21/18 22/16 23/6 23/6 23/16 24/12
**who's [1]** 10/1
**who've [1]** 6/20
**whoever [1]** 24/2
**why [6]** 3/18 4/18 8/23 12/11 25/2 25/5
**will [9]** 4/8 9/4 13/21 17/12 19/24 24/20 25/6 25/10 25/13
**William [3]** 2/6 27/2 27/11
**willing [3]** 12/2 12/20 20/16
**winded [1]** 4/19
**wish [1]** 10/10
**wishes [1]** 23/11
**within [3]** 11/14 18/21 23/24
**won't [1]** 24/21
**wondering [1]** 23/4
**word [2]** 16/3 18/7
**words [1]** 4/20
**work [6]** 7/3 7/8 18/20 23/7 24/20 25/12
**worked [3]** 8/17 21/17 22/21
**world [1]** 5/3
**worn [2]** 5/17 5/18
**worth [1]** 11/8
**would [26]** 4/6 5/11 8/5 8/19 10/12 10/19 11/6 11/17 11/17 11/22 11/23 11/24 12/8 12/11 14/9 16/8 18/22 20/16 21/9 21/11 23/3 23/11 23/14 24/1 24/4 24/14 24/18 25/8 25/21
**wouldn't [2]** 21/8 22/12
**wrongdoing [1]** 12/10

**Y**

**Yeah [1]** 3/25
**year [3]** 5/7 5/22 7/2
**years [3]** 18/17 18/20 19/1
**yes [5]** 16/19 18/1 21/1 24/17 24/23
**yet [3]** 8/25 16/7 21/10
**you [44]**
**you'd [2]** 4/13 18/11
**you're [4]** 11/1 15/9 20/1 25/10
**your [22]** 3/2 3/21 8/14 10/11 12/17 13/19 13/20 16/20 18/3 19/11 20/2 20/11 21/2 21/25 22/11 22/25 24/4 24/18 25/8 25/14 25/21 25/24
**your Honor [17]** 3/21 8/14 10/11 12/17 13/19 13/20 16/20 18/3 20/11 21/2 21/25 22/11 22/25
**YouTube [1]** 11/9

**Z**

**Zaremba [3]** 2/6 27/2 27/11
**ZOOM [2]** 1/9 19/3