IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )       CR No. 22-409-1
                                    )       Washington, D.C.
      vs.                           )       June 7, 2024
                                    )       4:34 p.m.
ERIC DOUGLAS CLARK,                 )
                                    )
          Defendant.                )
_____)



TRANSCRIPT OF SENTENCING VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Government:          Adam Michael Dreher
                             Eric Boylan
                             UNITED STATES
                             ATTORNEY'S OFFICE
                             Capitol Siege
                             601 D Street NW
                             Washington, D.C. 20530
                             (202) 252-1706
                             Email: adam.dreher@usdoj.gov
                             Email: eric.boylan@usdoj.gov

APPEARANCES CONTINUED:

For the Defendant:          Pro Se

                            Standby Counsel:
                            John L. Machado
                            LAW OFFICE OF JOHN MACHADO
                            503 D Street, NW
                            Suite 310
                            Washington, D.C. 20001
                            (703) 989-0840
                            Email: johnlmachado@gmail.com

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            E. Barrett Prettyman CH
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY:  Good afternoon, everyone.

This Honorable Court is now in session; the Honorable Amit P. Mehta presiding.

Your Honor, we're now calling for the record Criminal Action 22-0409, this is United States of America versus Eric Douglas Clark.

And, Your Honor, for the record, for the government, we have Eric Boylan, as well as Adam Dreher.

And we have the defendant, as well as counsel, John Machado.

THE COURT:  All right, everyone.  Good afternoon.

Mr. Clark, good afternoon.

Apologies for the late start.  We had a hearing just a few minutes ago that ended late, so sorry about that, and thank you for your patience.

Okay.  So we're here for sentencing this afternoon.  Is everyone ready to proceed?

MR. BOYLAN:  On behalf of the government, yes, we are, Your Honor.

MR. MACHADO:  The defense is ready as well.  Thank you.

THE COURT:  Okay.

So let me just confirm with Mr. Clark, I have received his written waiver but want to just confirm for the

record here, which is that:  Mr. Clark, I want to make sure you understand you have a right to an in-person sentencing hearing; that is, you have a right to be here in Washington at the courthouse for your sentencing.

Do you understand that, sir?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And we are proceeding remotely at your request, Mr. Clark.  So do I understand that you are waiving your right to an in-person hearing, sir?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.

All right.  So let me just review what I've received from Probation and the parties, and then I'll ask Mr. Machado to confirm that Mr. Clark has had an opportunity to review the report and make any objections.

So I've received the Presentence Investigation Report at 128; the probation office's recommendation at 129; the government's memorandum in aid of sentencing at 130, as well as the defendant's memorandum in aid of sentencing at 131, which included a letter from Mr. Clark's employer.

Anything else I should have mentioned that I did not?

MR. BOYLAN:  Not for the government, Your Honor.

MR. MACHADO:  Not for the defense, Your Honor.

THE COURT:  Okay.

Mr. Machado, could you confirm for me, please, that Mr. Clark has had the opportunity to review and make any objections to the Presentence Investigation Report?

MR. MACHADO:  He has, Your Honor.

THE COURT:  Okay.

All right.  So there are a couple of Guidelines issues that have been raised as objections by the defense.

Mr. Machado, do you wish to be heard any further on that -- this issue of whether the conditional discharge convictions count toward his Criminal History score?

MR. MACHADO:  On the conditional discharge, no additional argument on that, Your Honor.

THE COURT:  Okay.

And you had also suggested a downward departure under 4A1.3.  Any further argument about that?

MR. MACHADO:  I would -- the only thing that I would add is that, even the scoring of some -- some that weren't scoring were also mostly traffic offenses, and so I think that -- and some smaller, pettier offenses. I think there was a theft of a $10 DVD, and so I would just suggest that that also just supports the fact that the criminal history is overstated with a Criminal History III.

THE COURT:  All right.

So why don't I just go ahead and rule on those two

objections.

So with respect to the conditional discharge, United States Sentencing Guidelines 4A1.2(f) provides that diversionary dispositions resulting from a finding or admission of guilt in a judicial proceeding is counted as a sentence under 4A1.1(c) even if a conviction is not formally entered.

Kentucky Code 533.020, which has been cited by the defendant, makes clear that a conditional discharge is available as a sentence "when a person who's been convicted of an offense or who has entered a plea of guilty to an offense is not sentenced to imprisonment."

So the clear predicate to a conditional discharge sentence is the adjudication of guilt either by an adjudication or an entry of a guilty plea by the defendant. And so it is, I think, akin to the diversionary disposition definition that's contained in 4A1.2(f).

I will just add that there are a number of Sixth Circuit cases that have addressed conditional discharges under Kentucky law and found that they are criminal justice sentences for purposes of at least 4A1.1(e), which is the status point provision, and those cases, just for the record, are *United States versus DeJournett*, that's D-e-J-o-u-r-n-e-t-t, 817 F.3d 479, 482 from 2016.  There, the Court held that a conditionally

discharged sentence is the functional equivalent of an unsupervised probation, and, therefore, qualifies as a criminal justice sentence under 4A1.1(d).  I think that was the old 4A1.1(d).

And then *United States versus Trammel*, same holding.

And then also in *United States versus Rollins*, which is 378 --

And *Trammel* is 404 F.3d 937 -- 404, from 2005.

And then there's *United States versus Rollins*, 378 F.3d 535 at 539-40 from 2004 in which the Court held that a two-year conditional discharge under Kentucky law was, in fact, a criminal justice sentence.  So I think that resolves that issue in terms of counting Criminal History points.

In terms of the downward departure, the Guidelines do provide that if reliable information indicates that the defendant's Criminal History Category substantially over-represents the seriousness of evidence of criminal history or the likelihood that the defendant will commit other crimes, that that will be partially warranted.  This is 4A1.3.

The Guidelines provide as examples the defendant had two misdemeanor -- minor misdemeanor convictions close to ten years prior to the instant offense and no other

8

evidence of prior criminal behavior in the intervening period; and, two, more recently, the defendant received criminal history points from a sentence for possession of marijuana for personal use without an intent to sell or distribute it to another person.

You know, Mr. Clark does have -- at least one of his countable convictions is a marijuana possession charge.

There is another conviction that's counted; the one I'm referring to is in paragraph 58 of the Presentence Investigation Report.

There is another possession of marijuana conviction, that's paragraph 52 of the PSR, but that also -- that conviction was accompanied by another charge of giving an officer a false name or address, so I don't think that falls within sort of the example for departure purposes.

But in any event, the bottom line is, Mr. Clark's criminal history, although none of this is -- anyone would consider the most serious conduct, I don't think it's enough to say that his criminal history is over-represented.

Mr. Clark has had criminal convictions back to the age of 25 of various, again, minor or misdemeanor offenses of possession, operating without a license, shoplifting, possession of a forged instrument, another such charge of possession of a forged instrument, giving a false name to an officer, and failing to maintain insurance, and possession

of drug paraphernalia. Again, these are not -- and there's a disorderly conduct charge and an indecent exposure charge. These are not all felony offenses, but, nevertheless, they don't meet the definition for a downward departure under 4A1.3.

Now, all that said, I have to consider the nature of all those offenses in determining what an appropriate sentence is under the Guidelines, and I'll certainly do that at the appropriate time, okay?

I think that resolves those two issues.

I guess one question then before we turn to the allocutions, and that is, the government has asked for a fine of -- I think it's over $16,000, which is the amount that's reflected as having been raised by Mr. Clark. I think it's a GoFundMe online campaign.

Mr. Machado, do you have any representations about how that money was put to use or any other argument you wish to make about that request?

MR. MACHADO: Yes, Your Honor.

It was actually what's called a GiveSendGo, but it's -- basically, it is very similar to a GoFundMe.

But it was something that was put together with the assistance of some other people. And it was for supporting him and his -- and it wasn't specifically saying I'm going to hire an attorney and this money is for it.

In fact, he makes a point, and I'm looking at it right now, I've been calling other attorneys frequently and I've been studying up on representing myself pro se.  So I mean, he made it clear that this isn't -- I'm planning to hire an attorney.

And so as we mentioned in our sentencing memorandum, part of what happened is that Mr. Clark lost his job, and so this funding was basically assisting him to stay with his head above water and to also assist him with any costs that he had with regard to proceeding pro se.

As the Court may recall, Mr. Clark went to the U.S. Capitol to do research on videos and spend some time up here.  So that money was used for purposes supporting him as far as while representing himself, which he has a constitutional right to do.  And it was not -- I mean, he mentions that fact, and so it's not like he was attempting to deceive people as far as that money is concerned.  And so clearly he doesn't have any of that money anymore in actuality.  It's not like it's been stored.  It was used.

And we would suggest to the Court that making him pay that amount, I don't think -- first of all, he cannot afford it, and, second of all, it was used in the spirit of proceeding pro se and doing what he needed to do in order to spend the time and the research and all the hours that he spent in order to defend himself.  So we would ask the Court

11

to take that into consideration.

MR. BOYLAN:  Your Honor, if I may, quickly?

THE COURT:  Hang on for a second, Mr. Boylan.

Let me ask you, Mr. Machado:  Are you in a position to make a representation about, one, whether any of that money was used to fund travel back and forth from the District, any lodging expenses he may have incurred in the District during his visits here, are you able to argue and in a position to make that representation, and, if so, do you have any sense of how much may have been expended for those purposes?

MR. MACHADO:  Your Honor, I don't have a specific number, but it was my understanding that that money was used in part for that.

I don't have receipts.  And I apologize, I perhaps should have asked for something in that regard, at least some representations with regard to that, but that was what Mr. Clark had indicated to me.

If the Court wishes, we can -- if the Court wants to hold off on that decision and we can provide some documentation to support this position, we'll be happy to do so.

THE COURT:  All right.

Mr. Boylan, do you wish to be heard?

MR. BOYLAN:  Yes, Your Honor.  Thank you.

The government has recommended a fine for this case, and we think it's appropriate, based on the GiveSendGo case, right?

I think the important factor here is how the money was raised, Your Honor.

The case law is pretty clear that a fine's appropriate where the defendant capitalizes on his criminal activity for financial gain.

I think it's a pretty clear state that that's what happened here, Your Honor.  Mr. Clark has used photographs and videos of himself, descriptions of himself at the Capitol on January 6th engaged in the criminal activity that he was convicted for at trial, and he's used those on the GiveSendGo page to drum up financial support for himself. That's a pretty clear statement that that's where the money came from, and so the government's position is that a fine's appropriate here.

I'd also --

THE COURT:  Mr. Boylan, could I ask you:  Does the government bear any burden when a defendant has at least made some representation that at least some portion of the money has been used for legal-related expenses, including travel for trial, lodging for trial?  Mr. Clark had made at least one trip to D.C., I think, prior to trial, to review

13

evidence at the Capitol, maybe, in fact, twice.

And he also, as I remember, was traveling between his home and a law office, I think, in --

MR. BOYLAN:  I recall --

THE COURT:  So in any event, certain expenses that he incurred as part of the pretrial phase.

MR. BOYLAN:  I understand that, Your Honor.

And I grant that -- I think your recollection is correct.

But I think at this posture, Your Honor, it's -- the burden is on the defendant to prove an inability to pay the fine.  So at this point, you know, I think it's on Mr. Clark and Mr. Machado to come forward with those receipts or evidence that Mr. Machado is talking about to show that the money was spent for those things that the Court's asking about.

You know, if those receipts exist and if Mr. Machado wants to, you know -- I think the Court could push off just the fine portion of the sentencing, like Mr. Machado suggested, and I think that would be fine with us if you want to do that, Your Honor.

THE COURT:  Okay.

MR. MACHADO:  Your Honor --

THE COURT:  Mr. Machado.

MR. MACHADO:  -- just in response, Mr. --

you know, he was interviewed by Pretrial for the Presentence Report and -- well, frankly, he was CJA eligible, first of all.  But, second of all, he indicated his cash flow and how much money he had, and I don't think that he does have the money at this point to be able to pay the fine that is being suggested by the government.

THE COURT:  Right.  Okay.

Let me ask you a question, Mr. Machado. Do you have a view as to whether a fine component, if I were to impose one, can be imposed at some other time and not today?

MR. MACHADO:  I mean, I'll -- if the Court is -- wants some additional documentation or support, you know, before making its decision, we'll be happy to supply that. And I think the Court is, you know, within its right and ability to hold off on that decision.

You know, clearly the financial --

THE COURT:  Yeah, I think -- well, I want to be -- you know, it's certainly the case that I can impose restitution at a later point in time.

I don't know if the same is true if it's a fine, or at least at a minimum even if I were to impose a fine at some later date, that I could do so without Mr. Clark's presence, because we could always reconvene and continue sentencing for that purpose.

15

And I could hold off on entering a judgment if we did it that way and make clear that the sentencing hearing would continue to a later date. I think that might be consistent with the law.

But I don't know that I can just sort of have sentencing today and then at some point later just enter an order saying the fine is X amount.

Do you think I can do that? I don't think I can do that.

MR. BOYLAN: I think you might be right, Your Honor.

Looking at the statute, it looks like the imposition of a fine has to be at sentencing. So if you wanted to delay, I think, like you suggest, you might have to continue the sentencing.

THE COURT: Okay.

Well, I'd like to go forward today on the non-fine portion of the sentencing if everybody is in agreement that we do that.

MR. BOYLAN: Yes, please, Your Honor.

MR. MACHADO: That's fine, Your Honor.

THE COURT: Okay.

All right. So are there any other preliminary issues that you all would like to raise?

MR. BOYLAN: Not for the government.

16

MR. MACHADO:  Not for the defense, Your Honor.

THE COURT:  Okay.

So let me just go through the Guidelines calculation and then we'll turn to the parties' allocutions.

So as discussed, Mr. Clark has five points based upon prior convictions at paragraphs 52 through 53 and 55 through 57.  Those points are capped at 4 because they are all misdemeanor offenses, so he has a Criminal History Category of III.

And I should add, that's also a reason not to downward depart, because, in a sense, there's at least some reflection of a lesser criminal history or criminal -- total Criminal History score that would, in one sense, eliminate the one count -- the one conviction for which he just has a possession of marijuana.  So in other words, even if you eliminated that conviction, he'd still have four points, which is what he ends up with anyway because he's capped.

So then the offense level in Count 1, the applicable Guideline Range is -- excuse me, Guideline is 2B2.3(a) for trespassing.  The Base Offense Level is a 4. Because it was a restricted building or grounds for two levels, for a total offense level of 6.

Count 2, applicable Guideline is 2A2.4(a).

For obstructing or impeding officers, Base Offense Level is 10.

17

The Guidelines are not applicable for Counts 3 and 4 since they are Class B misdemeanors.

The two counts do group, for a total offense level, final total offense level of 10, which is the highest offense level.

With a Criminal History Category of III and an offense level of 10, the Guidelines Range is 10 to 16 months; however, it is capped at 12 months since that's the statutory max.

So the Guidelines Range is 10 to 12 months, and the fine is 4,000 to $40,000.

So with that, why don't we turn to Mr. Boylan and I'll hear from the government.

MR. BOYLAN:  Your Honor, I just want to make a point:  I don't think it is capped.  I think that the Court -- the Guidelines say that you could run -- because you can run the sentences consecutively, that the Guidelines Range of 10 to 16 applies.

And I can try to find that for you.  We went through this when we were drafting our memo.

THE COURT:  Okay.

Yeah, do you have that handy?  I can take a look.

MR. BOYLAN:  If you give me just a couple minutes, Your Honor, I can grab mine.

THE COURT:  I'm going to grab my Guidelines as

well.

Ms. Lustig, do you have a sense of that?

I don't know if -- whether the Guidelines are capped by the statutory maximum when it involves two misdemeanors.

PROBATION OFFICER:  Your Honor, so you can impose up to 12 months on each count.

So the Guidelines Range is 10 months to 16 months. You can impose the sentence to reach whatever your intended sentence is.

So if you wanted to give a sentence of 16 months, then you could sentence him to 12 months on Count 1 and four months on Count 2, to run consecutive.

THE COURT:  Right.

PROBATION OFFICER:  The entire Guidelines Range for the two counts is 10 to 16 months.  You can stack them.

THE COURT:  Okay.

So I can stack them?

PROBATION OFFICER:  Yes.

THE COURT:  Okay.

MR. BOYLAN:  Your Honor, the cite would be Section 5G1.2.

THE COURT:  5B1.2?

MR. BOYLAN:  I'm sorry, 5G1.2.

PROBATION OFFICER:  It's paragraph 114 in the

Presentence Report as well, Your Honor.

THE COURT:  Okay.  All right.  I get the point.

All right.  Fair enough.  Fair enough.

So I think that's right, because the statutory maximum is less than the total punishment under the Guidelines, which is 16 months, and that there's more than one count, I can -- the top of the Guidelines is 16 months.

And as Ms. Lustig said, it would be a Guideline-compliant sentence if, for example, hypothetically it would be 12 months on one count, four months on the other if that's the sentence that was ultimately determined to be appropriate.

Okay.  So thank you, Mr. Boylan, for that correction; and, Ms. Lustig, thank you for the information.

And so with that, Mr. Boylan, we'll hear from the government.

MR. BOYLAN:  Thank you, Your Honor.

The government in this case, Your Honor, is recommending a sentence of 12 months, which is, as you stated, the statutory maximum for one of those counts, in addition to 12 months of supervised release, 60 hours of community service, the fine that we discussed of $16,879, and $500 for restitution.

For the government, Your Honor, we believe that the sentence would be appropriate in this case for three

reasons:

First, Mr. Clark's conduct on January 6th;

Second, for his lack of respect for the rule of law that he exhibited on January 6th and in his long history of criminal activity, stretching back for decades;

And, third, for the lack of remorse that he has shown for his actions on January 6th since that day and continuing through and past trial.

I'll start first with the defendant's conduct on January 6th, Your Honor.  And I know that the Court sat through trial and is familiar with the case, so I'll be brief, but I do want to point out some of the most important aspects of what happened and what Mr. Clark did on that day.

Mr. Clark arrived at the Capitol wearing a mask.  And it wasn't just any mask, the mask was a Guy Fawkes mask, a historical character who's associated with the violent overthrow or attempted violent overthrow of government.  I would say that that mask turned out to be rather prescient for Mr. Clark's conduct.

Once he arrived on Capitol Grounds, he encountered innumerable signs that should have told him and did tell him that he shouldn't go any further.  He ran into an active police line, he saw signs, fences, alarms, pepper spray, tear gas.  He ignored all of them.  Instead, even after he witnessed violence against police officers, members of the

21

mob throwing objects at police, he still decided to go further, and he decided to go into the Capitol Building.

When Mr. Clark went into the Capitol Building, he joined a group of other rioters, who pushed physically past police officers, police officers who were outmanned, overmatched, and they pushed their way inside.

Once Mr. Clark was inside, he stayed inside the building for an extended amount of time, not a minute or two, but 24 minutes.  Given the circumstances, given the chaos that was around him, it's a considerable amount of time to be in a place where he shouldn't have been.

Once he was inside, he went into a sensitive area, the officer of Senator -- the office of Senator Merkley. That's one of the most private areas that a person has, is their workspace; Mr. Clark went inside.

During the rest of his time in the Capitol, Mr. Clark engaged in rowdy, disruptive conduct.  He was smoking, chanting.  He encouraged other people to stay inside the building.

The defense memo says that Mr. Clark wasn't one of the rioters who disgraced the Capitol Building on January 6th.  I think that statement couldn't be further from the truth, Your Honor.  I think "disgraceful" is exactly the word I would choose to describe the behavior and the conduct that Mr. Clark engaged in that day.

22

Going to the second rationale for our sentence, Your Honor, Mr. Clark has exhibited lack of respect for the rule of law stretching back years, on January 6th, and since January 6th.

Looking at Mr. Clark's criminal history, it's deep and it's wide, Your Honor. As the Court said, it's not serious conduct but it's continuous. It exhibits the patterns and the beliefs of a man who believes the law does not apply to him. That same belief was evident on January 6th. Mr. Clark saw police officers, he knew what their commands were, he heard them, and he disobeyed them continuously.

Since January 6th, that opinion of his hasn't changed. He's blamed Capitol Police officers for what happened that day. That goes to Mr. Clark -- the third point that the government would like to point out, that's Mr. Clark's lack of acceptance and his continued lack of remorse from January 6th through his trial and up to today.

THE COURT: Mr. Boylan, could I ask you a question?

How does the government see this issue? Because I have to tell you, I don't know if I've had anybody quite in Mr. Clark's shoes.

I've certainly had people who have sort of celebrated the events of the day after January 6th. But

23

I don't know that I've had anybody who, even months and months, years later, actively at least, I think, still to this day, continues to believe that this was essentially a government ruse designed to entrap people. He clearly obviously has a right to hold that belief and express his views about that. I guess I'm wondering how that ought to fit into the overall thinking into sentencing.

MR. BOYLAN: I think it fits neatly into a lack of remorse and lack of acceptance for what happened that day.

Your Honor, I think you're right that Mr. Clark has a right to believe that, but the jury has the final word.

In this case, the jury has said that Mr. Clark's conduct was a violation of multiple criminal laws, and his choice to not accept that and to continue to propagate the false information that you're talking about, Your Honor, it's a refusal to accept the facts. So I would put it squarely in that category of a lack of remorse.

And that's what we've seen from Mr. Clark. We saw that since January 6th. He's continuously lied about what happened that day. He's continuously propagated false information. He did it at trial. He did it through social media since then. He's blamed the FBI for what happened on January 6th. He's blamed the Capitol Police. He blamed Ray Epps for what happened on January 6th. All of it,

24

Your Honor, he blames everyone except himself.

At the end of the day, Mr. Clark has refused to take that accountability, and it's one of the primary reasons that the government believes that this 12-month sentence is the appropriate sentence in this case.

That's all I have unless the Court has any further questions for the government.

THE COURT:  No, I have nothing further. Thank you, Mr. Boylan.

All right.  So, Mr. Machado, we'll turn to you next.

MR. MACHADO:  Thank you, Your Honor.

Just a couple things, and some of it relates to what Mr. Boylan just said.

I want to let the Court know that with regard to the lawsuit that Mr. Clark is having -- or had filed with Mr. Ray Epps, Mr. Clark has essentially -- letting it die and is not pursuing it anymore.  In fact, I checked the PACER docket and there was an Order to Show Cause why the matter should not be dismissed for lack of prosecution.

Mr. Clark has come to some realization as far as Mr. Epps and actually thinks, you know, his thoughts of what Mr. Epps's done, that he may have been wrong about it and so he's decided not to pursue it.  He has not taken any action on it.  And so to say that he has, you know, not changed his

position in any way, I think that's some indication of where he is.

But I think -- because I want to cover this as far as the government, Mr. Clark has an absolute right to believe what he believes. And, you know, whether we like it or not, there's a significant portion of the population that believes certain things.

The government stands and says, absolutely, that's not true. And that decision is the government's right to have that decision and to put that position, and Mr. Clark has his First Amendment right to think otherwise.

The fact that he committed a crime is what he's dealing with right now with regard to being in the Capitol. The fact that he has opinions that the government disagrees with and insists on the fact that you're just downright wrong about that, well, I mean, he has a right to believe what he has to believe, and he's not alone in that.

Now, I'm not saying that he is right and I'm not saying that he is wrong, but what I'm saying is he has a right to share his opinion, and that should not reflect that he has no remorse.

He still has that opinion, and it's not in any way a reflection on the fact that he thinks that what was done was wrong, I mean -- or -- right or wrong, because, you know, frankly I've spoken to him, and he's like, if I

26

knew -- and I think he'll address this when he talks to the Court or responds to the Court, you know, if he could do it all again, he wouldn't have been there, not just because he got caught but just because -- and I was going to get into this a little later, but he was disgusted by what he saw when he left, what -- the actions that he saw from other people, particularly the attacks on the police and everything that he saw with regard to that.  So to say that he has no remorse because he disagrees with the government, I think that's an improper fallacy, and I don't think the Court should hold that against Mr. Clark.

Now, just going to the fact of talking about Mr. Clark.  And, you know, obviously, he does have a criminal history, and, as the Court knows and as we made mention, all of this is rather dated.  His last one was in January of 2018, and that's when he stopped using drugs. But he had an incredibly long history of using drugs, and that -- it's not explaining or justifying it, but I think it speaks volumes to the fact that he didn't get into any trouble once he stopped using drugs, with the exception of this case, of course.

But Mr. Clark had a life of an incredible amount of ups and downs before January 6th, and there have been changes afterwards that are in a positive -- going in a positive trajectory, and I want to point some of those

27

things out because I think Mr. Clark is definitely improving on his life and there were major steps that he's had to deal with.

He talks about his childhood and an abusive father, his marriage, and he was raising kids on his own. I won't go too much into that, and I've already mentioned the drug problem.

Yes, it was deep and wide, his criminal history, but his use of drugs was very deep and wide.  I can't recall ever having a client who had used so many different drugs.

And then he ends up with a situation where he is using heroin and methamphetamine on a daily basis, speedballing.  I mean, it was just -- it's a collision course.

It's amazing that he is still alive, and it's amazing that he was able to stop.  And that should be lauded.  And that's an amazing amount of willpower.  And how that is important to this is the fact that, when he is choosing to do what he needs to do in order to do the right thing, he does that.  He has -- he's compliant with what he -- with what he needed to do.

He represented himself pro se.  I mean, that's a -- I mean, an incredible -- I mean, frankly, I thought he did a relatively good job as a pro se.

Now, you know, when he -- and let's just get back

28

to what happened -- yes, Your Honor.

THE COURT:  Let me just go back to a point that I raised with Mr. Boylan that you touched on.

So how would you have me think about -- it's certainly true that he has a right to have his views and his beliefs, but can I not take into account that the expression of those views and those beliefs in this context not only reflects a lack of remorse, an acceptance of responsibility, but also sort of continues to contribute to what is in my view, I think, the correct view, that the events of January 6th were not what millions of people saw and that we're not supposed to trust our own eyes; that Americans are supposed to believe that the FBI, the Capitol Police, the D.C. police somehow conjured all of this up in order to entrap otherwise people of good will who were there simply to express their -- themselves.

MR. MACHADO:  I don't --

THE COURT:  It's just not what happened.

MR. MACHADO:  No.

I mean, perhaps he can address it better than I can, but I don't think that his feeling is, you know, it was all an incredible setup.

He thinks that there were people that were involved that were instigators.  And, you know, frankly, he -- I mean, that is his thought.  But that's not to a

29

level of remorse; I don't think that should reflect on remorse.

I mean, you know, we have situations where information comes out at a later time about certain facts and certain circumstances.

And maybe Mr. Clark is wrong in hearing what he believes -- or believing what he hears. Maybe he's absolutely wrong as far as what is the actual fact of what exactly happened. But -- the absolute truth.

But that is his understanding. And I mean, that's -- he's been rather, you know, well researched in this, and I -- his -- the fact that we disagree with him, I don't think that should mean, therefore, he needs to have a greater sentence for that. I mean, respectfully, I disagree. I'm not saying that he's right, although my opinion really doesn't matter. And so I think that you should not hold that against him when the Court is deciding what's a proper sentence.

This was not a situation whereby he took the stand and passed along his theories, and so, therefore, there was some sort of obstruction of justice.

He -- you know, presenting lies about why he was there. He didn't do anything like that as far as taking the stand, unlike the cases of -- that they cite, the government cites of Stewart Parks and Russell Alford.

30

I'm obviously well-versed, as is Your Honor, about Stewart Parks, as I represented him. And the Court was none too happy with the testimony of Mr. Parks, respectfully, of course.

And I saw the sentencing memorandum and the complaint in Mr. Russell Alford's case, and the government goes on pages and pages about all the lies and all the changes of testimony that -- or the changes of the narrative that Mr. Alford was presenting when he took the stand. And you didn't have Mr. Clark do that, and I think that is a distinction that the Court should take into consideration.

With regard to what happened afterwards, I mean, you know, the fact of the matter is, his daughter, not a Trump supporter, his daughter was the one who reported him and -- which is -- I mean, I find it -- well, it seems to be -- the fact that his own child used that against him and turned him in to the authorities, obviously it's her right, but I think that was a -- perhaps a level of, I don't want to say betrayal, but he was hurt by that.

But the matter of fact [sic] is -- the fact is, he continued to support her, to love her, and to give all -- and still cared about her, he didn't shun her.

And, frankly, Your Honor, I am proud to say -- and I talked to her -- talked to her earlier today, that their relationship has improved so much that, in fact, she

has -- and I'll discuss this a little later -- she has actually offered that she wants him to return back and live with her so that she can be -- he can be with the grandkids and that he can help.  So she obviously has forgiven him the way that he forgive her from the beginning.

I think that's -- and I should mention that she became baptized two weeks ago.  I think that had to do a lot with a change in her heart as far as Mr. Clark is concerned.  But the fact that he still loved her and still supported her, even though he reported her [sic], says a lot about the character of Mr. Clark.

He does now live in Pensacola, and that was because of -- this situation made him take so many steps backwards.

He ended up losing his job when they found out what happened.

And then he ended up becoming homeless.

And thanks to the good graces of some people, he was able to relocate to Pensacola and reside there, he was able to get a job there.

And, as the Court saw from the letter, he's living at -- or he's living in Pensacola and working at the Perdido Bay Golf Club and cottages.  And that's since the beginning of 2024.  And he's already received two raises and has received a promotion to an operator.

32

And so he is definitely trying to be a good citizen and trying to improve his life.  You know -- representing himself, again, was just a major -- major step, and it shows -- well, I'll just -- I've already covered that, Your Honor.

But what it comes down to is the fact that Mr. Clark is in a positive trajectory here.  He has been complying with release conditions, employment, multiple pay raises.

And what we are hoping is that the Court, in considering what the Court should do, he -- obviously there is punishment, but I think that there is no need for additional deterrence by making him serve jail time. I think home confinement would be sufficient so that he can maintain his job.

We would ask, as I made reference to that, if the Court allows, if he decides that he's going to move back to Kentucky, that he be allowed to transfer there whatever probation or supervised release or whatever condition, although he would like to -- if the Court decides that jail is necessary, he would like it to be in the Pensacola -- the Pensacola area, rather than in Kentucky, as he will just be in contact with them via -- his family via phone calls and letters, rather than seeing -- he doesn't want his -- his daughter and his -- doesn't want -- and he doesn't want

his grandchildren to be seeing him in this situation, and so there would be nothing to be gained as far as having him in the Kentucky area.

I'll mention also just -- I've seen a lot of growth on the part of Mr. Clark. I mean, the reason that he represented himself pro se and he -- is his mistrust in the system. He has not necessarily trusted the "system" in general, as you can imagine, as that is part of his thought process in what he believes in, but he has come a long way.

I can say, just on a personal level, he now -- we have a much better relationship than what we started with, so much that I now consider him a friend. And he, you know, has often -- well, he has often said the fact that, you know, perhaps he should have been more trusting to begin with.

And I am touched by the fact that after his trial, that he was at a point of trusting me to represent him. And I'm happy to do so. And I wish for him the very best. And I hope that the Court understands what an incredible leap that is from where he was at the beginning of this process.

I will also mention that he's told me in confidence, and this is not in any way trying to make a comment on the Court to "brown nose," but he said he received a fair trial, which I think that that says a lot to his respect as far as the system. And while he may disagree

34

with the verdict, of course, he does feel that he was treated fairly by Your Honor, and that's a long way from where we were previously when we started.

So when -- and in conclusion, Your Honor, when you look under the factors of 3553, I would ask the Court to consider the fact that Mr. Clark has grown, there's been many steps backwards, both during the pendency of this case, as well as his life, and he's taking many steps forward, and it's through sheer will and determination that he's gotten there.

And his opinion of things have changed.  Again, I'll let him address that better than I would.  But I would ask that we continue to -- encourage him to continue on this trajectory.

I don't think that we'll be seeing Mr. Clark. At this point, he wants to become apolitical.  He doesn't want to be part of the system and doesn't want to be called a patriot by one side or an insurrectionist by the other. He just wants out.

He does not want to be just a cog in the whole back and forth between, you know, one side or the other. He just wants out, he wants to move on with his life, and I would ask that the Court consider a sentence that would allow him to do so.  And I know that Mr. Clark would like to address the Court, but I would ask for the Court to consider

a sentence that just allows for home confinement.

We've provided the Court with a list of what we have seen as far as the different individuals who have been sentenced for these four charges.  Just less than half were sentenced to 60 days or less.  You had three people who were on probation.

And so we're not asking for probation.  I think home confinement, which was a sentence that was received by one individual, I think it's an appropriate one, given his circumstances, given the fact that he's doing a good job, and given the fact that he does need to pay at least on that level for his actions.  Thank you.

THE COURT:  Sorry, Mr. Machado.  Hang on for one second.  I just had a --

MR. MACHADO:  I hope you didn't miss too much of what I said, Your Honor.

THE COURT:  No.  I just missed the last couple minutes -- couple seconds.

MR. MACHADO:  Okay.

THE COURT:  If you would just repeat yourself. I'm sorry.  I plugged in the wrong charger cord.

MR. MACHADO:  Oh, that's fine.

THE COURT:  And if you can just sort of -- if you could make your concluding remarks, Mr. Machado, because I do want to hear from Mr. Clark.

36

MR. MACHADO:  Sure.

And I just say that, again, you know, I'm hoping that we're continuing on this positive trajectory.

We're not asking for probation, we're asking for -- I mean, he has to pay some level, and I think, given his circumstances, given his employment, that I think that we can accomplish that by requiring him -- home confinement for part of it.  He can't just walk away simply with probation, we agree.

And did the Court hear about my arguments as far as the people that have been sentenced similarly?

THE COURT:  Yes, yes.

And I've certainly read and looked at those comparables.

MR. MACHADO:  Okay.  All right.  Thank you.

THE COURT:  And if everybody -- before we turn to Mr. Clark, I just want -- if I could just get 15 seconds of your indulgence, I want to just grab a drink of water; I'll be right back in a moment.

MR. MACHADO:  Yes, Your Honor.

(Pause)

THE COURT:  Just the two of us.

MR. MACHADO:  I'm here, Your Honor.  Sorry.

THE COURT:  Sorry, Mr. Clark stepped away.

(Pause)

THE COURT:  Okay.  So why don't we hear from Mr. Clark.

Mr. Clark, I'll give you the opportunity to be heard.

THE DEFENDANT:  Absolutely, Your Honor. Thank you.

I apologize for not being here when you got back; I just ran to the restroom real quick.

THE COURT:  No, that's fine.

THE DEFENDANT:  So, Your Honor, there's been a lot said by the prosecution and by my defense attorney.

And I do appreciate Mr. Machado greatly.  He has gone a long way to dispelling just a general distrust in lawyers from my past life as a criminal.

And I understand the prosecution's point of view that that record is lengthy.  It's lengthy; it expands decades.

But that is not who I am today, Your Honor. I found sobriety in January, and it led to me finding God and to being a more forgiving, more open-minded person.  You see that in my forgiveness in my daughter.

There are consequences to two and a half decades of drug use, especially drugs like methamphetamines.  And some addling that goes on in the mind.  And some paranoia that causes maybe a more conspiracy-laden ideology to exist.

38

And I fought with that.  I fought with that.  And I'm not going to say that it's fully dispelled, because it's not.

I would like to address the mask.  To me it was a symbol of anonymity.  And in modern times, that's what most people see.  They see it and it brings to mind the sort of -- the hacktivist group, Anonymous.

It's more synonymous with anonymity than it is some long dead man from the 1600s that tried to blow up Parliament.

And that was not at all my intent to represent that when I came to our nation's capital, Your Honor. I came to view a speech.  The speech giver was the President and he asked us to walk down to the Capitol.

When I got down to the Capitol, the things that I saw with my own eyes continued to lead me to believe that there was some things that just didn't add up.

I didn't witness violence toward the police personally.  Maybe because it's I'm short and I was down a couple steps, up at the top there.

In hindsight, looking at the video, I can see that that did happen.  And I wish I would have been more attentive there.  I wish that I hadn't have gone, in a small part, along with crowd mentality.  And I do regret that.

As for my social media, Your Honor, a lot of that

39

has been -- and this is being completely honest with you, sir -- a veiled attempt to find out who all was involved in what I looked at as a setup.

I'd heard an interview with someone from a right-wing pundit, who was doing an interview with a January 6th defendant by the name of Landon Copeland.

And he had said, whether it be true or not, it stuck with me, that he attended the Capitol with a group of 250 members of what he calls Antifa, what I look more as just common people that have probably gotten in trouble in their past and agreed to work as a confidential human source and to ask for leniency for past crimes.

I believed a lot of these people were still playing a role as Trump supporters, trying to push ideology such as all cops are bad and things of this nature. I don't agree with that, Your Honor.

Law enforcement and the consequences played a huge role in my own sobriety. A huge role. I am grateful for the consequences of law officers in my own community of Louisville, Kentucky, that played a big part of making me see the error of my past ways. And helping to push me in a more Christ-driven direction, a more productive direction for society.

And on January 6th, I honestly thought I was going to watch speeches. I thought we were going to walk down to

40

the Capitol to see more speeches.  Yes, Your Honor, I saw broken glass and I went on into the building anyway.

Yes, Your Honor, I heard a fire alarm, and that should have been a sign to leave.  But in the moment, it wasn't.  I honestly never heard a single police officer ask anyone to leave or I would have.

And maybe I should have thought to bring my father in, because I was on the phone with him when I went into the building.

26 minutes in when Capitol Police finally did ask someone to leave, that was my immediate remarks to my father -- my stepfather, who is like a father to me, was, "Dad, they're asking everyone to leave; I think I'd better leave."

So I did.  At that point, I left the building. Did I chant some things beforehand, not knowing that that type of behavior was illegal in the Capitol?  Most certainly, most certainly.

And had I known it was illegal, I probably wouldn't have raised my voice.  I would have just stood there, because I was just more interested in what is really going on, right?  What is really going on?

After the fact, you have two political parties trying to push opposing narratives that neither one of still seem to add up to me, because when I got back to my hotel at

41

the end of that day, to me it was a beautiful day, it was something that -- it was beautiful to me, but I didn't get to witness any of that violence, I didn't go over near that tunnel.

Some of the people that I had went with had stayed way back by the reflecting pool. And they showed me a small clip that they had taken of what took place in that tunnel.

And, Your Honor, my heart sank as like, is there a chance that this isn't what I perceived it as? And it took me a while to see it and to took a lot of -- like I said, veiled attempts on social media to kind of go along with the people that I thought were involved.

So back to Landon Copeland. He said he went with 250 people. At that time, that was approximately -- and 100 of them had been arrested and were still playing that role.

To me, in my conspiracy-laden mind, that was about 10 percent of the defendants at the time. And I figured most were probably listening to their attorneys, staying off of social media so that those voices that were the loudest on social media were probably those people he was talking about, those people saying that this was all the police officers' fault, this is all the cop -- I don't believe that.

I believe their only fault in my case was not telling us to get out as soon as we came in, in a manner

42

that is more in concordance with D.C. law.  Note they had PA systems they could have used.  They had a variety of means that they could have employed.  Being hindsight in their eyes, too, of course, right?  I mean, I'm sure they were just as caught up in the moment not knowing how to react.

But it doesn't change the fact that they didn't use those methods.  When I -- the first time I heard an officer tell people to leave, I left, I left.  I never engaged in any violence.

I don't deserve to go to prison over this, Your Honor.

And I'll be honest, if remorse is me saying I deserve to go to prison, then I don't have it.  I feel like I do.  I feel like I've learned something from this.  I've learned that it's not a good idea to get involved in politics; that both sides are equally as corrupt and that neither really have our best intentions at heart.

The Republicans allowed me to come see the CCTV footage there in D.C.  Did not allow me to use it for trial; they kept it from me at my request.  So it was kind of a moot effort at the end of the day.

I mean -- and I would love to, if Your Honor would give me the opportunity, to move on with my life and participate in my church and advance my career.  And if that means some home incarceration, I accept it.

43

Your Honor has been fair throughout this trial. Whether I agree with all of your decisions or not is still there.  Maybe had I been more trusting of my counsel, I could have gotten better results.  I see that now.  I see that Mr. Machado was looking out for my best interests, and I wish I had seen it sooner.

There's a lot I would still like to say, but I find the words just aren't there, Your Honor.

I leave this in your hands, right?

I mean, I have not committed any other crimes since 2018 other than my presence there, with a very extensive record.

I have stayed away from the use of drugs and alcohol.

I have made a continued effort to better myself, and that fell apart for me when I was arrested over this. It fell apart for me.

I went from addict to almost middle class, back to homeless again, all right?  And relied on the good graces of others through the providence of God to not be homeless sitting here talking to you.

I feel like I've suffered a lot through this process already, as well as learned a lot.

And maybe I don't deserve your mercy, but it is a Biblical principle and I ask you for it, Your Honor.

44

And I think the mercy is in John Machado's recommendation.  I can live with home incarceration. I would ask not only that after a couple of months, that I be allowed to go back to Kentucky, you know, spend some time here.

I made some commitments to the woman who was kind enough to take me into her home to be here to watch this home while she takes a trip to see her very old father at the end of July.  I'd like to be here for that.

And then maybe put a few dollars in my pocket to help my daughter out.

And then transfer that home incarceration to Louisville, Kentucky, to finish reconciling my relationship with her, to get to know my grandchildren better again.

And I know I'm asking a lot.  I know what your opinions on this matter are.  And it would be very easy for you to give me the full maximum sentence.  My criminal history shows that it's warranted.  And you've seen a lot more of these cases than I have.  I defer to you and your mercy, Your Honor.

THE COURT:  All right.  Thank you, Mr. Clark.

MR. MACHADO:  Your Honor, I forgot one request and Mr. Clark didn't say it, and that is, if the Court decides that he wants to -- that the Court is going to give an extended sentence, Mr. Clark has asked if the Court would

45

consider that he would be allowed to report after the holidays to serve the large amount of time.  I don't know what the Court is thinking in that regard, but...

THE COURT:  So could you -- I'm sorry, Mr. Machado, I need you to be more precise.  Which holidays are you referring to?

MR. MACHADO:  Oh, I'm sorry.

December, the Christmas season, Your Honor. I apologize.

And the other thing that he requested is that if he does have to report, right now he is extremely low on funds and he can't even afford an Uber to go to and from, as far as having to report to the officials in Pensacola.

And so if he could be given until -- if -- whatever -- requires him to report, if it could be a week from the next Monday, he'll have gotten his most recent paycheck and will be able to afford that.

So I just wanted to make those two requests.  My apologies for not bringing it up sooner.

THE COURT:  Okay.

Just to make sure I understand, the last request is to -- is a self-report date of a week from next Monday?

MR. MACHADO:  No.

Well, not a self-report date.

But if the Court is requiring him -- I mean, we're

46

asking a self-report date, you know, whatever the Court desires, though that self-report date, we would ask that it be in January, as I mentioned previously.

But if the Court, in stating its sentence, is going to tell him to report within the next 48 or 72 hours to the Probation Office or something to that effect, that he can either do it by phone, or if he has to do it in person, that he can do it Monday of next week, because he just does not have the funds to be able to get there.

THE COURT:  I see.  I see.

MR. MACHADO:  So it would be January 17th -- or, I'm sorry, June 17th, sorry.

THE COURT:  Okay.

All right.  I think I understand.

MR. BOYLAN:  And obviously Your Honor, for the government, we would object to a report date that's six months from now.

THE COURT:  All right.

Give me a few minutes, everybody.  I just want to take a few minutes to collect my thoughts and I'll be back with you shortly.

(Recess from 5:40 p.m. to 5:52 p.m.)

THE COURT:  All right.  Thank you, everybody. I appreciate the indulgence.

Let me just recap what the Guidelines are.

The total offense level is a 10.  Mr. Clark is a Criminal History Category III.  That results in a Guidelines Range of 10 to 16 months, and a fine of 4,000 to $40,000.

In addition, I must consider all the factors that are set forth in 18 U.S.C. 3553(a) and impose a sentence that is sufficient but not greater than necessary to achieve the objectives of sentencing set forth in the statute.

The factors I must consider are the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, afford adequate deterrence, protect the public, and to provide the defendant with any needed educational or vocational training or medical care.  I should also consider the kinds of sentences available and the need to avoid unwarranted disparities.

I'll just begin with the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law, provide just punishment.  All of those factors obviously weigh in favor of a meaningful sentence for reasons that will become evident, in terms of the conduct here and obviously the events of January 6th, which I'll elaborate on in a moment.

48

I do think, you know, a meaningful sentence is warranted because of general deterrence to avoid -- to deter others from behaving in similar conduct.

In terms of specific deterrence, I'm hopeful that Mr. Clark has disavowed his interests in engaging in the kind of conduct he did to get him here, and so I think that factor here is a bit neutral overall.

Let me just talk about Mr. Clark's -- about the nature and circumstances of the offense.

Mr. Clark drove to Washington, D.C. on January the 5th.  The day before, he actually photographed himself in front of the Capitol, in front of "restricted area" signs. And whether he embedded that in his memory or not, I don't know, but certainly he was in a position to know that areas of the Capitol that he ended up traversing, not to mention entering the Capitol Building itself, was a restricted area.

On the 6th, he did walk to the Capitol Building, he did wear the Guy Fawkes mask.  He certainly would have seen the tear gas and the commotion, among other things, even if he did not see assaults on police officers.  In my estimation, a reasonable person in that position would have understood that this was no place to be and certainly not a place to move forward from, and yet he did that, entering through the Senate wing door at approximately 2:58 -- excuse me, 2:48 p.m.

49

As the images show, when he entered, there were multiple police officers in the hallway.  The government suggested that there was an officer with his palm sort of open toward Mr. Clark, and that Mr. Clark disregarded that officer.

It's a little unclear to me whether, in fact, the palm was directed at Mr. Clark.  There were a lot of people coming through that door and it's difficult to say whether that officer was, in fact, directing it toward Mr. Clark or toward the group as a whole and whether Mr. Clark would have even seen it in the chaos of the moment.  But still, you know, whether he saw the open palm or not is beside the point.  There were clearly a line of officers there.

You know, Mr. Clark, I -- you know, they didn't need to tell you to leave, you know, at any point in time. That is one of the things that I've heard from folks that has made literally no sense to me, that somehow you needed to be ordered to leave, when it was self-evident you shouldn't have been there in the first place.

You know, these ideas that officers were inviting people in, and, you know, thought this was okay, well, you know, A, that's not true, but, B, they were outmanned by thousands and thousands of people.

And so the idea that officers were going to try and round people up, physically remove them from the Capitol

Building, is just a fanciful notion.

I think they were there, and their primary duty at that point seemed to me to protect legislators and staff members who were huddled in fear from those people who entered the building, some of whom meant real harm to them. I am not saying you did, but there were those in that crowd who did, Mr. Clark.

And, you know, the fact that police officers may not have said at some point in time "leave" while at least you didn't hear them say that, doesn't mean you were permitted to stay there, certainly not for the 24 minutes you were there.

You know, there is cell phone video of you saying, no, we're trying to get out -- "No, we're not trying to get out.  This way, this way."  They're pushing you out of the building this way.  "They want us to get out of the building.  I'm not going there."

I don't know if that was directed at anybody in particular, but it certainly reflects an unwillingness to abide by whoever was -- and I'm not -- you know, it seems like somebody was telling you to actually get out, and yet that wasn't what you did, at least not for another 24 minutes.

I do think it is serious that you entered Senator Merkley's office.  You know, you weren't in there long, but

51

I thought and believe that people who entered offices engaged in more serious conduct than people who just simply roamed through the halls.

You know, in terms, Mr. Clark, of what has happened afterwards, and, you know, your interview with the FBI and that you thought it was a staged event, this was just months later, I will tell you, I don't think I was aware that it was your daughter who turned you in, that was news to me or at least had not stayed in my memory.

You know, this issue of how I ought to treat how you have thought of the events of that day and how you have approached this case is an interesting one, because, as I said earlier, I don't think anybody is punished for expressing themselves.

You know, at the same time, Mr. Clark, at least until today, there haven't been a lot of words of remorse or regret even, frankly, recognition of your role in what was really a black day in the history of the country. And you contributed to it, there's no two ways about it.

And, no, you didn't assault police officers, and, no, you didn't destroy property. That's a good thing. But being there for 24 minutes and moving through that crowd and entering that building certainly emboldened others to do the things that you're not charged with.

You're not responsible for their conduct as a

legal matter, but certainly it is fair to say that if you hadn't been there, along with thousands of others, those people who did police -- assault police officers, those people who did destroy property, those people who genuinely threatened the lives of legislators, and there were people in that crowd who did that, I've sentenced them, you know, doesn't happen unless there are thousands of people standing by them, even if they're not necessarily legally and technically responsible for them.

I've taken into account the government's views in terms of lack of respect for the law and lack of remorse.

And I will just say this, Mr. Clark.  Again, you know, you know as well as I do that we live in very caustic times, and -- in which, for reasons that are unclear to me, people can't seem to, even on things that ought to be, in my view, objectively understandable, can't even agree on those things.  And January 6th, in my mind, is one of those things.

I mean, just the other day, this was sort of shocking to me.  There were two officers who went into the Statehouse in Pennsylvania who were called on to one of the floors in the Pennsylvania legislature and they were jeered when they were in there.  Two police officers who were hurt in the line of duty, who did nothing more than their duty, were jeered when they walked on to the floor of a state

53

legislature.  It's -- I'm not quite sure how anybody can wrap their head around that and find that to be acceptable.

And while, Mr. Clark, there's nothing criminal and there's nothing improper about the views that you held and the views that you've distributed, certainly having contributed to -- dispelling the idea that January 6th was anything other than it really was, which was an affront to the rule of law and a disgraceful episode in which the lives of police officers were put on the line.  Those are just the objective facts.  And the fact that people cannot accept that is just -- continues to mystify me, and is just -- continues to be very disappointing.

You know, Mr. Clark, I have actually grown to really appreciate you during the course of this trial, because I actually think you have grown as a person. I don't -- I hope -- I appreciate your kind words, and I certainly have tried throughout these proceedings to be fair to you.  And now that I've learned a little bit more about your background and some of the challenges that you faced in life, I sort of have grown to appreciate you some more.

You know, you're now 47 years old, difficult childhood in which your father -- you had to be plucked from your home at the age of 3 because of your father's drug abuse.

No contact with your father until you were 13 and

54

then not really until your 20s, which, by the way, you know, it's not an unfamiliar story in different kinds of cases that people believe should constitute mitigating facts.  And it is fair to point out that those when those facts are present for January 6th defendants, those are mitigating facts for them too.

Now, you know, you have two adult children, and the fact that you raised them yourself is remarkable; high school graduates.

You know, the drug addiction, Mr. Clark, it really clearly has defined who you are and who you have been for decades of your life.  And your lawyer's right that in some sense you're lucky to be alive.  It certainly puts some of the criminal conduct in perspective.

And so the fact that you're a Criminal History Category III, I don't view that in the same sense as somebody who has five criminal history points for assaultive behavior, although there's really none of that.  And so I think in that sense, the Guidelines are a little bit overstated, even though they may not require a departure.

I think it's -- you know, we've gone so far down the road in these January 6th cases that I don't know how much people even are paying attention anymore.  I wish they would, because there are defendants like Mr. Clark, who, I think, people should understand are much more complex than

55

just what they did on January the 6th.

And it's easy to quickly characterize somebody as an insurrectionist, a rioter, what have you, without understanding who the person really is. And that's where we as judges come in, to try and actually get an understanding of who the person is and not simply act reflexively and assume the worst in everyone.

You know, one of the important factors that I've tried to take into account throughout these January 6th cases is obviously the need to avoid unwarranted disparities. The parties have provided various comparators.

Mr. Machado, the three cases you've cited that you believe are comparable comparators, that's *U.S. v. Tew*, T-e-w, 22-CR-27; *U.S. versus Horn*, 21-CR-301; and *U.S. versus Homol*; H-o-m-o-l, 23-CR-50.

You know, they're all really different cases. Mr. Tew actually entered a plea as to all four counts. He was a category 1 defendant. Had one misdemeanor, which he got at the age of 39, got 24 months' probation.

Mr. Horn was guilty following a trial but no prior convictions. The defendant received the zero-point offender reduction, he was 25 years old, and he got 12 months of probation.

Mr. Homol pleaded guilty, in fact, to one count and then was convicted by a jury on the others, which is

56

unusual.  But he too had no priors, although his offense level was an 11.  He had 24 months of probation, 90 days of home detention.  So I suppose in some sense he's a little bit comparable to Mr. Clark but not quite in terms of criminal history.

At the same time, you know, the government has presented a couple of comparators; that's *U.S. v. Hart* and *Alford*.

And *Alford* I'm less familiar with, but as Mr. Machado points out in that case, the defendant actually testified; in fact, received a two-level obstruction enhancement.

He, however, was a category 1 offender, and he was convicted after trial and received 12 months.

Mr. Parks, who I'm quite familiar with, I presided over his case.  He was actually an 11-point criminal history -- excuse me, a total offense level, received no zero-point adjustment -- excuse me, with the zero-point adjustment.  He was an 8 to 12.  He actually had five misdemeanor counts, because he actually had an additional count, theft of government property, which increased his Base Offense Level.

But Mr. Parks, unlike Mr. Clark and Mr. Alford, didn't -- took the stand, and in my estimation, was wholly incredible, and to this day continues to suggest that he

57

spun a credible tale and was a victim of somehow a process that was entirely fair [sic] to him, be that as it may.

I don't think Mr. Clark fits in that category. And whether it was restraint or whatever the case may be, the fact is he did not testify, and, Mr. Clark, that was probably one of the better decisions you could have made.

The list that Mr. Machado provided of, I think, 20-some-odd defendants, you know, I can't pretend to say that I've reviewed every single one of those, I've reviewed a number of them, and I don't think that's an exhaustive list by any stretch of the imagination.

But I'll just note that there are three of those defendants, those I mentioned, that received probation, nine who received two month or less.

The average, however, for those who received time, and there are actually 16 of them.  Mr. Machado, one of them snuck in who was a 1512(c)(2) felon, who I've eliminated, 16 who did time got about 4.7 months was the average sentence.

At the end of the day, I think, you know, considering all the factors I am required to, I do think a period of incarceration is appropriate, Mr. Clark, for the conduct, for not accepting responsibility.  Even today, you continue to suggest that the police should have asked you to leave sooner than you did.  But I do think there's been

58

growth.

I do think ensuring that you are sentenced consistent with others.  And I think at the end of the day I sort of put you in an average category.  I don't just think you're somebody who has acted in an extreme way that some of the other folks are.  I don't think you've obstructed justice in an extreme way as some of the other folks who -- like Mr. Parks.

And yet at the same time, I think because you have not fully accepted responsibility and your conduct that day did contribute to the overall chaos that unfolded that day, I do think a period of incarceration is warranted.

So the Court's sentence will be as follows:

As to each count, as to Counts 1, 2, 3 and 4, you'll be sentenced to a period of five months.

You are further sentenced to serve a term of 12 months of supervised release on Counts 1 and 2.  Such terms will run concurrently.

The term of five months of imprisonment will also run concurrently, if that wasn't clear.

You also will be ordered to pay Special Assessments totaling $70 in accordance with 18 U.S.C. 3013.

While you are on supervision, you shall abide by all the following mandatory conditions, as well as all the discretionary conditions that are recommended by the

Probation Office in part D of the sentencing option for the Presentence Report, which are imposed to establish the basic expectations for your conduct.  Those mandatory conditions include:

Must not commit any federal, state, or local crime;

You must not unlawfully possess a controlled substance;

You must refrain from any unlawful use of a controlled substance.

You must submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter.

You also must make restitution in the amount of $500 to the Architect of the Capitol.  That amount can be paid in $25 monthly -- well, that amount -- or the full amount will be due by the end of the 12-month supervised release period.

You must abide by the following special conditions:

You must submit to substance abuse testing to determine if you have used a prohibited substance. You shall not tamper or -- obstruct or tamper with testing methods.

You shall remove any firearms, destructive

60

devices, or other dangerous weapons from areas over which you have access or control till the term of supervision expires.

You must complete 50 hours of community service. The Probation Office will supervise the participation in the program by approving the program. You must provide written verification of completed hours to the probation officer.

On the issue of the fine, although you've raised some amount of money off of the day's events, it's not clear to me that that money was not, in fact, spent in furtherance of your defense; and even if -- and so I'll just leave it at that.

And based upon what has been reported to the Probation Office, I will find that you don't have the ability to pay a fine, and, therefore, will waive imposition of a fine in the case. As I said, you will, however, make restitution in the amount of $500 to the Architect of the Capitol.

The financial obligation, that is, the $70 to the Court, is immediately payable to the Clerk of the Court for the District of Columbia at 333 Constitution Avenue, Northwest, in Washington, D.C.

Within 30 days of any change of address, you shall notify the Clerk of the Court of the change until such time as the financial obligation is paid in full.

61

The Probation Office is authorized to release the Presentence Investigation Report to all appropriate agencies, which include the U.S. Probation Office in the approved district of residence in order to execute the sentence of the Court.  Any treatment agencies shall return the Presentence Investigation Report to the Probation Office upon the defendant's completion or termination from treatment.

The Court will authorize that supervision of -- excuse me, that jurisdiction be transferred for supervision purposes.

So what that means, Mr. Clark, is that you'll be supervised in your home district; however, I will retain jurisdiction over the case, which means, Mr. Clark, that if any problems arise, the case would come back before me.

You do have the right to appeal your conviction of guilt to the U.S. Court of Appeals for the D.C. Circuit.

You have the statutory right to appeal your sentence.  As I said, any notice of appeal must be filed within 14 days of the entry of judgment or within 14 days of filing of a notice of appeal by the government.  If you are unable to afford the cost of an appeal, you may request permission from the Court to file an appeal without cost to you.  You also may seek court-appointed counsel if you wish. Under 28 U.S.C. 2225, you also have the right to challenge

62

the conviction that's been entered, the sentence imposed, to the extent permitted by that statute.

The Court will permit Mr. Clark to self-surrender. He has maintained strict compliance with all the terms of his release. I do not find that he presents a danger to the community, and so I will let Mr. Clark self-report. And Mr. Clark will need to report no earlier than July the 15th of 2024. That sentence starts on that day, Mr. Clark; assuming that is a full five months, you'll be out by the holidays.

All right. I think that's it.

Are there any objections or anything else anybody would like to put on the record at this point?

MR. BOYLAN: Not for the government, Your Honor.

MR. MACHADO: Your Honor, could the Court recommend that he be placed close to Pensacola, Florida?

THE COURT: Pensacola, Florida.

MR. MACHADO: Nothing else, Your Honor.

THE COURT: Thank you, everyone.

Mr. Clark, I know the sentence is ultimately disappointing, but I hope after time you can put this behind you and move forward, and I wish you the best.

Thank you, everyone.

(Proceedings concluded at 6:16 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__August 5, 2024_____          _____

                                      William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 3/2
**MR. BOYLAN: [17]** 3/19 4/23 11/2 11/25 13/4 13/7 15/10 15/20 15/25 17/14 17/23 18/21 18/24 19/17 23/8 46/15 62/14
**MR. MACHADO: [28]** 3/21 4/24 5/5 5/12 5/17 9/19 11/12 13/23 13/25 14/12 15/21 16/1 24/12 28/17 28/19 35/15 35/19 35/22 36/1 36/20 36/23 44/22 45/7 45/23 46/11 62/15 62/18
**PROBATION OFFICER: [4]** 18/6 18/15 18/19 18/25
**THE COURT: [49]** 3/12 3/23 4/7 4/11 4/25 5/6 5/14 5/24 11/3 11/23 12/20 13/5 13/22 13/24 14/7 14/18 15/16 15/22 16/2 17/21 17/25 18/14 18/17 18/20 18/23 19/2 22/19 24/8 28/2 28/18 35/13 35/17 35/20 35/23 36/12 36/16 36/22 36/24 37/1 37/9 44/21 45/4 45/20 46/10 46/13 46/18 46/23 62/17 62/19
**THE DEFENDANT: [4]** 4/6 4/10 37/5 37/10

**$**

**$10 [1]** 5/21
**$16,000 [1]** 9/13
**$16,879 [1]** 19/22
**$25 [1]** 59/16
**$40,000 [2]** 17/11 47/4
**$500 [3]** 19/23 59/15 60/17
**$70 [2]** 58/22 60/19

**0**

**0409 [1]** 3/6
**0840 [1]** 2/6

**1**

**10 [10]** 16/25 17/4 17/7 17/7 17/10 17/18 18/8 18/16 47/1 47/3
**10 percent [1]** 41/17
**100 [1]** 41/14
**11 [1]** 56/2
**11-point [1]** 56/16
**114 [1]** 18/25
**12 [10]** 17/8 17/10 18/7 18/12 19/10 19/19 19/21 55/22 56/14 56/19
**12 months [1]** 58/17
**12-month [2]** 24/4 59/17
**129 [1]** 4/17
**13 [1]** 53/25
**130 [1]** 4/18
**131 [1]** 4/20
**14 days [2]** 61/20 61/20
**15 [2]** 36/17 59/11
**1512 [1]** 57/17
**15th [1]** 62/7
**16 [9]** 17/7 17/18 18/8 18/11 18/16 19/6 19/7 47/3 57/16
**16 who [1]** 57/18
**1600s [1]** 38/9
**1706 [1]** 1/16
**17th [2]** 46/11 46/12
**18 U.S.C [2]** 47/6 58/22

**2**

**20-some-odd [1]** 57/8
**20001 [2]** 2/5 2/10
**2004 [1]** 7/11
**2005 [1]** 7/9
**2016 [1]** 6/25
**2018 [2]** 26/16 43/11
**202 [2]** 1/16 2/11
**2024 [4]** 1/5 31/24 62/8 63/7
**20530 [1]** 1/16
**20s [1]** 54/1
**21-CR-301 [1]** 55/14
**22-0409 [1]** 3/6
**22-409-1 [1]** 1/4
**22-CR-27 [1]** 55/14
**2225 [1]** 61/25
**23-CR-50 [1]** 55/15
**24 [5]** 21/9 50/11 51/22 55/19 56/2
**24 minutes [1]** 50/23
**25 [2]** 8/21 55/22
**250 [2]** 39/9 41/14
**252-1706 [1]** 1/16
**26 [1]** 40/10
**27 [1]** 55/14
**28 [1]** 61/25
**2:48 [1]** 48/25
**2:58 [1]** 48/24
**2A2.4 [1]** 16/23
**2B2.3 [1]** 16/20

**3**

**30 days [1]** 60/23
**301 [1]** 55/14
**3013 [1]** 58/22
**310 [1]** 2/5
**3249 [1]** 2/11
**333 [2]** 2/10 60/21
**354-3249 [1]** 2/11
**3553 [2]** 34/5 47/6
**378 [1]** 7/8
**378 F.3d [1]** 7/11
**39 [1]** 55/19

**4**

**4,000 [2]** 17/11 47/3
**4.7 [1]** 57/18
**40 [1]** 7/11
**47 [1]** 53/21
**479 [1]** 6/24
**48 [1]** 46/5
**482 [1]** 6/24
**4:34 [1]** 1/6
**4A1.1 [4]** 6/6 6/22 7/3 7/4
**4A1.2 [2]** 6/3 6/17
**4A1.3 [3]** 5/16 7/22 9/5

**5**

**50 [2]** 55/15 60/4
**503 [1]** 2/4
**52 [2]** 8/12 16/6
**53 [1]** 16/6
**533.020 [1]** 6/8
**535 [1]** 7/11
**539-40 [1]** 7/11
**55 through [1]** 16/7
**57 [1]** 16/7
**58 [1]** 8/9
**5:40 [1]** 46/22
**5:52 [1]** 46/22
**5B1.2 [1]** 18/23
**5G1.2 [2]** 18/22 18/24
**5th [1]** 48/11

**6**

**60 [1]** 19/21
**60 days [1]** 35/5
**601 [1]** 1/15
**6:16 [1]** 62/24
**6th [27]** 12/13 20/2 20/4 20/7 20/10 21/22 22/3 22/4 22/10 22/13 22/18 22/25 23/20 23/24 23/25 26/23 28/11 39/6 39/24 47/24 48/17 52/17 53/6 54/5 54/22 55/1 55/9

**7**

**703 [1]** 2/6
**72 [1]** 46/5

**8**

**817 [1]** 6/24

**9**

**90 [1]** 56/2
**937 [1]** 7/9
**989-0840 [1]** 2/6

**A**

**abide [3]** 50/20 58/23 59/19
**ability [2]** 14/16 60/15
**able [7]** 11/8 14/5 27/16 31/19 31/20 45/17 46/9
**about [30]** 3/15 5/16 9/16 9/18 11/5 13/14 13/16 23/6 23/16 23/20 24/23 25/16 26/12 27/4 28/4 29/4 29/22 30/1 30/7 30/22 31/10 36/10 41/16 41/21 48/8 48/8 51/19 53/4 53/18 57/18
**above [2]** 16/9 60/7
**above-titled [1]** 63/4
**absolute [2]** 25/4 29/9
**absolutely [3]** 25/8 29/8 37/5
**abuse [2]** 53/24 59/21
**abusive [1]** 27/4
**accept [4]** 23/15 23/17 42/25 53/10
**acceptable [1]** 53/2
**acceptance [3]** 22/17 23/9 28/8
**accepted [1]** 58/10
**accepting [1]** 57/23
**access [1]** 60/2
**accompanied [1]** 8/13
**accomplish [1]** 36/7
**accordance [1]** 58/22
**account [3]** 28/6 52/10 55/9
**accountability [1]** 24/3
**achieve [1]** 47/7
**act [1]** 55/6
**acted [1]** 58/5
**action [2]** 3/6 24/24
**actions [3]** 20/7 26/6 35/12
**active [1]** 20/22
**actively [1]** 23/2
**activity [3]** 12/9 12/13 20/5
**actual [1]** 29/8
**actuality [1]** 10/19
**actually [14]** 9/20 24/22 31/2 48/11 50/21 53/13 53/15 55/5 55/17 56/10 56/16 56/19 56/20 57/16
**Adam [2]** 1/13 3/9
**adam.dreher [1]** 1/17
**add [5]** 5/18 6/18 16/10 38/17 40/25
**addict [1]** 43/18
**addiction [1]** 54/10
**addition [2]** 19/21 47/5
**additional [4]** 5/13 14/13 32/13 56/20
**addling [1]** 37/24
**address [7]** 8/14 26/1 28/20 34/12 34/25 38/4 60/23
**addressed [1]** 6/19
**adequate [1]** 47/14
**adjudication [2]** 6/14 6/15
**adjustment [2]** 56/18 56/19
**admission [1]** 6/5
**adult [1]** 54/7
**advance [1]** 42/24
**afford [5]** 10/22 45/12 45/17 47/14 61/22
**affront [1]** 53/7
**after [8]** 20/24 22/25 33/16 40/23 44/3 45/1 56/14 62/21
**afternoon [4]** 3/2 3/12 3/13 3/18
**afterwards [3]** 26/24 30/12 51/5
**again [9]** 8/21 9/1 26/3 32/3 34/11 36/2 43/19 44/14 52/12
**against [4]** 20/25 26/11 29/17 30/16
**age [3]** 8/21 53/23 55/19
**agencies [2]** 61/3 61/5
**ago [2]** 3/15 31/7
**agree [4]** 36/9 39/16 43/2 52/16
**agreed [1]** 39/11
**agreement [1]** 15/18
**ahead [1]** 5/25
**aid [2]** 4/18 4/19
**aided [1]** 2/13
**akin [1]** 6/16
**alarm [1]** 40/3
**alarms [1]** 20/23
**alcohol [1]** 43/14
**Alford [5]** 29/25 30/9 56/8 56/9 56/23
**Alford's [1]** 30/6
**alive [2]** 27/15 54/13
**all [51]** 3/12 4/12 5/7 5/24 9/3 9/6 9/7 10/21 10/22 10/24 11/23 14/3 14/3 15/23 15/24 16/8 19/2 19/3 20/24 23/25 24/6 24/10 26/3 26/15 28/14 28/22 30/7 30/7 30/21 36/15 38/11 39/2 39/15 41/21 41/22 43/2 43/19 44/21 46/14 46/18 46/23 47/5 47/21 55/16 55/17 57/21 58/24 58/24 61/2 62/4 62/11
**all right [2]** 5/24 43/19
**allocutions [2]** 9/12 16/4
**allow [2]** 34/24 42/19
**allowed [4]** 32/18 42/18 44/4 45/1
**allows [2]** 32/17 35/1
**almost [1]** 43/18
**alone [1]** 25/17
**along [4]** 29/20 38/24 41/11 52/2
**already [4]** 27/6 31/24 32/4 43/23
**also [18]** 5/15 5/19 5/22 7/7 8/12 10/9 12/19 13/2 16/10 28/9 33/4 33/21 47/16 58/19 58/21 59/14 61/24 61/25
**although [6]** 8/17 29/15 32/20 54/18 56/1 60/8
**always [1]** 14/24
**am [6]** 30/23 33/16 37/18 39/18 50/6 57/21
**amazing [3]** 27/15 27/16 27/17
**Amendment [1]** 25/11

**A**

**AMERICA [2]** 1/3 3/6
**Americans [1]** 28/13
**AMIT [2]** 1/10 3/4
**among [1]** 48/19
**amount [14]** 9/13 10/21 15/7 21/8 21/10 26/22 27/17 45/2 59/14 59/15 59/16 59/17 60/9 60/17
**anonymity [2]** 38/5 38/8
**Anonymous [1]** 38/7
**another [6]** 8/5 8/8 8/11 8/13 8/23 50/22
**Antifa [1]** 39/9
**any [37]** 4/15 5/4 5/9 5/16 8/16 9/16 9/17 10/9 10/18 11/5 11/7 11/10 12/21 13/5 15/23 20/15 20/22 24/6 24/24 25/1 25/22 26/19 33/22 41/3 42/9 43/10 47/15 49/15 57/11 59/5 59/9 59/25 60/23 61/5 61/15 61/19 62/12
**anybody [6]** 22/22 23/1 50/18 51/13 53/1 62/12
**anymore [3]** 10/18 24/18 54/23
**anyone [2]** 8/17 40/6
**anything [4]** 4/21 29/23 53/7 62/12
**anyway [2]** 16/17 40/2
**apart [2]** 43/16 43/17
**apolitical [1]** 34/16
**apologies [2]** 3/14 45/19
**apologize [3]** 11/15 37/7 45/9
**appeal [6]** 61/16 61/18 61/19 61/21 61/22 61/23
**Appeals [1]** 61/17
**APPEARANCES [2]** 1/12 1/18
**applicable [3]** 16/19 16/23 17/1
**applies [1]** 17/18
**apply [1]** 22/9
**appointed [1]** 61/24
**appreciate [5]** 37/12 46/24 53/14 53/16 53/20
**approached [1]** 51/12
**appropriate [11]** 9/7 9/9 12/3 12/8 12/18 19/12 19/25 24/5 35/9 57/22 61/2
**approved [1]** 61/4
**approving [1]** 60/6
**approximately [2]** 41/14 48/24
**Architect [2]** 59/15 60/17
**are [49]** 3/20 4/7 4/8 5/7 6/18 6/20 6/23 9/1 9/3 11/4 11/8 15/23

18/3 26/24 28/13 32/10 37/22 39/15 42/16 44/16 45/6 46/25 47/6 47/9 52/7 52/14 53/9 54/4 54/5 54/11 54/19 54/23 54/24 54/25 55/13 57/12 57/16 58/2 58/6 58/16 58/23 58/25 59/2 61/21 62/12
**area [5]** 21/12 32/22 33/3 48/12 48/16
**areas [3]** 21/14 48/14 60/1
**aren't [1]** 43/8
**argue [1]** 11/8
**argument [3]** 5/13 5/16 9/17
**arguments [1]** 36/10
**arise [1]** 61/15
**around [2]** 21/10 53/2
**arrested [2]** 41/15 43/16
**arrived [2]** 20/14 20/20
**as [98]**
**ask [17]** 4/13 10/25 11/4 12/20 14/8 22/19 32/16 34/5 34/13 34/23 34/25 39/12 40/5 40/10 43/25 44/3 46/2
**asked [5]** 9/12 11/16 38/14 44/25 57/24
**asking [7]** 13/16 35/7 36/4 36/4 40/13 44/15 46/1
**aspects [1]** 20/13
**assault [2]** 51/20 52/3
**assaultive [1]** 54/17
**assaults [1]** 48/20
**Assessments [1]** 58/22
**assist [1]** 10/9
**assistance [1]** 9/23
**assisting [1]** 10/8
**associated [1]** 20/16
**assume [1]** 55/7
**assuming [1]** 62/9
**attacks [1]** 26/7
**attempt [1]** 39/2
**attempted [1]** 20/17
**attempting [1]** 10/16
**attempts [1]** 41/11
**attended [1]** 39/8
**attention [1]** 54/23
**attentive [1]** 38/23
**attorney [3]** 9/25 10/5 37/11
**ATTORNEY'S [1]** 1/14
**attorneys [2]** 10/2 41/18
**August [1]** 63/7
**authorities [1]** 30/17
**authorize [1]** 61/9
**authorized [1]** 61/1
**available [2]** 6/10 47/17
**Avenue [2]** 2/10 60/21
**average [3]** 57/15

**avoid [3]** 47/17 48/2 55/10
**aware [1]** 51/8
**away [3]** 36/8 36/24 43/13

**B**

**back [18]** 8/20 11/6 20/5 22/3 27/25 28/2 31/2 32/17 34/21 36/19 37/7 40/25 41/6 41/13 43/18 44/4 46/20 61/15
**background [1]** 53/19
**backwards [2]** 31/14 34/7
**bad [1]** 39/15
**baptized [1]** 31/7
**Barrett [1]** 2/9
**Base [3]** 16/20 16/24 56/22
**based [3]** 12/3 16/5 60/13
**basic [1]** 59/2
**basically [2]** 9/21 10/8
**basis [1]** 27/12
**Bay [1]** 31/23
**be [77]**
**bear [1]** 12/21
**beautiful [2]** 41/1 41/2
**became [1]** 31/7
**because [29]** 14/24 16/7 16/11 16/17 16/21 17/16 19/4 22/21 25/3 25/24 26/3 26/4 26/9 27/1 31/13 35/24 38/2 38/19 40/8 40/21 40/25 46/8 48/2 51/12 53/15 53/23 54/24 56/20 58/9
**become [2]** 34/16 47/23
**becoming [1]** 31/17
**been [33]** 5/8 6/8 6/10 9/14 10/2 10/2 10/19 11/10 12/23 21/11 24/23 26/3 26/23 29/11 32/7 33/14 34/6 35/3 36/11 37/10 38/22 39/1 40/4 41/15 43/1 43/3 49/19 51/16 52/2 54/11 57/25 60/13 62/1
**before [7]** 1/10 9/11 14/14 26/23 36/16 48/11 61/15
**beforehand [1]** 40/16
**begin [2]** 33/15 47/19
**beginning [3]** 31/5 31/23 33/20
**behalf [1]** 3/19
**behaving [1]** 48/3
**behavior [4]** 8/1 21/24 40/17 54/18
**behind [1]** 62/21
**being [7]** 14/5 25/13 37/7 37/20 39/1 42/3 51/22
**belief [2]** 22/9 23/5
**beliefs [3]** 22/8 28/6

**believe [13]** 19/24 23/3 23/11 25/5 25/16 25/17 28/13 38/16 41/22 41/24 51/1 54/3 55/13
**believed [1]** 39/13
**believes [6]** 22/8 24/4 25/5 25/7 29/7 33/9
**believing [1]** 29/7
**beside [1]** 49/12
**best [4]** 33/18 42/17 43/5 62/22
**betrayal [1]** 30/19
**better [8]** 28/20 33/11 34/12 40/13 43/4 43/15 44/14 57/6
**between [2]** 13/2 34/21
**Biblical [1]** 43/25
**big [1]** 39/20
**bit [4]** 48/7 53/18 54/19 56/4
**black [1]** 51/18
**blamed [4]** 22/14 23/23 23/24 23/24
**blames [1]** 24/1
**blow [1]** 38/9
**both [2]** 34/7 42/16
**bottom [1]** 8/16
**Boylan [12]** 1/13 3/9 11/3 11/24 12/20 17/12 19/13 19/15 22/19 24/9 24/14 28/3
**brief [1]** 20/12
**bring [1]** 40/7
**bringing [1]** 45/19
**brings [1]** 38/6
**broken [1]** 40/2
**brown [1]** 33/23
**building [16]** 16/21 21/2 21/3 21/8 21/19 21/21 40/2 40/9 40/15 48/16 48/17 50/1 50/5 50/16 50/17 51/23
**burden [2]** 12/21 13/11

**C**

**calculation [1]** 16/4
**called [3]** 9/20 34/17 52/21
**calling [2]** 3/5 10/2
**calls [2]** 32/23 39/9
**came [4]** 12/17 38/12 38/13 41/25
**campaign [1]** 9/15
**can [34]** 11/19 11/20 14/10 14/19 15/5 15/8 15/8 17/17 17/19 17/22 17/24 18/6 18/9 18/16 18/18 19/7 28/6 28/20 28/21 31/3 31/3 31/4 32/14 33/8 33/10 35/23 36/7 38/21 44/2 46/7 46/8 53/1 59/15 62/21
**can't [6]** 27/9 36/8 45/12 52/15 52/16 57/8
**cannot [2]** 10/21 53/10
**capital [1]** 38/12
**capitalizes [1]** 12/8

**Capitol [27]** 1/15 10/12 12/13 13/1 20/14 20/20 21/2 21/3 21/16 21/21 22/14 23/24 25/13 28/13 38/14 38/15 39/8 40/1 40/10 40/17 48/12 48/15 48/16 48/17 49/25 59/15 60/18
**Capitol Building [3]** 21/2 21/21 48/16
**Capitol Grounds [1]** 20/20
**capped [5]** 16/7 16/17 17/8 17/15 18/4
**care [1]** 47/16
**cared [1]** 30/22
**career [1]** 42/24
**case [20]** 12/3 12/4 12/7 14/19 19/18 19/25 20/11 23/13 24/5 26/21 30/6 34/7 41/24 51/12 56/10 56/16 57/4 60/16 61/14 61/15
**cases [9]** 6/19 6/23 29/24 44/19 54/2 54/22 55/10 55/12 55/16
**cash [1]** 14/3
**category [10]** 7/18 16/9 17/6 23/18 47/2 54/16 55/18 56/13 57/3 58/4
**Category III [2]** 47/2 54/16
**caught [2]** 26/4 42/5
**Cause [1]** 24/19
**causes [1]** 37/25
**caustic [1]** 52/14
**CCTV [1]** 42/18
**celebrated [1]** 22/25
**cell [1]** 50/13
**certain [4]** 13/5 25/7 29/4 29/5
**certainly [17]** 9/8 14/19 22/24 28/5 36/13 40/18 40/18 48/14 48/18 48/22 50/11 50/19 51/23 52/1 53/5 53/17 54/13
**Certified [1]** 2/8
**certify [1]** 63/2
**CH [1]** 2/9
**challenge [1]** 61/25
**challenges [1]** 53/19
**chance [1]** 41/9
**change [4]** 31/8 42/6 60/23 60/24
**changed [3]** 22/14 24/25 34/11
**changes [3]** 26/24 30/8 30/8
**chant [1]** 40/16
**chanting [1]** 21/18
**chaos [3]** 21/10 49/11 58/11
**character [2]** 20/16 31/11
**characteristics [1]** 47/11

**C**

characterize [1] 55/2
charge [5] 8/7 8/13 8/23 9/2 9/2
charged [1] 51/24
charger [1] 35/21
charges [1] 35/4
checked [1] 24/18
child [1] 30/16
childhood [2] 27/4 53/22
children [1] 54/7
choice [1] 23/15
choose [1] 21/24
choosing [1] 27/19
Christ [1] 39/22
Christ-driven [1] 39/22
Christmas [1] 45/8
church [1] 42/24
Circuit [2] 6/19 61/17
circumstances [6] 21/9 29/5 35/10 36/6 47/10 48/9
cite [2] 18/21 29/24
cited [2] 6/8 55/12
cites [1] 29/25
citizen [1] 32/2
CJA [1] 14/2
CLARK [87]
Clark's [10] 4/20 8/16 14/23 20/2 20/19 22/5 22/17 22/23 23/13 48/8
class [2] 17/2 43/18
clear [9] 6/9 6/13 10/4 12/7 12/10 12/16 15/2 58/20 60/9
clearly [5] 10/18 14/17 23/4 49/13 54/11
Clerk [2] 60/20 60/24
client [1] 27/10
clip [1] 41/7
close [2] 7/24 62/16
Club [1] 31/23
Code [1] 6/8
cog [1] 34/20
collect [1] 46/20
collision [1] 27/13
COLUMBIA [2] 1/1 60/21
come [6] 13/13 24/21 33/9 42/18 55/5 61/15
comes [2] 29/4 32/6
coming [1] 49/8
commands [1] 22/11
comment [1] 33/23
commit [2] 7/20 59/5
commitments [1] 44/6
committed [2] 25/12 43/10
common [1] 39/10
commotion [1] 48/19
community [4] 19/22 39/19 60/4 62/6
comparable [2] 55/13 56/4
comparables [1] 36/14
comparators [3] 55/11 55/13 56/7

complaint [1] 30/3
complete [1] 60/4
completed [1] 60/7
completely [1] 39/1
completion [1] 61/7
complex [1] 54/25
compliance [1] 62/4
compliant [2] 19/9 27/20
complying [1] 32/8
component [1] 14/9
computer [1] 2/13
computer-aided [1] 2/13
concerned [2] 10/17 31/8
concluded [1] 62/24
concluding [1] 35/24
conclusion [1] 34/4
concordance [1] 42/1
concurrently [2] 58/18 58/20
condition [1] 32/19
conditional [7] 5/10 5/12 6/2 6/9 6/13 6/19 7/12
conditionally [1] 6/25
conditions [5] 32/8 58/24 58/25 59/3 59/20
conduct [18] 8/18 9/2 20/2 20/9 20/19 21/17 21/25 22/7 23/14 47/24 48/3 48/6 51/2 51/25 54/14 57/23 58/10 59/3
confidence [1] 33/22
confidential [1] 39/11
confinement [4] 32/14 35/1 35/8 36/7
confirm [4] 3/24 3/25 4/14 5/2
conjured [1] 28/14
consecutive [1] 18/13
consecutively [1] 17/17
consequences [3] 37/22 39/17 39/19
consider [10] 8/18 9/6 33/12 34/6 34/23 34/25 45/1 47/5 47/9 47/16
considerable [1] 21/10
consideration [2] 11/1 30/11
considering [2] 32/11 57/21
consistent [2] 15/4 58/3
conspiracy [2] 37/25 41/16
conspiracy-laden [2] 37/25 41/16
constitute [1] 54/3
Constitution [2] 2/10 60/21
constitutional [1] 10/15
contact [2] 32/23 53/25
contained [1] 6/17
context [1] 28/7

continued [1] 1/4
continue [1] 15/3 15/15 23/15 34/13 34/13 57/24
continued [5] 2/1 22/17 30/21 38/16 43/15
continues [5] 23/3 28/9 53/11 53/12 56/25
continuing [2] 20/8 36/3
continuous [1] 22/7
continuously [3] 22/12 23/20 23/21
contribute [2] 28/9 58/11
contributed [2] 51/19 53/6
control [1] 60/2
controlled [2] 59/7 59/10
convicted [4] 6/10 12/14 55/25 56/14
conviction [8] 6/6 8/8 8/12 8/13 16/14 16/16 61/16 62/1
convictions [6] 5/11 7/24 8/7 8/20 16/6 55/21
cop [1] 41/22
Copeland [2] 39/6 41/13
cops [1] 39/15
cord [1] 35/21
correct [3] 13/9 28/10 63/3
correction [1] 19/14
corrupt [1] 42/16
cost [2] 61/22 61/23
costs [1] 10/10
cottages [1] 31/23
could [20] 5/2 12/20 13/18 14/23 14/24 15/1 17/16 18/12 22/19 26/2 35/24 36/17 42/2 42/3 43/4 45/4 45/14 45/15 57/6 62/15
couldn't [1] 21/22
counsel [4] 2/3 3/10 43/3 61/24
count [12] 5/11 16/14 16/18 16/23 18/7 18/12 18/13 19/7 19/10 55/24 56/21 58/14
Count 1 [2] 16/18 18/12
Count 2 [2] 16/23 18/13
countable [1] 8/7
counted [2] 6/5 8/8
counting [1] 7/14
country [1] 51/18
counts [8] 17/1 17/3 18/16 19/20 55/17 56/20 58/14 58/17
Counts 1 [1] 58/17
couple [8] 5/7 17/23 24/13 35/17 35/18 38/20 44/3 56/7

course [6] 26/2 26/4 30/4 34/1 42/4 53/14
court [56] 1/1 2/7 2/9 3/3 6/25 7/11 10/11 10/20 10/25 11/19 11/19 13/18 14/12 14/15 17/16 20/10 22/6 24/6 24/15 26/2 26/2 26/11 26/14 29/17 30/2 30/11 31/21 32/10 32/11 32/17 32/20 33/19 33/23 34/5 34/23 34/25 34/25 35/2 36/10 44/23 44/24 44/25 45/3 45/25 46/1 46/4 60/20 60/20 60/24 61/5 61/9 61/17 61/23 61/24 62/3 62/15
Court's [2] 13/16 58/13
court-appointed [1] 61/24
courthouse [1] 4/4
cover [1] 25/3
covered [1] 32/4
CR [4] 1/4 55/14 55/14 55/15
credible [1] 57/1
crime [2] 25/12 59/6
crimes [3] 7/21 39/12 43/10
criminal [36] 3/6 5/11 5/23 5/23 6/21 7/3 7/13 7/14 7/18 7/19 8/1 8/3 8/17 8/19 8/20 12/8 12/13 16/8 16/12 16/12 16/13 17/6 20/5 22/5 23/14 26/14 27/8 37/14 44/17 47/2 53/3 54/14 54/15 54/17 56/5 56/16
crowd [4] 38/24 50/6 51/22 52/6
CRR [2] 63/2 63/8

**D**

D-e-J-o-u-r-n-e-t-t [1] 6/24
D.C [10] 1/5 1/16 2/5 2/10 12/25 28/14 42/1 42/19 48/10 60/22
D.C. [1] 61/17
D.C. Circuit [1] 61/17
Dad [1] 40/13
daily [1] 27/12
danger [1] 62/5
dangerous [1] 60/1
date [8] 14/23 15/3 45/22 45/24 46/1 46/2 46/16 63/7
dated [1] 26/15
daughter [6] 30/13 30/14 32/25 37/21 44/11 51/8
day [22] 20/7 20/13 21/25 22/15 22/25 23/3 23/9 23/21 24/2 41/1 41/1 42/21 48/11 51/11 51/18 52/19 56/25 57/20 58/3 58/10 58/11

day's [1] 60/9
days [6] 35/5 56/2 59/11 60/23 61/20 61/20
dead [1] 38/9
deal [1] 27/2
dealing [1] 25/13
decades [4] 20/5 37/17 37/22 54/12
deceive [1] 10/17
December [1] 45/8
decided [3] 21/1 21/2 24/24
decides [3] 32/17 32/20 44/23
deciding [1] 29/17
decision [5] 11/20 14/14 14/16 25/9 25/10
decisions [2] 43/2 57/6
deep [3] 22/5 27/8 27/9
defend [1] 10/25
defendant [17] 1/7 2/2 3/10 6/9 6/15 7/20 7/23 8/2 12/8 12/21 13/11 39/6 47/11 47/15 55/18 55/21 56/10
defendant's [4] 4/19 7/18 20/9 61/7
defendants [5] 41/17 54/5 54/24 57/8 57/13
defense [7] 3/21 4/24 5/8 16/1 21/20 37/11 60/11
defer [1] 44/19
defined [1] 54/11
definitely [2] 27/1 32/1
definition [2] 6/17 9/4
DeJournett [1] 6/24
delay [1] 15/14
depart [1] 16/11
departure [5] 5/15 7/16 8/15 9/4 54/20
describe [1] 21/24
descriptions [1] 12/12
deserve [3] 42/10 42/13 43/24
designed [1] 23/4
desires [1] 46/2
destroy [2] 51/21 52/4
destructive [1] 59/25
detention [1] 56/3
deter [1] 48/2
determination [1] 34/9
determine [1] 59/22
determined [1] 19/11
determining [1] 9/7
deterrence [4] 32/13 47/14 48/2 48/4
devices [1] 60/1
did [30] 4/21 15/2 20/13 20/21 23/22 23/22 27/24 36/10 38/22 40/10 40/15 40/16 42/19 48/6 48/17 48/18 48/20 48/23 50/6 50/7 50/22 52/3 52/4 52/6 52/24 55/1 57/5

Case 1:22-cr-00409-APM Document 156 Filed 09/47/24 Page 67 of 75

**D**

did... [3] 57/18 57/25 58/11
didn't [16] 26/19 29/23 30/10 30/22 35/15 38/17 38/18 41/2 41/3 42/6 44/23 49/14 50/10 51/20 51/21 56/24
die [1] 24/17
different [4] 27/10 35/3 54/2 55/16
difficult [2] 49/8 53/21
directed [2] 49/7 50/18
directing [1] 49/9
direction [2] 39/22 39/22
disagree [3] 29/12 29/15 33/25
disagrees [2] 25/14 26/9
disappointing [2] 53/12 62/21
disavowed [1] 48/5
discharge [6] 5/10 5/12 6/2 6/9 6/13 7/12
discharged [1] 7/1
discharges [1] 6/20
discretionary [1] 58/25
discuss [1] 31/1
discussed [2] 16/5 19/22
disgraced [1] 21/21
disgraceful [2] 21/23 53/8
disgusted [1] 26/5
dismissed [1] 24/20
disobeyed [1] 22/11
disorderly [1] 9/2
disparities [2] 47/18 55/11
dispelled [1] 38/2
dispelling [2] 37/13 53/6
disposition [1] 6/16
dispositions [1] 6/4
disregarded [1] 49/4
disruptive [1] 21/17
distinction [1] 30/11
distribute [1] 8/5
distributed [1] 53/5
district [8] 1/1 1/1 1/10 11/7 11/8 60/21 61/4 61/13
distrust [1] 37/13
diversionary [2] 6/4 6/16
do [52] 4/5 4/6 4/8 5/9 7/17 9/8 9/16 10/12 10/15 10/23 11/10 11/22 11/24 13/21 14/9 14/23 15/8 15/8 15/9 15/19 17/3 17/22 18/2 20/12 26/2 27/19 27/19 27/19 27/21 29/23 30/10 31/7 32/11 33/18 34/24 35/25 37/12 38/24 42/14 46/7 46/7 46/8 48/1 50/24 51/23

do you [2] 5/9 11/24
do you have [5] 9/16 11/10 14/9 17/22 18/2
Do you understand [1] 4/5
docket [1] 24/19
documentation [2] 11/21 14/13
does [13] 8/6 12/20 14/4 22/8 22/21 26/13 27/20 31/12 34/1 34/20 35/11 45/11 46/8
doesn't [10] 10/18 29/16 32/24 32/25 32/25 34/16 34/17 42/6 50/10 52/7
doing [3] 10/23 35/10 39/5
dollars [1] 44/10
don't [42] 5/25 8/14 8/18 9/4 10/21 11/12 11/15 14/4 14/21 15/5 15/8 17/12 17/15 18/3 22/22 23/1 26/10 28/17 28/21 29/1 29/13 30/18 34/15 37/1 39/15 41/22 42/10 42/13 43/24 45/2 48/13 50/18 51/7 51/13 53/16 54/16 54/22 57/3 57/10 58/4 58/6 60/14
done [2] 24/23 25/23
door [2] 48/24 49/8
DOUGLAS [2] 1/6 3/7
down [6] 32/6 38/14 38/15 38/19 39/25 54/21
downright [1] 25/15
downs [1] 26/23
downward [4] 5/15 7/16 9/4 16/11
drafting [1] 17/20
Dreher [2] 1/13 3/9
drink [1] 36/18
driven [1] 39/22
drove [1] 48/10
drug [7] 9/1 27/7 37/23 53/23 54/10 59/11 59/12
drugs [7] 26/16 26/17 26/20 27/9 27/10 37/23 43/13
drum [1] 12/15
due [1] 59/17
during [4] 11/8 21/16 34/7 53/14
duty [3] 50/2 52/24 52/24
DVD [1] 5/21

**E**

each [2] 18/7 58/14
earlier [3] 30/24 51/13 62/7
easy [2] 44/16 55/2
educational [1] 47/15
effect [1] 46/6

either [2] 6/14 46/7
elaborate [1] 47/25
eligible [1] 14/2
eliminate [1] 16/13
eliminated [2] 16/16 57/17
else [3] 4/21 62/12 62/18
Email [3] 1/17 1/17 2/6
embedded [1] 48/13
emboldened [1] 51/23
employed [1] 42/3
employer [1] 4/20
employment [2] 32/8 36/6
encountered [1] 20/20
encourage [1] 34/13
encouraged [1] 21/18
end [7] 24/2 41/1 42/21 44/9 57/20 58/3 59/17
ended [4] 3/15 31/15 31/17 48/15
ends [2] 16/17 27/11
enforcement [1] 39/17
engaged [5] 12/13 21/17 21/25 42/9 51/2
engaging [1] 48/5
enhancement [1] 56/12
enough [4] 8/18 19/3 19/3 44/7
ensuring [1] 58/2
enter [1] 15/6
entered [8] 6/7 6/11 49/1 50/5 50/24 51/1 55/17 62/1
entering [4] 15/1 48/16 48/23 51/23
entire [1] 18/15
entirely [1] 57/2
entrap [2] 23/4 28/15
entry [2] 6/15 61/20
episode [1] 53/8
Epps [3] 23/25 24/17 24/22
Epps's [1] 24/23
equally [1] 42/16
equivalent [1] 7/1
ERIC [4] 1/6 1/13 3/7 3/9
eric.boylan [1] 1/17
error [1] 39/21
especially [1] 37/23
essentially [2] 23/3 24/17
establish [1] 59/2
estimation [2] 48/21 56/24
even [18] 5/18 6/6 14/22 16/15 20/24 23/1 31/10 45/12 48/20 49/11 51/17 52/8 52/15 52/16 54/20 54/23 57/23 60/11
event [3] 8/16 13/5 51/6
events [5] 22/25 28/11

ever [1] 27/10
every [1] 57/9
everybody [4] 15/18 36/16 46/19 46/23
everyone [8] 3/2 3/12 3/18 24/1 40/13 55/7 62/19 62/23
everything [1] 26/8
evidence [4] 7/19 8/1 13/1 13/14
evident [3] 22/9 47/23 49/18
exactly [2] 21/24 29/9
example [2] 8/15 19/9
examples [1] 7/23
except [1] 24/1
exception [1] 26/20
excuse [5] 16/19 48/24 56/17 56/18 61/10
execute [1] 61/4
exhaustive [1] 57/10
exhibited [2] 20/4 22/2
exhibits [1] 22/7
exist [2] 13/17 37/25
expands [1] 37/16
expectations [1] 59/3
expended [1] 11/10
expenses [3] 11/7 12/23 13/5
expires [1] 60/3
explaining [1] 26/18
exposure [1] 9/2
express [2] 23/5 28/16
expressing [1] 51/14
expression [1] 28/7
extended [2] 21/8 44/25
extensive [1] 43/12
extent [1] 62/2
extreme [2] 58/5 58/7
extremely [1] 45/11
eyes [3] 28/12 38/16 42/4

**F**

F.3d [3] 6/24 7/9 7/11
faced [1] 53/19
fact [39] 5/22 7/13 10/1 10/16 13/1 24/18 25/12 25/14 25/15 25/23 26/12 26/19 27/18 29/8 29/12 30/13 30/16 30/20 30/20 30/25 31/9 32/6 33/13 33/16 34/6 35/10 35/11 40/23 42/6 49/6 49/9 50/8 53/10 54/8 54/15 55/24 56/11 57/5 60/10
factor [2] 12/5 48/7
factors [6] 34/5 47/5 47/9 47/22 55/8 57/21
facts [6] 23/17 29/4 53/10 54/3 54/4 54/6
failing [1] 8/25
fair [8] 19/3 19/3 33/24 43/1 52/1 53/17 54/4 57/2

fairly [1] 34/2
fallacy [1] 26/10
falls [1] 8/15
false [4] 8/14 8/24 23/16 23/21
familiar [3] 20/11 56/9 56/15
family [1] 32/23
fanciful [1] 50/1
far [13] 10/14 10/17 24/21 25/3 29/8 29/23 31/8 33/2 33/25 35/3 36/10 45/13 54/21
father [7] 27/5 40/7 40/12 40/12 44/8 53/22 53/25
father's [1] 53/23
fault [2] 41/22 41/24
favor [1] 47/22
Fawkes [2] 20/15 48/18
FBI [3] 23/23 28/13 51/6
fear [1] 50/4
federal [1] 59/5
feel [4] 34/1 42/13 42/14 43/22
feeling [1] 28/21
fell [2] 43/16 43/17
felon [1] 57/17
felony [1] 9/3
fences [1] 20/23
few [4] 3/15 44/10 46/19 46/20
figured [1] 41/17
file [1] 61/23
filed [2] 24/16 61/19
filing [1] 61/21
final [2] 17/4 23/11
finally [1] 40/10
financial [5] 12/9 12/15 14/17 60/19 60/25
find [7] 17/19 30/15 39/2 43/8 53/2 60/14 62/5
finding [2] 6/4 37/19
fine [21] 9/13 12/2 13/12 13/19 13/20 14/5 14/9 14/21 14/22 15/7 15/13 15/17 15/21 17/11 19/22 35/22 37/9 47/3 60/8 60/15 60/16
fine's [2] 12/7 12/17
finish [1] 44/13
fire [1] 40/3
firearms [1] 59/25
first [7] 10/21 14/2 20/2 20/9 25/11 42/7 49/19
First Amendment [1] 25/11
fit [1] 23/7
fits [2] 23/8 57/3
five [6] 16/5 54/17 56/19 58/15 58/19 62/9
floor [1] 52/25
floors [1] 52/22
Florida [2] 62/16 62/17
flow [1] 14/3

**F**

folks [3]  49/16 58/6 58/7
following [3]  55/20 58/24 59/19
follows [1]  58/13
footage [1]  42/19
foregoing [1]  63/3
forged [2]  8/23 8/24
forgive [1]  31/5
forgiven [1]  31/4
forgiveness [1]  37/21
forgiving [1]  37/20
forgot [1]  44/22
formally [1]  6/6
forth [4]  11/6 34/21 47/6 47/8
forward [5]  13/13 15/17 34/8 48/23 62/22
fought [2]  38/1 38/1
found [3]  6/20 31/15 37/19
four [5]  16/16 18/12 19/10 35/4 55/17
frankly [6]  14/2 25/25 27/23 28/24 30/23 51/17
frequently [1]  10/2
friend [1]  33/12
front [2]  48/12 48/12
full [4]  44/17 59/16 60/25 62/9
fully [2]  38/2 58/10
functional [1]  7/1
fund [1]  11/6
funding [1]  10/8
funds [2]  45/12 46/9
further [8]  5/9 5/16 20/22 21/2 21/22 24/6 24/8 58/16
furtherance [1]  60/10

**G**

gain [1]  12/9
gained [1]  33/2
gas [2]  20/24 48/19
general [3]  33/8 37/13 48/2
genuinely [1]  52/4
get [17]  19/2 26/4 26/19 27/25 31/20 36/17 41/2 41/25 42/15 44/14 46/9 48/6 50/14 50/14 50/16 50/21 55/5
give [8]  17/23 18/11 30/21 37/3 42/23 44/17 44/24 46/19
given [8]  21/9 21/9 35/9 35/10 35/11 36/5 36/6 45/14
giver [1]  38/13
GiveSendGo [3]  9/20 12/3 12/15
giving [2]  8/13 8/24
glass [1]  40/2
gmail.com [1]  2/6
go [14]  5/25 15/17 16/3 20/22 21/1 21/2 27/6

42/13 44/4 45/12
go ahead [1]  5/25
God [2]  37/19 43/20
goes [3]  22/15 30/7 37/24
GoFundMe [2]  9/15 9/21
going [16]  9/25 17/25 22/1 26/4 26/12 26/24 32/17 38/2 39/24 39/25 40/22 40/22 44/24 46/5 49/24 50/17
Golf [1]  31/23
gone [3]  37/13 38/23 54/21
good [11]  3/2 3/12 3/13 27/24 28/15 31/18 32/1 35/10 42/15 43/19 51/21
got [8]  26/4 37/7 38/15 40/25 55/19 55/19 55/22 57/18
gotten [4]  34/9 39/10 43/4 45/16
government [31]  1/13 3/9 3/19 4/23 9/12 12/2 12/21 14/6 15/25 17/13 19/16 19/18 19/24 20/17 22/16 22/21 23/4 24/4 24/7 25/4 25/8 25/14 26/9 29/24 30/6 46/16 49/2 56/6 56/21 61/21 62/14
government's [4]  4/18 12/17 25/9 52/10
grab [3]  17/24 17/25 36/18
graces [2]  31/18 43/19
graduates [1]  54/9
grandchildren [2]  33/1 44/14
grandkids [1]  31/3
grant [1]  13/8
grateful [1]  39/18
greater [2]  29/14 47/7
greatly [1]  37/12
grounds [2]  16/21 20/20
group [5]  17/3 21/4 38/7 39/8 49/10
grown [4]  34/6 53/13 53/15 53/20
growth [2]  33/5 58/1
guess [2]  9/11 23/6
Guideline [4]  16/19 16/19 16/23 19/9
Guideline-compliant [1]  19/9
Guidelines [20]  5/7 6/3 7/16 7/23 9/8 16/3 17/1 17/7 17/10 17/16 17/17 17/25 18/3 18/8 18/15 19/6 19/7 46/25 47/3 54/19
Guidelines Range [5]  17/7 17/10 18/8 18/15 47/3

guilty [4]  6/11 6/15 55/20 55/24
Guy [2]  20/15 48/18
Guy Fawkes [1]  20/15

**H**

H-o-m-o-l [1]  55/15
hacktivist [1]  38/7
had [38]  3/14 4/14 5/3 5/15 7/24 8/20 10/10 11/18 12/24 14/4 22/22 22/24 23/1 24/16 26/17 26/22 27/2 27/10 31/7 35/5 35/14 39/7 40/19 41/5 41/5 41/7 41/15 42/1 42/2 43/3 43/6 51/9 53/22 55/18 56/1 56/2 56/19 56/20
hadn't [2]  38/23 52/2
half [2]  35/4 37/22
halls [1]  51/3
hallway [1]  49/2
hands [1]  43/9
handy [1]  17/22
Hang [2]  11/3 35/13
happen [2]  38/22 52/7
happened [14]  10/7 12/11 20/13 22/15 23/9 23/21 23/23 23/25 28/1 28/18 29/9 30/12 31/16 51/5
happy [4]  11/21 14/14 30/3 33/18
harm [1]  50/5
Hart [1]  56/7
has [66]
hasn't [1]  22/13
have [92]
haven't [1]  51/16
having [6]  9/14 24/16 27/10 33/2 45/13 53/5
he [204]
he continued [1]  30/21
he didn't [1]  26/19
He just [1]  34/22
he said [2]  33/23 41/13
He was [1]  55/18
he'd [1]  16/16
he'll [2]  26/1 45/16
he's [25]  12/14 16/17 22/14 23/20 23/21 23/23 23/24 24/24 25/12 25/17 25/25 27/2 27/20 29/7 29/11 29/15 31/21 31/22 31/24 32/17 33/21 34/8 34/9 35/10 56/3
head [2]  10/9 53/2
hear [6]  17/13 19/15 35/25 36/10 37/1 50/10
heard [9]  5/9 11/24 22/11 37/4 39/4 40/3 40/5 42/7 49/16
hearing [5]  3/14 4/3 4/9 15/2 29/6
hears [1]  29/7
heart [3]  31/8 41/8

held [3]  6/25 7/11 53/4
help [2]  31/4 44/11
helping [1]  39/21
her [16]  30/17 30/21 30/21 30/22 30/22 30/24 30/24 31/3 31/5 31/8 31/9 31/10 31/10 44/7 44/8 44/14
here [18]  3/17 4/1 4/3 10/13 11/8 12/5 12/11 12/18 32/7 36/23 37/7 43/21 44/5 44/7 44/9 47/24 48/6 48/7
heroin [1]  27/12
high [1]  54/8
highest [1]  17/4
him [36]  9/24 10/8 10/9 10/13 10/20 18/12 20/21 20/21 21/10 22/9 25/25 29/12 29/17 30/2 30/14 30/16 30/17 31/2 31/4 31/13 32/13 33/1 33/2 33/12 33/17 33/18 34/12 34/13 34/24 36/7 40/8 45/15 45/25 46/5 48/6 57/2
himself [10]  10/14 10/25 12/12 12/12 12/15 24/1 27/22 32/3 33/6 48/11
hindsight [2]  38/21 42/3
hire [2]  9/25 10/4
his [68]
his daughter [1]  32/25
historical [1]  20/16
history [26]  5/11 5/23 5/23 7/14 7/18 7/20 8/3 8/17 8/19 16/8 16/12 16/13 17/6 20/4 22/5 26/14 26/17 27/8 44/18 47/2 47/10 51/18 54/15 54/17 56/5 56/17
hold [6]  11/20 14/16 15/1 23/5 26/11 29/17
holding [1]  7/6
holidays [3]  45/2 45/5 62/10
home [13]  13/3 32/14 35/1 35/8 36/7 42/25 44/2 44/7 44/8 44/12 53/23 56/3 61/13
homeless [3]  31/17 43/19 43/20
Homol [2]  55/15 55/24
honest [2]  39/1 42/12
honestly [2]  39/24 40/5
Honor [69]
HONORABLE [3]  1/10 3/3 3/4
hope [4]  33/19 35/15 53/16 62/21
hopeful [1]  48/4
hoping [2]  32/10 36/2
Horn [2]  55/14 55/20
hotel [1]  40/25
hours [5]  10/24 19/21

how [14]  9/17 11/10 12/5 14/3 22/21 23/6 27/17 28/4 42/5 51/10 51/10 51/11 53/1 54/22
however [5]  17/8 56/13 57/15 60/16 61/13
huddled [1]  50/4
huge [2]  39/17 39/18
human [1]  39/11
hurt [2]  30/19 52/23
hypothetically [1]  19/9

**I**

I am [5]  30/23 33/16 37/18 39/18 57/21
I apologize [3]  11/15 37/7 45/9
I appreciate [1]  46/24
I believe [1]  41/24
I believed [1]  39/13
I came [1]  38/13
I can [12]  14/19 15/5 15/8 15/8 17/19 17/22 17/24 18/18 28/21 33/10 38/21 44/2
I can't [2]  27/9 57/8
I could [1]  43/4
I did [2]  4/21 40/15
I didn't [2]  38/18 41/2
I disagree [1]  29/15
I don't [32]  8/14 8/18 10/21 14/4 14/21 15/5 15/8 17/15 18/3 22/22 23/1 26/10 28/17 28/21 29/1 29/13 34/15 39/15 41/22 42/10 43/24 45/2 48/13 50/18 51/7 51/13 53/16 54/16 54/22 57/3 57/10 58/6
I don't have [3]  11/12 11/15 42/13
I found [1]  37/19
I guess [1]  23/6
I have [7]  3/24 9/6 24/6 43/13 43/15 44/19 53/13
I hope [4]  33/19 35/15 53/16 62/21
I just [6]  5/25 17/14 35/14 36/2 36/17 45/18
I know [5]  20/10 34/24 44/15 44/15 62/20
I mean [20]  10/3 10/15 14/12 25/16 25/24 27/22 27/23 27/23 28/20 28/25 29/3 29/10 29/14 30/12 30/15 33/5 36/5 42/22 43/10 45/25
I recall [1]  13/4
I should [4]  4/21 16/10 40/7 47/16
I think [55]  5/21 6/16 7/3 9/10 9/13 9/15 12/5 12/10 12/25 13/3 13/8 13/10 13/12 13/18 13/20 14/15 14/18 15/3 15/10 15/14 17/15

**I**

**I think... [34]** 21/22 21/23 23/2 23/8 23/10 25/1 25/3 26/1 26/10 26/18 27/1 28/10 30/10 30/18 31/6 31/7 32/12 32/14 33/24 35/7 35/9 36/5 36/6 40/13 44/1 46/14 50/2 54/21 54/25 57/7 57/20 58/3 58/9 62/11
**I thought [4]** 27/23 39/25 41/12 51/1
**I understand [5]** 4/8 13/7 37/15 45/21 46/14
**I want [6]** 4/1 14/18 24/15 25/3 26/25 36/18
**I was [7]** 26/4 38/19 39/24 40/8 40/21 43/16 51/7
**I went [1]** 43/18
**I will [7]** 6/18 33/21 51/7 52/12 60/14 61/13 62/6
**I won't [1]** 27/6
**I would [17]** 5/17 5/18 5/21 20/18 21/24 23/17 34/12 34/12 34/23 34/25 38/4 38/22 40/6 40/20 42/22 43/7 44/3
**I'd [5]** 12/19 15/17 39/4 40/13 44/9
**I'll [18]** 4/13 9/8 14/12 17/13 20/9 20/11 31/1 32/4 33/4 34/12 36/19 37/3 42/12 46/20 47/19 47/25 57/12 60/11
**I'll be [1]** 36/19
**I'm [29]** 8/9 9/25 10/1 10/4 17/25 18/24 23/6 25/18 25/18 25/19 29/15 30/1 33/18 35/21 36/2 36/23 38/2 38/19 42/4 44/15 45/4 45/7 46/12 48/4 50/17 50/20 53/1 56/9 56/15
**I'm going [2]** 9/25 17/25
**I'm not [7]** 25/18 25/18 29/15 38/2 50/17 50/20 53/1
**I'm planning [1]** 10/4
**I'm sorry [3]** 35/21 45/4 46/12
**I've [23]** 4/12 4/16 10/2 10/2 22/22 22/24 23/1 25/25 27/6 32/4 33/4 36/13 42/14 42/14 43/22 49/16 52/6 52/10 53/18 55/8 57/9 57/9 57/17
**idea [3]** 42/15 49/24 53/6
**ideas [1]** 49/20
**ideology [2]** 37/25 39/14
**ignored [1]** 20/24
**III [5]** 5/23 16/9 17/6

**illegal [2]** 40/17 40/19
**images [1]** 49/1
**imagination [1]** 57/11
**imagine [1]** 33/8
**immediate [1]** 40/11
**immediately [1]** 60/20
**impeding [1]** 16/24
**important [4]** 12/5 20/12 27/18 55/8
**impose [6]** 14/10 14/19 14/22 18/6 18/9 47/6
**imposed [5]** 14/10 47/12 47/20 59/2 62/1
**imposition [2]** 15/13 60/15
**imprisonment [2]** 6/12 58/19
**improper [2]** 26/10 53/4
**improve [1]** 32/2
**improved [1]** 30/25
**improving [1]** 27/1
**inability [1]** 13/11
**incarceration [5]** 42/25 44/2 44/12 57/22 58/12
**include [2]** 59/4 61/3
**included [1]** 4/20
**including [1]** 12/23
**increased [1]** 56/21
**incredible [5]** 26/22 27/23 28/22 33/19 56/25
**incredibly [1]** 26/17
**incurred [2]** 11/7 13/6
**indecent [1]** 9/2
**indicated [2]** 11/18 14/3
**indicates [1]** 7/17
**indication [1]** 25/1
**individual [1]** 35/9
**individuals [1]** 35/3
**indulgence [2]** 36/18 46/24
**information [5]** 7/17 19/14 23/16 23/22 29/4
**innumerable [1]** 20/21
**inside [6]** 21/6 21/7 21/7 21/12 21/15 21/19
**insists [1]** 25/15
**instant [1]** 7/25
**Instead [1]** 20/24
**instigators [1]** 28/24
**instrument [2]** 8/23 8/24
**insurance [1]** 8/25
**insurrectionist [2]** 34/18 55/3
**intended [1]** 18/9
**intent [2]** 8/4 38/11
**intentions [1]** 42/17
**interested [1]** 40/21
**interesting [1]** 51/12
**interests [2]** 43/5 48/5
**intervening [1]** 8/1
**interview [3]** 39/4 39/5 51/5
**interviewed [1]** 14/1

investigation [5] 5/4 8/10 61/2 61/6
**inviting [1]** 49/20
**involved [4]** 28/24 39/2 41/12 42/15
**involves [1]** 18/4
**is [165]**
**is their [1]** 21/15
**is there [1]** 41/8
**isn't [2]** 10/4 41/9
**issue [5]** 5/10 7/14 22/21 51/10 60/8
**issues [3]** 5/8 9/10 15/24
**it [104]**
**it would be [4]** 19/8 19/10 44/16 46/11
**it's [45]** 8/18 9/13 9/15 9/21 10/16 10/19 10/19 12/3 12/10 13/10 13/12 14/19 14/21 18/25 21/10 22/5 22/6 22/6 22/7 23/17 24/3 25/22 26/18 27/13 27/15 27/15 28/5 28/18 30/17 34/9 35/9 37/16 38/2 38/2 38/8 38/19 42/15 44/18 49/6 49/8 53/1 54/2 54/21 55/2 60/9
**it's certainly [1]** 28/5
**its [3]** 14/14 14/15 46/4
**itself [1]** 48/16

**J**

**jail [2]** 32/13 32/20
**January [31]** 12/13 20/2 20/4 20/7 20/10 21/22 22/3 22/4 22/10 22/13 22/18 22/25 23/20 23/24 23/25 26/16 26/23 28/11 37/19 39/6 39/24 46/3 46/11 47/24 48/10 52/17 53/6 54/5 54/22 55/1 55/9
**January 6th [25]** 12/13 20/2 20/4 20/7 20/10 21/22 22/3 22/4 22/10 22/13 22/18 22/25 23/20 23/24 23/25 26/23 28/11 39/6 39/24 47/24 52/17 53/6 54/5 54/22 55/9
**jeered [2]** 52/22 52/25
**job [6]** 10/8 27/24 31/15 31/20 32/15 35/10
**John [4]** 2/3 2/4 3/11 44/1
**johnlmachado [1]** 2/6
**joined [1]** 21/4
**JUDGE [1]** 1/10
**judges [1]** 55/5
**judgment [2]** 15/1 61/20
**judicial [1]** 6/5
**July [2]** 44/9 62/7
**June [2]** 1/5 46/12

jurisdiction [2] 61/14
**jury [3]** 23/11 23/13 55/25
**just [77]**
**justice [5]** 6/21 7/3 7/13 29/21 58/7
**justifying [1]** 26/18

**K**

**Kentucky [9]** 6/8 6/20 7/12 32/18 32/22 33/3 39/20 44/4 44/13
**kept [1]** 42/20
**kids [1]** 27/5
**kind [5]** 41/11 42/20 44/6 48/6 53/16
**kinds [2]** 47/17 54/2
**knew [2]** 22/10 26/1
**know [76]**
**knowing [2]** 40/16 42/5
**known [1]** 40/19
**knows [1]** 26/14

**L**

**lack [12]** 20/3 20/6 22/2 22/17 22/17 23/8 23/9 23/18 24/20 28/8 52/11 52/11
**laden [2]** 37/25 41/16
**Landon [2]** 39/6 41/13
**large [1]** 45/2
**last [3]** 26/15 35/17 45/21
**late [2]** 3/14 3/15
**later [9]** 14/20 14/23 15/3 15/6 23/2 26/5 29/4 31/1 51/7
**lauded [1]** 27/17
**law [16]** 2/4 6/20 7/12 12/7 13/3 15/4 20/4 22/3 22/8 39/17 39/19 42/1 47/13 47/21 52/11 53/8
**laws [1]** 23/14
**lawsuit [1]** 24/16
**lawyer's [1]** 54/12
**lawyers [1]** 37/14
**lead [1]** 38/16
**leap [1]** 33/19
**learned [4]** 42/14 42/15 43/23 53/18
**least [15]** 6/21 8/6 11/16 12/21 12/22 12/25 14/22 16/11 23/2 35/11 50/9 50/22 51/9 51/15 59/12
**leave [12]** 40/4 40/6 40/11 40/13 40/14 42/8 43/9 49/15 49/18 50/9 57/25 60/11
**led [1]** 37/19
**left [4]** 26/6 40/15 42/8 42/8
**legal [2]** 12/23 52/1
**legal-related [1]** 12/23
**legally [1]** 52/8
**legislators [2]** 50/3

**legislature [2]** 52/22 53/1
**lengthy [2]** 37/16 37/16
**leniency [1]** 39/12
**less [5]** 19/5 35/4 35/5 56/9 57/14
**lesser [1]** 16/12
**let [11]** 3/24 4/12 11/4 14/8 16/3 24/15 28/2 34/12 46/25 48/8 62/6
**let's [1]** 27/25
**letter [2]** 4/20 31/21
**letters [1]** 32/24
**letting [1]** 24/17
**level [18]** 16/18 16/20 16/22 16/25 17/4 17/4 17/5 17/7 29/1 30/18 33/10 35/12 36/5 47/1 56/2 56/11 56/17 56/22
**levels [1]** 16/22
**license [1]** 8/22
**lied [1]** 23/20
**lies [2]** 29/22 30/7
**life [9]** 26/22 27/2 32/2 34/8 34/22 37/14 42/23 53/20 54/12
**like [28]** 10/16 10/19 13/19 15/12 15/14 15/17 15/24 22/16 25/5 25/25 29/23 32/20 32/21 34/24 37/23 38/4 40/12 41/8 41/10 42/13 42/14 43/7 43/22 44/9 50/21 54/24 58/8 62/13
**likelihood [1]** 7/20
**line [5]** 8/16 20/23 49/13 52/24 53/9
**list [3]** 35/2 57/7 57/11
**listening [1]** 41/18
**literally [1]** 49/17
**little [6]** 26/5 31/1 49/6 53/18 54/19 56/3
**live [4]** 31/2 31/12 44/2 52/13
**lives [2]** 52/5 53/8
**living [2]** 31/21 31/22
**local [1]** 59/5
**lodging [2]** 11/7 12/24
**long [7]** 20/4 26/17 33/9 34/2 37/13 38/9 50/25
**look [3]** 17/22 34/5 39/9
**looked [2]** 36/13 39/3
**looking [5]** 10/1 15/12 22/5 38/21 43/5
**looks [1]** 15/12
**losing [1]** 31/15
**lost [1]** 10/7
**lot [15]** 31/7 31/10 33/4 33/24 37/10 38/25 39/13 41/10 43/7 43/22 43/23 44/15 44/18 49/7 51/16
**loudest [1]** 41/19
**Louisville [2]** 39/20 44/13

**L**

**love [2]** 30/21 42/22
**loved [1]** 31/9
**low [1]** 45/11
**lucky [1]** 54/13
**Lustig [3]** 18/2 19/8 19/14

**M**

**Machado [24]** 2/3 2/4 3/11 4/14 5/2 5/9 9/16 11/4 13/13 13/14 13/18 13/20 13/24 14/8 24/10 35/13 35/24 37/12 43/5 45/5 55/12 56/10 57/7 57/16
**Machado's [1]** 44/1
**made [10]** 10/4 12/22 12/24 26/14 31/13 32/16 43/15 44/6 49/17 57/6
**maintain [2]** 8/25 32/15
**maintained [1]** 62/4
**major [3]** 27/2 32/3 32/3
**make [14]** 4/1 4/15 5/3 9/18 11/5 11/9 15/2 17/14 33/22 35/24 45/18 45/21 59/14 60/16
**makes [2]** 6/9 10/1
**making [4]** 10/20 14/14 32/13 39/20
**man [2]** 22/8 38/9
**mandatory [2]** 58/24 59/3
**manner [1]** 41/25
**many [4]** 27/10 31/13 34/7 34/8
**marijuana [4]** 8/4 8/7 8/11 16/15
**marriage [1]** 27/5
**mask [7]** 20/14 20/15 20/15 20/15 20/18 38/4 48/18
**matter [7]** 24/20 29/16 30/13 30/20 44/16 52/1 63/4
**max [1]** 17/9
**maximum [4]** 18/4 19/5 19/20 44/17
**may [12]** 10/11 11/2 11/7 11/10 24/23 33/25 50/8 54/20 57/2 57/4 61/22 61/24
**maybe [9]** 13/1 29/6 29/7 37/25 38/19 40/7 43/3 43/24 44/10
**me [51]** 3/24 4/12 5/2 11/4 11/18 14/8 16/3 16/19 17/23 28/2 28/4 33/17 33/21 37/19 38/4 38/16 39/8 39/20 39/21 40/12 40/25 41/1 41/2 41/6 41/10 41/16 42/12 42/18 42/19 42/20 42/23 43/16 43/17 44/7 44/17 46/19 46/25 48/8

48/23 49/9 49/17 50/10 51/9 52/15 52/20 53/11 56/17 56/18 60/10 61/10 61/15
**mean [25]** 10/3 10/15 14/12 25/16 25/24 27/13 27/22 27/23 27/23 28/20 28/25 29/3 29/10 29/13 29/14 30/12 30/15 33/5 36/5 42/4 42/22 43/10 45/25 50/10 52/19
**meaningful [2]** 47/22 48/1
**means [4]** 42/2 42/25 61/12 61/14
**meant [1]** 50/5
**mechanical [1]** 2/12
**media [5]** 23/23 38/25 41/11 41/19 41/20
**medical [1]** 47/16
**meet [1]** 9/4
**MEHTA [2]** 1/10 3/4
**members [3]** 20/25 39/9 50/4
**memo [2]** 17/20 21/20
**memorandum [4]** 4/18 4/19 10/7 30/5
**memory [2]** 48/13 51/9
**mentality [1]** 38/24
**mention [5]** 26/15 31/6 33/4 33/21 48/15
**mentioned [5]** 4/21 10/6 27/6 46/3 57/13
**mentions [1]** 10/16
**mercy [3]** 43/24 44/1 44/20
**Merit [1]** 2/8
**Merkley [1]** 21/13
**Merkley's [1]** 50/25
**methamphetamine [1]** 27/12
**methamphetamines [1]** 37/23
**methods [2]** 42/7 59/24
**Michael [1]** 1/13
**middle [1]** 43/18
**might [3]** 15/3 15/10 15/14
**millions [1]** 28/11
**mind [4]** 37/24 38/6 41/16 52/17
**minded [1]** 37/20
**mine [1]** 17/24
**minimum [1]** 14/22
**minor [2]** 7/24 8/21
**minute [1]** 21/8
**minutes [10]** 3/15 17/23 21/9 35/18 40/10 46/19 46/20 50/11 50/23 51/22
**misdemeanor [6]** 7/24 7/24 8/21 16/8 55/18 56/20
**misdemeanors [2]** 17/2 18/5
**miss [1]** 35/15

missed [1] 35/14
**mistrust [1]** 33/6
**mitigating [2]** 54/3 54/5
**mob [1]** 21/1
**modern [1]** 38/5
**moment [5]** 36/19 40/4 42/5 47/25 49/11
**Monday [3]** 45/16 45/22 46/8
**money [15]** 9/17 9/25 10/13 10/17 10/18 11/6 11/13 12/5 12/16 12/23 13/15 14/4 14/5 60/9 60/10
**month [3]** 24/4 57/14 59/17
**monthly [1]** 59/16
**months [30]** 17/8 17/8 17/10 18/7 18/8 18/8 18/11 18/12 18/13 18/16 19/6 19/7 19/10 19/10 19/19 19/21 23/1 23/2 44/3 46/17 47/3 51/7 55/22 56/2 56/14 57/18 58/15 58/17 58/19 62/9
**months' [1]** 55/19
**moot [1]** 42/21
**more [22]** 8/2 19/6 33/14 37/20 37/20 37/25 38/8 38/22 39/9 39/22 39/22 40/1 40/21 42/1 43/3 44/19 45/5 51/2 52/24 53/18 53/20 54/25
**most [8]** 8/18 20/12 21/14 38/5 40/17 40/18 41/18 45/16
**mostly [1]** 5/19
**move [5]** 32/17 34/22 42/23 48/23 62/22
**moving [1]** 51/22
**Mr [1]** 13/25
**Mr. [139]**
**Mr. Alford [2]** 30/9 56/23
**Mr. Boylan [10]** 11/3 11/24 12/20 17/12 19/13 19/15 22/19 24/9 24/14 28/3
**Mr. Clark [85]**
**Mr. Clark's [10]** 4/20 8/16 14/23 20/2 20/19 22/5 22/17 22/23 23/13 48/8
**Mr. Epps [1]** 24/22
**Mr. Epps's [1]** 24/23
**Mr. Homol [1]** 55/24
**Mr. Horn [1]** 55/20
**Mr. Machado [21]** 4/14 5/2 5/9 9/16 11/4 13/13 13/14 13/18 13/20 13/24 14/8 24/10 35/13 35/24 37/12 43/5 45/5 55/12 56/10 57/7 57/16
**Mr. Parks [4]** 30/3 56/15 56/23 58/8

Mr. Ray [1] 24/2
**Mr. Russell [1]** 30/6
**Mr. Tew [1]** 55/17
**Ms. [3]** 18/2 19/8 19/14
**Ms. Lustig [3]** 18/2 19/8 19/14
**much [9]** 11/10 14/4 27/6 30/25 33/11 33/12 35/15 54/23 54/25
**multiple [3]** 23/14 32/8 49/2
**must [12]** 47/5 47/9 59/5 59/7 59/9 59/11 59/14 59/19 59/21 60/4 60/6 61/19
**my [43]** 11/13 17/25 28/10 29/15 36/10 37/11 37/14 37/21 37/21 38/11 38/16 38/25 39/18 39/19 39/21 40/7 40/11 40/11 40/12 40/20 40/25 41/8 41/16 41/24 42/20 42/23 42/24 42/24 43/3 43/5 43/11 44/10 44/11 44/13 44/14 44/17 45/18 46/20 48/20 51/9 52/16 52/17 56/24
**myself [2]** 10/3 43/15
**mystify [1]** 53/11

**N**

**name [3]** 8/14 8/24 39/6
**narrative [1]** 30/8
**narratives [1]** 40/24
**nation's [1]** 38/12
**nature [4]** 9/6 39/15 47/9 48/9
**near [1]** 41/3
**neatly [1]** 23/8
**necessarily [2]** 33/7 52/8
**necessary [2]** 32/21 47/7
**need [9]** 32/12 35/11 45/5 47/11 47/17 47/19 49/15 55/10 62/7
**needed [4]** 10/23 27/21 47/15 49/17
**needs [2]** 27/19 29/13
**neither [2]** 40/24 42/17
**neutral [1]** 48/7
**never [2]** 40/5 42/8
**nevertheless [1]** 9/3
**news [1]** 51/9
**next [5]** 24/11 45/16 45/22 46/5 46/8
**nine [1]** 57/13
**no [23]** 1/4 5/13 7/25 24/8 25/21 26/9 28/19 32/12 35/17 37/9 45/23 48/22 49/17 50/14 50/14 51/19 51/20 51/21 53/25 55/20 56/1 56/17 62/7
**no additional [1]** 5/13
**non [1]** 15/17

non-fine [1] 15/17
**none [3]** 8/17 30/2 54/18
**Northwest [1]** 60/22
**nose [1]** 33/23
**note [2]** 42/1 57/12
**nothing [6]** 24/8 33/2 52/24 53/3 53/4 62/18
**notice [2]** 61/19 61/21
**notify [1]** 60/24
**notion [1]** 50/1
**now [17]** 3/3 3/5 9/6 10/1 25/13 25/18 26/12 27/25 31/12 33/10 33/12 43/4 45/11 46/17 53/18 53/21 54/7
**number [3]** 6/18 11/13 57/10
**NW [3]** 1/15 2/4 2/10

**O**

**object [1]** 46/16
**objections [5]** 4/15 5/4 5/8 6/1 62/12
**objective [1]** 53/10
**objectively [1]** 52/16
**objectives [1]** 47/8
**objects [1]** 21/1
**obligation [2]** 60/19 60/25
**obstruct [1]** 59/23
**obstructed [1]** 58/6
**obstructing [1]** 16/24
**obstruction [2]** 29/21 56/11
**obviously [10]** 23/5 26/13 30/1 30/17 31/4 32/11 46/15 47/22 47/24 55/10
**odd [1]** 57/8
**off [6]** 11/20 13/19 14/16 15/1 41/18 60/9
**offender [2]** 55/21 56/13
**offense [19]** 6/11 6/12 7/25 16/18 16/20 16/22 16/24 17/3 17/4 17/5 17/7 47/1 47/10 47/12 47/20 48/9 56/1 56/17 56/22
**offenses [6]** 5/19 5/20 8/21 9/3 9/7 16/8
**offered [1]** 31/2
**office [12]** 1/14 2/4 13/3 21/13 46/6 50/25 59/1 60/5 60/14 61/1 61/3 61/6
**office's [1]** 4/17
**officer [9]** 8/14 8/25 21/13 40/5 42/8 49/3 49/5 49/9 60/7
**officers [18]** 16/24 20/25 21/5 21/5 22/10 22/14 39/19 48/20 49/2 49/13 49/20 49/24 50/8 51/20 52/3 52/20 52/23 53/9

**O**

**officers' [1]** 41/22
**offices [1]** 51/1
**Official [1]** 2/9
**officials [1]** 45/13
**often [2]** 33/13 33/13
**Oh [2]** 35/22 45/7
**okay [23]** 3/17 3/23
4/11 4/25 5/6 5/14 9/9
13/22 14/7 15/16 15/22
16/2 17/21 18/17 18/20
19/2 19/13 35/19 36/15
37/1 45/20 46/13 49/21
**old [4]** 7/4 44/8 53/21
55/22
**once [4]** 20/20 21/7
21/12 26/20
**one [35]** 8/6 8/9 9/11
11/5 12/25 14/10 16/13
16/14 16/14 19/7 19/10
19/20 21/14 21/20 24/3
26/15 30/14 34/18
34/21 35/9 35/9 35/13
40/24 44/22 49/16
51/12 52/17 52/21 55/8
55/18 55/24 57/6 57/9
57/16 59/11
**online [1]** 9/15
**only [4]** 5/17 28/8
41/24 44/3
**open [3]** 37/20 49/4
49/12
**open-minded [1]** 37/20
**operating [1]** 8/22
**operator [1]** 31/25
**opinion [5]** 22/13
25/20 25/22 29/16
34/11
**opinions [2]** 25/14
44/16
**opportunity [4]** 4/14
5/3 37/3 42/23
**opposing [1]** 40/24
**option [1]** 59/1
**order [7]** 10/23 10/25
15/7 24/19 27/19 28/15
61/4
**ordered [2]** 49/18
58/21
**other [23]** 7/21 7/25
9/17 9/23 10/2 14/10
15/23 16/15 19/10 21/4
21/18 26/6 34/18 34/21
43/10 43/11 45/10
48/19 52/19 53/7 58/6
58/7 60/1
**others [6]** 43/20 48/3
51/23 52/2 55/25 58/3
**otherwise [2]** 25/11
28/15
**ought [3]** 23/6 51/10
52/15
**our [6]** 10/6 17/20 22/1
28/12 38/12 42/17
**out [20]** 20/12 20/18
22/16 27/1 29/4 31/15
34/19 34/22 39/2 41/25
43/5 44/11 50/14 50/15

56/10 62/9
**outmanned [2]** 21/5
49/22
**over [9]** 7/19 8/19 9/13
41/3 42/10 43/16 56/16
60/1 61/14
**over-represented [1]**
8/19
**over-represents [1]**
7/19
**overall [3]** 23/7 48/7
58/11
**overmatched [1]** 21/6
**overstated [2]** 5/23
54/20
**overthrow [2]** 20/17
20/17
**own [6]** 27/5 28/12
30/16 38/16 39/18
39/19

**P**

**p.m [5]** 1/6 46/22 46/22
48/25 62/24
**PA [1]** 42/1
**PACER [1]** 24/19
**page [1]** 12/15
**pages [2]** 30/7 30/7
**paid [2]** 59/16 60/25
**palm [3]** 49/3 49/7
49/12
**paragraph [3]** 8/9 8/12
18/25
**paragraphs [1]** 16/6
**paranoia [1]** 37/24
**paraphernalia [1]** 9/1
**Parks [6]** 29/25 30/2
30/3 56/15 56/23 58/8
**Parliament [1]** 38/10
**part [10]** 10/7 11/14
13/6 33/5 33/8 34/17
36/8 38/24 39/20 59/1
**partially [1]** 7/21
**participate [1]** 42/24
**participation [1]** 60/5
**particular [1]** 50/19
**particularly [1]** 26/7
**parties [3]** 4/13 40/23
55/11
**parties' [1]** 16/4
**passed [1]** 29/20
**past [6]** 20/8 21/4
37/14 39/11 39/12
39/21
**patience [1]** 3/16
**patriot [1]** 34/18
**patterns [1]** 22/8
**Pause [2]** 36/21 36/25
**pay [8]** 10/21 13/11
14/5 32/8 35/11 36/5
58/21 60/15
**payable [1]** 60/20
**paycheck [1]** 45/17
**paying [1]** 54/23
**pendency [1]** 34/7
**Pennsylvania [2]**
52/21 52/22

31/19 31/22 32/21
32/22 45/13 62/16
62/17
**people [38]** 9/23 10/17
21/18 22/24 23/4 26/7
28/11 28/15 28/23
31/18 35/5 36/11 38/6
39/10 39/13 41/5 41/12
41/14 41/20 41/21 42/8
49/7 49/21 49/23 49/25
50/4 51/1 51/2 52/3
52/4 52/4 52/5 52/7
52/15 53/10 54/3 54/23
54/25
**pepper [1]** 20/23
**perceived [1]** 41/9
**percent [1]** 41/17
**Perdido [1]** 31/22
**perhaps [4]** 11/15
28/20 30/18 33/14
**period [5]** 8/2 57/22
58/12 58/15 59/18
**periodic [1]** 59/12
**permission [1]** 61/23
**permit [1]** 62/3
**permitted [2]** 50/11
62/2
**person [11]** 4/2 4/9
6/10 8/5 21/14 37/20
46/7 48/21 53/15 55/4
55/6
**personal [2]** 8/4 33/10
**personally [1]** 38/19
**perspective [1]** 54/14
**pettier [1]** 5/20
**phase [1]** 13/6
**phone [4]** 32/23 40/8
46/7 50/13
**photographed [1]**
48/11
**photographs [1]** 12/11
**physically [2]** 21/4
49/25
**place [5]** 21/11 41/7
48/22 48/23 49/19
**placed [1]** 62/16
**placement [1]** 59/12
**Plaintiff [1]** 1/4
**planning [1]** 10/4
**played [2]** 39/17 39/20
**playing [2]** 39/14 41/15
**plea [3]** 6/11 6/15
55/17
**pleaded [1]** 55/24
**please [2]** 5/2 15/20
**plucked [1]** 53/22
**plugged [1]** 35/21
**pocket [1]** 44/10
**point [27]** 6/22 10/1
13/12 14/5 14/20 15/6
17/15 19/2 20/12 22/16
22/16 26/25 28/2 33/17
34/16 37/15 40/15
49/13 49/15 50/3 50/9
54/4 55/21 56/16 56/18
56/18 62/13
**points [7]** 7/15 8/3

56/10
**police [24]** 20/23 20/25
21/1 21/5 21/5 22/10
22/14 23/24 26/7 28/14
28/14 38/18 40/5 40/10
41/21 48/20 49/2 50/8
51/20 52/3 52/3 52/23
53/9 57/24
**political [1]** 40/23
**politics [1]** 42/16
**pool [1]** 41/6
**population [1]** 25/6
**portion [4]** 12/22 13/19
15/18 25/6
**position [8]** 11/5 11/9
11/21 12/17 25/1 25/10
48/14 48/21
**positive [4]** 26/24
26/25 32/7 36/3
**possess [1]** 59/7
**possession [8]** 8/3 8/7
8/11 8/22 8/23 8/24
8/25 16/15
**posture [1]** 13/10
**precise [1]** 45/5
**predicate [1]** 6/13
**preliminary [1]** 15/23
**prescient [1]** 20/18
**presence [2]** 14/24
43/11
**present [1]** 54/5
**presented [1]** 56/7
**Presentence [8]** 4/16
5/4 8/10 14/1 19/1 59/2
61/2 61/6
**presenting [2]** 29/22
30/9
**presents [1]** 62/5
**presided [1]** 56/15
**President [1]** 38/13
**presiding [1]** 3/4
**pretend [1]** 57/8
**pretrial [2]** 13/6 14/1
**pretty [3]** 12/7 12/10
12/16
**Prettyman [1]** 2/9
**previously [2]** 34/3
46/3
**primary [2]** 24/3 50/2
**principle [1]** 43/25
**prior [5]** 7/25 8/1 12/25
16/6 55/20
**priors [1]** 56/1
**prison [2]** 42/10 42/13
**private [1]** 21/14
**pro [7]** 2/2 10/3 10/10
10/23 27/22 27/24 33/6
**pro se [5]** 10/10 10/23
27/22 27/24 33/6
**probably [5]** 39/10
40/19 41/18 41/20 57/6
**probation [20]** 4/13
4/17 7/2 32/19 35/6
35/7 36/4 36/9 46/6
55/19 55/23 56/2 57/13
59/1 60/5 60/7 60/14
61/1 61/3 61/6

**problem [1]** 27/7
**problems [1]** 61/15
**proceed [1]** 3/18
**proceeding [4]** 4/7 6/5
10/10 10/23
**proceedings [5]** 1/9
2/12 53/17 62/24 63/4
**process [4]** 33/9 33/20
43/23 57/1
**produced [1]** 2/13
**productive [1]** 39/22
**program [2]** 60/6 60/6
**prohibited [1]** 59/22
**promote [2]** 47/13
47/21
**promotion [1]** 31/25
**propagate [1]** 23/15
**propagated [1]** 23/21
**proper [1]** 29/18
**property [3]** 51/21 52/4
56/21
**prosecution [2]** 24/20
37/11
**prosecution's [1]**
37/15
**protect [2]** 47/14 50/3
**proud [1]** 30/23
**prove [1]** 13/11
**provide [7]** 7/17 7/23
11/20 47/13 47/15
47/21 60/6
**provided [3]** 35/2
55/11 57/7
**providence [1]** 43/20
**provides [1]** 6/3
**provision [1]** 6/22
**PSR [1]** 8/12
**public [1]** 47/14
**pundit [1]** 39/5
**punished [1]** 51/13
**punishment [4]** 19/5
32/12 47/14 47/21
**purpose [1]** 14/25
**purposes [5]** 6/21 8/15
10/13 11/11 61/11
**pursue [1]** 24/24
**pursuing [1]** 24/18
**push [4]** 13/19 39/14
39/21 40/24
**pushed [2]** 21/4 21/6
**pushing [1]** 50/15
**put [9]** 9/17 9/22 23/17
25/10 44/10 53/9 58/4
62/13 62/21
**puts [1]** 54/13

**Q**

**qualifies [1]** 7/2
**question [3]** 9/11 14/8
22/20
**questions [1]** 24/7
**quick [1]** 37/8
**quickly [2]** 11/2 55/2
**quite [4]** 22/22 53/1
56/4 56/15

**R**

**raise [1]** 15/24

Case 1:22-cr-00409-APM Document 156 47/ Filed 09/13/24 Page 72 of 75

**R**

raised [7]  5/8 9/14 12/6 28/3 40/20 54/8 60/8
raises [2]  31/24 32/9
raising [1]  27/5
ran [2]  20/22 37/8
Range [7]  16/19 17/7 17/10 17/18 18/8 18/15 47/3
rather [5]  20/18 26/15 29/11 32/22 32/24
rationale [1]  22/1
Ray [2]  23/24 24/17
reach [1]  18/9
react [1]  42/5
read [1]  36/13
ready [2]  3/18 3/21
real [2]  37/8 50/5
realization [1]  24/21
really [12]  29/16 40/21 40/22 42/17 51/18 53/7 53/14 54/1 54/10 54/18 55/4 55/16
Realtime [1]  2/8
reason [2]  16/10 33/5
reasonable [1]  48/21
reasons [4]  20/1 24/4 47/23 52/14
recall [3]  10/11 13/4 27/9
recap [1]  46/25
receipts [3]  11/15 13/14 13/17
received [15]  3/25 4/13 4/16 8/2 31/24 31/25 33/24 35/8 55/21 56/11 56/14 56/17 57/13 57/14 57/15
recent [1]  45/16
recently [1]  8/2
Recess [1]  46/22
recognition [1]  51/17
recollection [1]  13/8
recommend [1]  62/16
recommendation [2]  4/17 44/2
recommended [2]  12/2 58/25
recommending [1]  19/19
reconciling [1]  44/13
reconvene [1]  14/24
record [8]  3/5 3/8 4/1 6/23 37/16 43/12 62/13 63/3
recorded [1]  2/12
reduction [1]  55/22
reference [1]  32/16
referring [2]  8/9 45/6
reflect [4]  25/20 29/1 47/12 47/20
reflected [1]  9/14
reflecting [1]  41/6
reflection [2]  16/12 25/23
reflects [2]  28/8 50/19
reflexively [1]  55/6
refrain [1]  59/9

refusal [1]  3/17
refused [1]  24/2
regard [8]  10/10 11/16 11/17 24/15 25/13 26/8 30/12 45/3
Registered [1]  2/8
regret [2]  38/24 51/17
related [1]  12/23
relates [1]  24/13
relationship [3]  30/25 33/11 44/13
relatively [1]  27/24
release [7]  19/21 32/8 32/19 58/17 59/18 61/1 62/5
reliable [1]  7/17
relied [1]  43/19
relocate [1]  31/19
remarkable [1]  54/8
remarks [2]  35/24 40/11
remember [1]  13/2
remorse [12]  20/6 22/18 23/9 23/18 25/21 26/9 28/8 29/1 29/2 42/12 51/16 52/11
remotely [1]  4/7
remove [2]  49/25 59/25
repeat [1]  35/20
report [21]  4/15 4/17 5/4 8/10 14/2 19/1 45/1 45/11 45/13 45/15 45/22 45/24 46/1 46/2 46/5 46/16 59/2 61/2 61/6 62/6 62/7
reported [3]  30/14 31/10 60/13
Reporter [4]  2/7 2/8 2/8 2/9
represent [2]  33/17 38/11
representation [3]  11/5 11/9 12/22
representations [2]  9/16 11/17
represented [4]  8/19 27/22 30/2 33/6
representing [3]  10/3 10/14 32/3
represents [1]  7/19
Republicans [1]  42/18
request [6]  4/8 9/18 42/20 44/22 45/21 61/22
requested [1]  45/10
requests [1]  45/18
require [1]  54/20
required [1]  57/21
requires [1]  45/15
requiring [2]  36/7 45/25
research [2]  10/12 10/24
researched [1]  29/11
reside [1]  31/19
residence [1]  61/4
resolves [2]  7/14 9/10
respect [7]  6/2 20/3

respectfully [2]  29/14 30/3
responds [1]  26/2
response [1]  13/25
responsibility [3]  28/9 57/23 58/10
responsible [2]  51/25 52/9
rest [1]  21/16
restitution [4]  14/20 19/23 59/14 60/17
restraint [1]  57/4
restricted [3]  16/21 48/12 48/16
restroom [1]  37/8
resulting [1]  6/4
results [2]  43/4 47/2
retain [1]  61/13
return [2]  31/2 61/5
review [4]  4/12 4/15 5/3 12/25
reviewed [2]  57/9 57/9
right [52]  3/12 4/2 4/3 4/9 4/12 5/7 5/24 10/1 10/15 11/23 12/4 14/7 14/15 15/10 15/23 18/14 19/2 19/3 19/4 23/5 23/10 23/11 24/10 25/4 25/9 25/11 25/13 25/16 25/18 25/20 25/24 27/19 28/5 29/15 30/17 36/15 36/19 39/5 40/22 42/4 43/9 43/19 44/21 45/11 46/14 46/18 46/23 54/12 61/16 61/18 61/25 62/11
right-wing [1]  39/5
rioter [1]  55/3
rioters [2]  21/4 21/21
RMR [2]  63/2 63/8
road [1]  54/22
roamed [1]  51/3
role [5]  39/14 39/18 39/18 41/15 51/17
Rollins [2]  7/7 7/10
round [1]  49/25
rowdy [1]  21/17
rule [4]  5/25 20/3 22/3 53/8
run [5]  17/16 17/17 18/13 58/18 58/20
ruse [1]  23/4
Russell [2]  29/25 30/6

**S**

said [16]  9/6 19/8 22/6 23/13 24/14 33/13 33/23 35/16 37/11 39/7 41/10 41/13 50/9 51/13 60/16 61/19
same [7]  7/5 14/21 22/9 51/15 54/16 56/6 58/9
sank [1]  41/8
sat [1]  20/10

saw [4]  23/19 26/5 26/6 26/8 28/11 30/5 31/21 38/16 40/1 49/12
say [17]  8/19 17/16 20/18 24/25 26/8 30/19 30/23 33/10 36/2 38/2 43/7 44/23 49/8 50/10 52/1 52/12 57/8
saying [10]  9/24 15/7 25/18 25/19 25/19 29/15 41/21 42/12 50/6 50/13
says [4]  21/20 25/8 31/10 33/24
school [1]  54/9
score [2]  5/11 16/13
scoring [2]  5/18 5/19
se [7]  2/2 10/3 10/10 10/23 27/22 27/24 33/6
season [1]  45/8
second [6]  10/22 11/3 14/3 20/3 22/1 35/14
seconds [2]  35/18 36/17
Section [1]  18/21
see [15]  22/21 37/21 38/6 38/6 38/21 39/21 40/1 41/10 42/18 43/4 43/4 44/8 46/10 46/10 48/20
seeing [3]  32/24 33/1 34/15
seek [1]  61/24
seem [2]  40/25 52/15
seemed [1]  50/3
seems [2]  30/15 50/20
seen [7]  23/19 33/4 35/3 43/6 44/18 48/19 49/11
self [7]  45/22 45/24 46/1 46/2 49/18 62/3 62/6
self-evident [1]  49/18
self-report [5]  45/22 45/24 46/1 46/2 62/6
self-surrender [1]  62/3
sell [1]  8/4
Senate [1]  48/24
Senator [3]  21/13 21/13 50/24
sense [9]  11/10 16/11 16/13 18/2 49/17 54/13 54/16 54/19 56/3
sensitive [1]  21/12
sentence [39]  6/6 6/10 6/14 7/1 7/3 7/13 8/3 9/8 18/9 18/10 18/11 18/12 19/9 19/11 19/19 19/25 22/1 24/5 24/5 29/14 29/18 34/23 35/1 35/8 44/17 44/25 46/4 47/6 47/12 47/19 47/23 48/1 57/19 58/13 61/5 61/19 62/1 62/8 62/20
sentenced [8]  6/12 35/4 35/5 36/11 52/6 58/2 58/15 58/16

sentences [3]  6/21 17/17 47/17
sentencing [19]  1/9 3/17 4/2 4/4 4/18 4/19 6/3 10/6 13/19 14/25 15/2 15/6 15/13 15/15 15/18 23/7 30/5 47/8 59/1
serious [4]  8/18 22/7 50/24 51/2
seriousness [3]  7/19 47/12 47/20
serve [3]  32/13 45/2 58/16
service [2]  19/22 60/4
session [1]  3/3
set [2]  47/6 47/8
setup [2]  28/22 39/3
shall [5]  58/23 59/23 59/25 60/23 61/5
share [1]  25/20
she [7]  30/25 31/1 31/2 31/3 31/4 31/6 44/8
sheer [1]  34/9
shocking [1]  52/20
shoes [1]  22/23
shoplifting [1]  8/22
short [1]  38/19
shortly [1]  46/21
should [21]  4/21 11/16 16/10 20/21 24/20 25/20 26/11 27/16 29/1 29/13 29/17 30/11 31/6 32/11 33/14 40/4 40/7 47/16 54/3 54/25 57/24
shouldn't [3]  20/22 21/11 49/19
show [3]  13/15 24/19 49/1
showed [1]  41/6
shown [1]  20/7
shows [2]  32/4 44/18
shun [1]  30/22
sic [3]  30/20 31/10 57/2
side [2]  34/18 34/21
sides [1]  42/16
Siege [1]  1/15
sign [1]  40/4
significant [1]  25/6
signs [3]  20/21 20/23 48/12
similar [2]  9/21 48/3
similarly [1]  36/11
simply [4]  28/16 36/8 51/2 55/6
since [9]  17/2 17/8 20/7 22/3 22/13 23/20 23/23 31/23 43/11
single [2]  40/5 57/9
sir [3]  4/5 4/9 39/2
sitting [1]  43/21
situation [4]  27/11 29/19 31/13 33/1
situations [1]  29/3
six [1]  46/16
Sixth [1]  6/19
Sixth Circuit [1]  6/19

**S**

small [2] 38/23 41/6
smaller [1] 5/20
smoking [1] 21/18
snuck [1] 57/17
so [86]
so I think [6] 5/20 7/13 19/4 29/16 48/6 54/19
so this funding [1] 10/8
sobriety [2] 37/19 39/18
social [5] 23/22 38/25 41/11 41/19 41/20
society [1] 39/23
some [42] 5/18 5/18 5/20 9/23 10/12 11/17 11/20 12/22 12/22 14/10 14/13 14/23 15/6 16/11 20/12 24/13 24/21 25/1 26/25 29/21 31/18 36/5 37/24 37/24 38/9 38/17 40/16 41/5 42/25 44/4 44/6 50/5 50/9 53/19 53/20 54/12 54/13 56/3 57/8 58/5 58/7 60/9
somebody [4] 50/21 54/17 55/2 58/5
somehow [3] 28/14 49/17 57/1
someone [2] 39/4 40/11
something [5] 9/22 11/16 41/2 42/14 46/6
soon [1] 41/25
sooner [3] 43/6 45/19 57/25
sorry [10] 3/15 18/24 35/13 35/21 36/23 36/24 45/4 45/7 46/12 46/12
sort [11] 8/15 15/5 22/24 28/9 29/21 35/23 38/6 49/3 52/19 53/20 58/4
source [1] 39/11
speaks [1] 26/19
special [2] 58/21 59/19
specific [2] 11/12 48/4
specifically [1] 9/24
speech [2] 38/13 38/13
speeches [2] 39/25 40/1
speedballing [1] 27/13
spend [3] 10/12 10/24 44/4
spent [3] 10/25 13/15 60/10
spirit [1] 10/22
spoken [1] 25/25
spray [1] 20/23
spun [1] 57/1
squarely [1] 23/18
stack [2] 18/16 18/18
staff [1] 50/3
staged [1] 51/6
stand [4] 29/19 29/24

Standby [1] 2/3
standing [1] 52/7
stands [1] 25/8
start [2] 3/14 20/9
started [2] 33/11 34/3
starts [1] 62/8
state [3] 12/10 52/25 59/5
stated [1] 19/20
Statehouse [1] 52/21
statement [2] 12/16 21/22
STATES [10] 1/1 1/3 1/10 1/14 3/6 6/3 6/23 7/5 7/7 7/10
stating [1] 46/4
status [1] 6/22
statute [3] 15/12 47/8 62/2
statutory [5] 17/9 18/4 19/4 19/20 61/18
stay [3] 10/8 21/18 50/11
stayed [4] 21/7 41/5 43/13 51/9
staying [1] 41/18
stenography [1] 2/12
step [1] 32/3
stepfather [1] 40/12
stepped [1] 36/24
steps [5] 27/2 31/13 34/7 34/8 38/20
Stewart [2] 29/25 30/2
still [14] 16/16 21/1 23/2 25/22 27/15 30/22 31/9 31/9 39/13 40/24 41/15 43/2 43/7 49/11
stood [1] 40/20
stop [1] 27/16
stopped [2] 26/16 26/20
stored [1] 10/19
story [1] 54/2
Street [2] 1/15 2/4
stretch [1] 57/11
stretching [2] 20/5 22/3
strict [1] 62/4
stuck [1] 39/8
studying [1] 10/3
submit [2] 59/11 59/21
substance [4] 59/8 59/10 59/21 59/22
substantially [1] 7/18
such [4] 8/23 39/15 58/17 60/24
suffered [1] 43/22
sufficient [2] 32/14 47/7
suggest [5] 5/22 10/20 15/14 56/25 57/24
suggested [4] 5/15 13/20 14/6 49/3
Suite [1] 2/5
supervise [1] 60/5
supervised [5] 19/21 32/19 58/17 59/17

supervision [5] 58/23 59/12 60/2 61/9 61/10
supply [1] 14/14
support [4] 11/21 12/15 14/13 30/21
supported [1] 31/9
supporter [1] 30/14
supporters [1] 39/14
supporting [2] 9/24 10/13
supports [1] 5/22
suppose [1] 56/3
supposed [2] 28/12 28/13
sure [5] 4/1 36/1 42/4 45/21 53/1
surrender [1] 62/3
symbol [1] 38/5
synonymous [1] 38/8
system [4] 33/7 33/7 33/25 34/17
systems [1] 42/2

**T**

T-e-w [1] 55/14
take [9] 11/1 17/22 24/3 28/6 30/11 31/13 44/7 46/20 55/9
taken [3] 24/24 41/7 52/10
takes [1] 44/8
taking [2] 29/23 34/8
tale [1] 57/1
talk [1] 48/8
talked [2] 30/24 30/24
talking [5] 13/14 23/16 26/12 41/20 43/21
talks [2] 26/1 27/4
tamper [2] 59/23 59/23
tear [2] 20/24 48/19
technically [1] 52/9
tell [6] 20/21 22/22 42/8 46/5 49/15 51/7
telling [2] 41/25 50/21
ten [1] 7/25
term [3] 58/16 58/19 60/2
termination [1] 61/7
terms [9] 7/14 7/16 47/23 48/4 51/4 52/11 56/4 58/18 62/4
test [1] 59/11
testified [1] 56/11
testify [1] 57/5
testimony [2] 30/3 30/8
testing [2] 59/21 59/23
tests [1] 59/13
Tew [2] 55/13 55/17
than [18] 19/5 19/6 28/20 32/22 32/24 33/11 34/12 35/4 38/8 43/11 44/19 47/7 51/2 52/24 53/7 54/25 57/25 62/7
thank [15] 3/16 3/22 12/1 19/13 19/14 19/17

37/6 44/21 46/23 62/19 62/23
thank you [12] 3/16 3/22 19/14 19/17 24/9 24/12 35/12 36/15 37/6 44/21 62/19 62/23
thanks [1] 31/18
that [443]
that's [40] 6/17 6/24 8/8 8/12 9/14 12/10 12/16 12/16 15/21 16/10 17/8 19/4 19/11 21/14 22/16 23/19 24/6 25/1 25/8 26/10 26/16 27/17 27/22 28/25 29/11 31/6 31/23 34/2 35/22 37/9 38/5 46/16 49/22 51/21 55/4 55/13 56/7 57/10 62/1 62/11
theft [2] 5/21 56/21
their [13] 21/6 21/15 22/11 28/16 30/25 39/11 41/18 41/24 42/3 50/2 51/25 52/24 53/2
them [18] 18/16 18/18 20/24 22/11 22/11 32/23 41/15 49/25 50/5 50/10 52/6 52/8 52/9 54/6 54/8 57/10 57/16 57/16
themselves [2] 28/16 51/14
then [17] 4/13 7/5 7/7 7/10 9/11 15/6 16/4 16/18 18/12 23/23 27/11 31/17 42/13 44/10 44/12 54/1 55/25
theories [1] 29/20
there [57] 5/7 5/21 6/18 6/25 8/8 8/11 15/23 24/19 26/3 26/23 27/2 28/15 28/23 29/20 29/23 31/19 31/20 32/12 32/12 32/18 33/2 34/10 37/22 38/17 38/20 38/23 40/21 41/8 42/19 43/3 43/8 43/11 46/9 49/1 49/3 49/7 49/13 49/13 49/19 50/2 50/6 50/11 50/12 50/13 50/17 50/25 51/16 51/22 52/2 52/5 52/7 52/20 52/23 54/24 57/12 57/16 62/12
there's [13] 7/10 9/1 16/11 19/6 25/6 34/6 37/10 43/7 51/19 53/3 53/4 54/18 57/25
thereafter [1] 59/13
therefore [4] 7/2 29/13 29/20 60/15
these [9] 9/1 9/3 35/4 39/13 44/19 49/20 53/17 54/22 55/9
they [27] 6/20 9/3 16/7 17/2 21/6 29/24 31/15 38/6 41/6 41/7 42/1

42/2 42/3 42/4 42/6 42/20 49/14 49/22 50/2 50/16 52/22 52/23 52/25 54/20 54/23 55/1
they're [4] 40/13 50/15 52/8 55/16
thing [4] 5/17 27/20 45/10 51/21
things [15] 13/15 24/13 25/7 27/1 34/11 38/15 38/17 39/15 40/16 48/19 49/16 51/24 52/15 52/17 52/18
think [89]
thinking [2] 23/7 45/3
thinks [3] 24/22 25/23 28/23
third [2] 20/6 22/15
this [69]
those [37] 5/25 6/22 9/7 9/10 11/11 12/14 13/13 13/15 13/17 16/7 19/20 26/25 28/7 28/7 36/13 41/19 41/20 41/21 42/7 45/18 47/22 50/4 50/6 52/2 52/3 52/4 52/17 52/18 53/9 54/4 54/4 54/5 57/9 57/12 57/13 57/15 59/3
though [3] 31/10 46/2 54/20
thought [11] 27/23 28/25 33/8 39/24 39/25 40/7 41/12 49/21 51/1 51/6 51/11
thoughts [2] 24/22 46/20
thousands [4] 49/23 49/23 52/2 52/7
threatened [1] 52/5
three [4] 19/25 35/5 55/12 57/12
through [15] 16/3 16/6 16/7 17/20 20/8 20/11 22/18 23/22 34/9 43/20 43/22 48/24 49/8 51/3 51/22
throughout [3] 43/1 53/17 55/9
throwing [1] 21/1
till [1] 60/2
time [24] 9/9 10/12 10/24 14/10 14/20 21/8 21/11 21/16 29/4 32/13 41/14 41/17 42/7 44/4 45/2 49/15 50/9 51/15 56/6 57/15 57/18 58/9 60/24 62/21
times [2] 38/5 52/14
titled [1] 63/4
today [8] 14/11 15/6 15/17 22/18 30/24 37/18 51/16 57/23
together [1] 9/22
told [2] 20/21 33/21
too [6] 27/6 30/3 35/15 42/4 54/6 56/1
took [6] 29/19 30/9

**T**

**took...** **[4]** 41/7 41/9 41/10 56/24
**top** **[2]** 19/7 38/20
**total** **[7]** 16/12 16/22 17/3 17/4 19/5 47/1 56/17
**totaling** **[1]** 58/22
**touched** **[2]** 28/3 33/16
**toward** **[5]** 5/11 38/18 49/4 49/9 49/10
**traffic** **[1]** 5/19
**training** **[1]** 47/16
**trajectory** **[4]** 26/25 32/7 34/14 36/3
**Trammel** **[2]** 7/5 7/9
**transcript** **[3]** 1/9 2/12 63/3
**transcription** **[1]** 2/13
**transfer** **[2]** 32/18 44/12
**transferred** **[1]** 61/10
**travel** **[2]** 11/6 12/24
**traveling** **[1]** 13/2
**traversing** **[1]** 48/15
**treat** **[1]** 51/10
**treated** **[1]** 34/2
**treatment** **[2]** 61/5 61/8
**trespassing** **[1]** 16/20
**trial** **[15]** 12/14 12/24 12/24 12/25 20/8 20/11 22/18 23/22 33/16 33/24 42/19 43/1 53/14 55/20 56/14
**tried** **[3]** 38/9 53/17 55/9
**trip** **[2]** 12/25 44/8
**trouble** **[2]** 26/20 39/10
**true** **[5]** 14/21 25/9 28/5 39/7 49/22
**Trump** **[2]** 30/14 39/14
**trust** **[1]** 28/12
**trusted** **[1]** 33/7
**trusting** **[3]** 33/14 33/17 43/3
**truth** **[2]** 21/23 29/9
**try** **[3]** 17/19 49/24 55/5
**trying** **[7]** 32/1 32/2 33/22 39/14 40/24 50/14 50/14
**tunnel** **[2]** 41/4 41/7
**turn** **[5]** 9/11 16/4 17/12 24/10 36/16
**turned** **[3]** 20/18 30/17 51/8
**twice** **[1]** 13/1
**two** **[23]** 5/25 7/12 7/24 8/2 9/10 16/21 17/3 18/4 18/16 21/9 31/7 31/24 36/22 37/22 40/23 45/18 51/19 52/20 52/23 54/7 56/11 57/14 59/12
**two-level** **[1]** 56/11
**two-year** **[1]** 7/12
**type** **[1]** 40/17

**U**

**U.S** **[6]** 55/13 55/14 55/14 56/7 61/3 61/17
**U.S.** **[1]** 10/12
**U.S. Capitol** **[1]** 10/12
**U.S.C** **[3]** 47/6 58/22 61/25
**Uber** **[1]** 45/12
**ultimately** **[2]** 19/11 62/20
**unable** **[1]** 61/22
**unclear** **[2]** 49/6 52/14
**under** **[10]** 5/16 6/6 6/20 7/3 7/12 9/4 9/8 19/5 34/5 61/25
**understand** **[8]** 4/2 4/5 4/8 13/7 37/15 45/21 46/14 54/25
**understandable** **[1]** 52/16
**understanding** **[4]** 11/13 29/10 55/4 55/5
**understands** **[1]** 33/19
**understood** **[1]** 48/22
**unfamiliar** **[1]** 54/2
**unfolded** **[1]** 58/11
**UNITED** **[10]** 1/1 1/3 1/10 1/14 3/6 6/3 6/23 7/5 7/7 7/10
**United States** **[5]** 6/3 6/23 7/5 7/7 7/10
**United States of** **[1]** 3/6
**unlawful** **[1]** 59/9
**unlawfully** **[1]** 59/7
**unless** **[2]** 24/6 52/7
**unlike** **[2]** 29/24 56/23
**unsupervised** **[1]** 7/2
**until** **[5]** 45/14 51/16 53/25 54/1 60/24
**unusual** **[1]** 56/1
**unwarranted** **[2]** 47/18 55/10
**unwillingness** **[1]** 50/19
**up** **[18]** 10/3 10/12 12/15 16/17 18/7 22/18 27/11 28/14 31/15 31/17 38/9 38/17 38/20 40/25 42/5 45/19 48/15 49/25
**upon** **[3]** 16/6 60/13 61/7
**ups** **[1]** 26/23
**us** **[5]** 13/21 36/22 38/14 41/25 50/16
**usdoj.gov** **[2]** 1/17 1/17
**use** **[8]** 8/4 9/17 27/9 37/23 42/7 42/19 43/13 59/9
**used** **[12]** 10/13 10/19 10/22 11/6 11/13 12/11 12/14 12/23 27/10 30/16 42/2 59/22
**using** **[4]** 26/16 26/17 26/20 27/12

**V**

**variety** **[1]** 42/2
**various** **[2]** 8/21 55/11
**veiled** **[2]** 39/2 41/11
**verdict** **[1]** 34/1
**verification** **[1]** 60/7
**versed** **[1]** 30/1
**versus** **[7]** 3/7 6/23 7/5 7/7 7/10 55/14 55/15
**very** **[8]** 9/21 27/9 33/18 43/11 44/8 44/16 52/13 53/12
**via** **[3]** 1/9 32/23 32/23
**victim** **[1]** 57/1
**video** **[2]** 38/21 50/13
**videos** **[2]** 10/12 12/12
**view** **[7]** 14/9 28/10 28/10 37/15 38/13 52/16 54/16
**views** **[6]** 23/6 28/5 28/7 52/10 53/4 53/5
**violation** **[1]** 23/14
**violence** **[4]** 20/25 38/18 41/3 42/9
**violent** **[2]** 20/16 20/17
**visits** **[1]** 11/8
**vocational** **[1]** 47/16
**voice** **[1]** 40/20
**voices** **[1]** 41/19
**volumes** **[1]** 26/19
**vs** **[1]** 1/5

**W**

**waive** **[1]** 60/15
**waiver** **[1]** 3/25
**waiving** **[1]** 4/8
**walk** **[4]** 36/8 38/14 39/25 48/17
**walked** **[1]** 52/25
**want** **[21]** 3/25 4/1 13/21 14/18 17/14 20/12 24/15 25/3 26/25 30/18 32/24 32/25 32/25 34/17 34/17 34/20 35/25 36/17 36/18 46/19 50/16
**wanted** **[3]** 15/14 18/11 45/18
**wants** **[9]** 11/19 13/18 14/13 31/2 34/16 34/19 34/22 34/22 44/24
**warranted** **[4]** 7/21 44/18 48/2 58/12
**was** **[128]**
**Washington** **[7]** 1/5 1/16 2/5 2/10 4/3 48/10 60/22
**wasn't** **[6]** 9/24 20/15 21/20 40/5 50/22 58/20
**watch** **[2]** 39/25 44/7
**water** **[2]** 10/9 36/18
**way** **[16]** 15/2 21/6 25/1 25/22 31/5 33/9 33/22 34/2 37/13 41/6 50/15 50/15 50/16 54/1 58/5 58/7
**ways** **[2]** 39/21 51/19
**we** **[43]** 3/9 3/10 3/14 10/20 10/25 11/19 11/20 12/3 14/24 15/1 15/19 17/12 17/19 17/20 19/22 19/24 23/19 25/5 26/14 29/3 29/12 32/10 32/16 33/11 33/11 34/3 34/3 34/13 35/2 36/7 36/9 36/16 37/1 39/25 41/25 46/2 46/16 52/13 55/4
**we are** **[1]** 3/20
**we believe** **[1]** 19/24
**we have** **[1]** 33/11
**we'll** **[6]** 11/21 14/14 16/4 19/15 24/10 34/15
**we're** **[10]** 3/5 3/17 28/12 35/7 36/3 36/4 36/4 45/25 50/14 50/14
**we've** **[3]** 23/19 35/2 54/21
**weapons** **[1]** 60/1
**wear** **[1]** 48/18
**wearing** **[1]** 20/14
**week** **[3]** 45/15 45/22 46/8
**weeks** **[1]** 31/7
**weigh** **[1]** 47/22
**well** **[22]** 3/9 3/10 3/21 4/19 14/2 14/18 15/17 18/1 19/1 25/16 29/11 30/1 30/15 32/4 33/13 34/8 43/23 45/24 49/21 52/13 58/24 59/16
**well-versed** **[1]** 30/1
**went** **[11]** 10/11 17/19 21/3 21/12 21/15 40/2 40/8 41/5 41/13 43/18 52/20
**were** **[43]** 5/19 14/9 14/22 17/20 21/5 22/11 27/2 28/11 28/15 28/23 28/23 28/24 34/3 35/4 35/5 39/13 39/25 41/12 41/15 41/18 41/19 41/20 42/4 49/1 49/7 49/13 49/20 49/22 49/24 50/2 50/4 50/6 50/10 50/12 52/5 52/20 52/21 52/22 52/23 52/23 52/25 53/9 53/25
**weren't** **[2]** 5/19 50/25
**what** **[64]**
**what's** **[2]** 9/20 29/18
**whatever** **[6]** 18/9 32/18 32/19 45/15 46/1 57/4
**when** **[29]** 6/10 12/21 17/20 18/4 21/3 26/1 26/6 26/16 27/18 27/25 29/17 30/9 31/15 34/3 34/4 34/4 37/7 38/12 38/15 40/8 40/10 40/25 42/7 43/16 49/1 49/18 52/23 52/25 54/4
**where** **[9]** 12/8 12/16 21/11 25/1 27/11 29/3 33/20 34/3 55/4

**whereby** **[1]** 29/19
**whether** **[13]** 5/10 11/5 14/9 18/3 25/5 39/7 43/2 48/13 49/6 49/8 49/10 49/12 57/4
**which** **[30]** 4/1 4/20 6/8 6/22 7/8 7/11 9/13 10/14 16/14 16/17 17/4 19/6 19/19 30/15 33/24 35/8 45/5 47/25 52/14 53/7 53/8 53/22 54/1 55/18 55/25 56/21 59/2 60/1 61/3 61/14
**while** **[7]** 10/14 33/25 41/10 44/8 50/9 53/3 58/23
**who** **[45]** 6/11 21/4 21/5 21/21 22/8 22/24 23/1 27/10 28/15 30/14 35/3 35/5 37/18 39/2 39/5 40/12 44/6 50/4 50/4 50/7 51/1 51/2 51/8 52/3 52/4 52/4 52/6 52/20 52/21 52/23 52/24 54/11 54/11 54/17 54/24 55/4 55/6 56/15 57/14 57/15 57/17 57/17 57/18 58/5 58/7
**who's** **[2]** 6/10 20/16
**whoever** **[1]** 50/20
**whole** **[2]** 34/20 49/10
**wholly** **[1]** 56/24
**whom** **[1]** 50/5
**why** **[5]** 5/25 17/12 24/19 29/22 37/1
**wide** **[3]** 22/6 27/8 27/9
**will** **[25]** 6/18 7/20 7/21 28/15 32/22 33/21 34/9 45/17 47/23 51/7 52/12 58/13 58/18 58/19 58/21 59/17 60/5 60/14 60/15 60/16 61/9 61/13 62/3 62/6 62/7
**William** **[3]** 2/7 63/2 63/8
**willpower** **[1]** 27/17
**wing** **[2]** 39/5 48/24
**wish** **[10]** 5/9 9/17 11/24 33/18 38/22 38/23 43/6 54/23 61/24 62/22
**wishes** **[1]** 11/19
**within** **[7]** 8/15 14/15 46/5 59/11 60/23 61/20 61/20
**without** **[5]** 8/4 8/22 14/23 55/3 61/23
**witness** **[2]** 38/18 41/3
**witnessed** **[1]** 20/25
**woman** **[1]** 44/6
**won't** **[1]** 27/6
**wondering** **[1]** 23/6
**word** **[2]** 21/24 23/12
**words** **[4]** 16/15 43/8 51/16 53/16
**work** **[1]** 39/11
**working** **[1]** 31/22

**W**

workspace [1] 21/15
worst [1] 55/7
would [52] 5/17 5/18
5/21 8/17 10/20 10/25
13/20 15/3 15/24 16/13
18/21 19/8 19/10 19/25
20/18 21/24 22/16
23/17 28/4 32/14 32/16
32/20 32/21 33/2 34/5
34/12 34/12 34/23
34/23 34/24 34/25
35/20 38/4 38/22 40/6
40/20 42/22 42/22 43/7
44/3 44/16 44/25 45/1
46/2 46/11 46/16 48/18
48/21 49/10 54/24
61/15 62/13
wouldn't [2] 26/3
40/20
wrap [1] 53/2
written [2] 3/25 60/6
wrong [8] 24/23 25/16
25/19 25/24 25/24 29/6
29/8 35/21

**Y**

Yeah [2] 14/18 17/22
year [1] 7/12
years [5] 7/25 22/3
23/2 53/21 55/22
yes [13] 3/19 4/10 9/19
11/25 15/20 18/19 27/8
28/1 36/12 36/12 36/20
40/1 40/3
yet [3] 48/23 50/21
58/9
you [212]
you have [1] 54/7
you know [3] 14/1
33/13 52/13
You shall [1] 59/23
you understand [1]
4/2
you'll [3] 58/15 61/12
62/9
you're [9] 23/10 23/16
25/15 51/24 51/25
53/21 54/13 54/15 58/5
you've [5] 44/18 53/5
55/12 58/6 60/8
your [100]
Your Honor [69]
yourself [2] 35/20 54/8

**Z**

Zaremba [3] 2/7 63/2
63/8
zero [3] 55/21 56/18
56/18
zero-point [3] 55/21
56/18 56/18
ZOOM [1] 1/9